UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| Reverend Doctor Keith Alan Lasko, Minister of the Worldwide Ministries of Jesus Christ, Congregation of Religious Medical Ministries ) ) ) ) ) ) ) | |
| Plaintiff ) | |
| Pro Se ) ) ) | **2:13-cv-01893-JAD-NJK** |
| v. ) ) | Jury Trial Requested |

American Board Of Surgery, )
Incorporated; American Board Of )
Medical Specialties, Incorporated; )
American Board Of Internal )
Medicine, Incorporated; )
Joseph B. Cofer, M.D., Executive )
Officer of American Board Of )
Surgery Incorporated; )
David M. Mahvi, M.D., Executive )
Officer of American Board Of )
Surgery Incorporated; )
Frank R. Lewis Jr., M.D., Executive )
Officer of American Board Of )
Surgery Incorporated; )
Jo Buyske, M.D. , Executive Officer )
of American Board Of Surgery )
Incorporated; )
Mark A. Malangoni, M.D., Executive )
Officer of American Board Of )
Surgery Incorporated; )
Gabriel L. I. Bevilacqua, ESQ., )
Executive Officer of American Board )
Of Surgery Incorporated; )
Mitchell S. Goldberg individually and )
in his official capacity; )

1

Saul Ewing, LLP;                )
et.al.                          )
                                )
          Defendants            )
                                )

## VERIFIED COMPLAINT

COMES NOW the plaintiff REVEREND DOCTOR KEITH ALAN LASKO, et al, appearing pro se, and for a complaint against the defendants above named, states, alleges, and avers as follows:

## JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1343 and 1346(b). This action is commenced pursuant to 28 USC § 2201, and 28 U.S.C. § 2202, and CIVIL RIGHTS VIOLATIONS 42 U.S.C., section 1983, and 18 U.S.C. §241, and 18 USC §242, and 18 U.S.C. §247 DESTRUCTION OF CHURCH AND MINISTRY and OBSTRUCTION OF RELIGIOUS EXPRESSION, and 18 U.S.C. §249 HATE CRIMES VIOLATIONS, 42 U.S.C. § 2000bb--1, and 15 U.S.C. §§ 1-7 and 15 U.S.C. § 12-27), and 18 U.S.C. §§ 1961-1968, and 15 U.S.C. section 1 and section 2 VIOLATIONS OF THE SHERMAN ANTITRUST ACT, and 15 USC § 12, 14,15,17, 18,19, 21, 22, 23, 24, 25, 26, 27, 29, 30, CLAYTON ACT VIOLATIONS, INTERFERING WITH INTERSTATE COMMERCE, and 15 U.S.C. §1311,1314, and 15 USC §6211 and 18U.S.C. § 1961–1968 RICO VIOLATIONS, OBSTRUCTION OF JUSTICE.

## JURISDICTION AND VENUE

This action arises from violations by the Defendants of the Sherman Antitrust Act and the Clayton Act and the RICO Act and this action also arises directly under the United States Constitution, as applied to individuals acting to deprive a United States Citizen of his Civil Rights, and acting under the color of law to deprive Civil Rights. This includes federal employees through the case of Bivens v. Six Unnamed Agents of the Federal Bureau of Investigation, 403 U.S. 388 (1971), and individuals acting to destroy a Church, loot a Church, destroy a Religious Ministry, and acts done by defendants to prevent the Exercise of Religion and to prevent Freedom of Religious Expression. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. This court has jurisdiction under, and by virtue of, 28 U.S.C. § § 1331, 1343 and1346(b). Additionally, defendant Mitchell S. Goldberg is sued under the parallel federal constitutional jurisdiction established by the U.S. Supreme Court in *Bivens vs. Six Unknown Named Agents*, 403 U.S. 388 (1971). Venue is founded in this judicial district based on 28 U.S.C. § § 1391 (e)(1) and (e) (2). Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution. Plaintiff brings this suit pursuant to Title 42 U.S.Code § 1983 for violations of certain protections guaranteed to him by the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments to the United States Constitution. This civil action concerns the outrageous repugnant conduct knowingly undertaken by defendants, the plaintiff seeks damages

2

to compensate him for his injuries, and injunctive relief to prevent further harm to the plaintiff who is and has been targeted and punished for fighting against racism, exercise of religious beliefs, for the founding of religious medical organizations created to bring racial equality to Medicine and to bring Christian Humanitarian Values, the Ten Commandments, the Words of Jesus Christ in the Sermon on the Mount and the Golden Rule to the medical profession, punished for his religious beliefs, religious expression, religious mission, and speech clearly protected by the First Amendment and that was prohibited, punished, subjected to sweeping Prior Restraints, and destroyed by the defendants, in Violation of the U.S. Constitution and Bill of Rights and Federal Civil Rights Laws in violation of the Supremacy Clause of the U.S. Constitution, and the Doctrine of Stare Decisis, violations of the Rule of Law, violation of the Equal Protection of the Law, violation of Due Process of Law, violation of the Sherman Antitrust Act and Clayton Antitrust Act. Damages and injunctive and other equitable relief are being sought pursuant to 42 U.S.C. section § 1981. Equal rights under the law, 42 U.S.C. section § 1983. Civil action for deprivation of rights, 42 U.S.C. section §1985. Conspiracy to interfere with civil rights, 18 U.S.C. 241. Deprivation of rights under color of law, 18 U.S.C. 242. Destruction of a Church, destruction of a Religious Ministry, and the Obstruction of the Free Exercise of Religious Worship and Beliefs, 42 U.S.C. Section 247. Violation of the Hate Crimes Prevention Act, 18 U.S.C. Section 249. Action for neglect to prevent such acts 42 U.S.C. section §1986. The Declaratory Judgment Act, 28 U.S.C. 2201. As well as directly under the First, Fourth Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States, and with regard to those defendants sued in their individual capacities, and pursuant to constitutional tort claim theory annunciated by the U.S. Supreme Court in its decision in the case of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619 (1971). Civil RICO complaint is based upon the payment by Saul Ewing LLP of over $450,000 to Mitchell S. Goldberg's political organization and the subsequent acts of Goldberg to render a Default Judgement against the plaintiff before he was even served at his legal address, and to agree for over four years with every motion made by Saul Ewing LLP and its clients, the American Board of Surgery, Inc., and rendering non sequitar extreme and overly broad and extremely over-reaching orders and acts in violation of Due Process of Law, transparently unconstitutional actions, orders, Prior Restraints against the plaintiff for exercising his Constitutional Rights and Prior Restraintts of pure freedom of speech rights and religious expression rights with no reason for issuing such extreme Prior Restraints on Free Speech and Religious Expression, and because of plaintiff, Reverend Lasko's, exercise of those rights he received again and again heavy fines and incarceration, all done in extreme violation of the plaintiff, Reverend Lasko's Freedom of Speech and Freedom of Religious Expression, and Due Process Civil Rights, and all done in violation of Goldberg's Oath to Uphold and Defend the United States Constitution, a solemn oath thrice given, and Goldberg acting to extremely aid and abet the other defendants in their illegal acts to conspire and secure and perpetuate an illegal monopoly controlling nearly all of the marketplace in every state in the very lucrative medical certification field.

The Venue in Nevada is proper because the plaintiff is a resident of Nevada and resided in Nevada since 2005, and the Worldwide Ministries of Jesus Christ and the Congregation of Religious Medical Ministries were founded as not for profit religious organizations incorporated in Nevada, and the fifty-five Christian Evangelical Medical Organizations founded by plaintiff were founded as not for profit religious organizations incorporated in Nevada, and plaintiff's

church, the First Church of the Epiphany, which is part of this suit, is a Nevada Christian church.

## THE PARTIES SPECIFIED

The Plaintiff, Reverend Doctor Keith Alan Lasko, M.D., Doctor of Divinity (Hon.) is a Citizen of the State Of Nevada, United States of America, and has been an Ordained Reverend for over forty-one years, and President of the Worldwide Ministries Of Jesus Christ, a Nevada Not For Profit Religious Corporation, Congregation Of Religious Ministries, is a Nevada Not For Profit Religious Corporation, 8604 Vivid Violet Avenue, Las Vegas, Nevada, 89143, Plaintiff Address For All The Above. Reverend Doctor Lasko is a Member of the National Association of Evangelicals, Member of the Evangelicals for Social Action, Member and Southern Nevada Head of the Christian Coalition, Prayer Leader of the Christian Coalition, Founder and Minister of the Worldwide Ministries of Jesus Christ, Founder of the Congregation of Religious Medical Ministries, President and Minister of the First Church of the Epiphany, and Founder of the Christian Children's Crusade to Save Street Children in Latin America from Death Squads, Founder of the American Council of Christian Physicians and Surgeons, Founder of the American College of Christian Physicians, Founder of the American College of Ethical Physicians, and Founder of over fifty-five Christian Religious Medical Organizations to fight against abortion and to support and promote Christian Humanitarianism, and the Words of Jesus Christ in the Sermon of the Mount, particularly the Golden Rule, and the Ten Commandments, particularly the Commandment Thou Shalt Not Kill, in this Christian Evangelical Mission to Medicine, Reverend Lasko has brought over 6,000 physicians to sign an oath promising to promote Christian Humanitarianism, Compassion, Kindness, the Words of Jesus Christ in the Sermon of the Mount, particularly the Golden Rule, and the Ten Commandments, particularly God's Commandment Thou Shalt Not Kill.

The Defendants, American Board Of Surgery, Incorporated, 1617 John F. Kennedy Blvd., Suite 860, Philadelphia, PA 19103, American Board Of Medical Specialties, Incorporated, Of 222 North Lasalle Street, Suite 1500, Chicago, IL 60601; American Board Of Internal Medicine, Incorporated, 510 Walnut Street, Suite 1700, Philadelphia, PA 19106, David M. Mahvi, M.D., Executive Officer of American Board Of Surgery Incorporated; Frank R. Lewis Jr., M.D., Executive Officer of American Board Of Surgery Incorporated; Jo Buyske, M.D., Executive Officer of American Board Of Surgery Incorporated; Mark A. Malangoni, M.D., Executive Officer of American Board Of Surgery Incorporated; Gabriel L. I. Bevilacqua, ESQ., Executive Officer of American Board Of Surgery Incorporated; Mitchell S. Goldberg, U.S. District Court, Eastern District of Pennsylvania, 601 Market Street, Room 2609, Philadelphia, PA 19106-1797 Saul Ewing, LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102,

Defendants represent lily white secular medical organizations **(Exhibit A)**whose monopolistic lucrative enterprise motivates their voracious destruction of competition, particularly from racial and religious minority organizations, that they treat as inferior, "bogus", "illegal", "fraudulent", including those founded by Reverend Lasko. The defendants act to perpetuate their lucrative monopoly by any illegal, unconstitutional, defamatory, harassing, unethical, and Machiavellian means, including the influencing of public officials, obstruction of justice, violating civil rights, violating civil rights under the color of law, abuse of process, illegally taking automobiles to render plaintiff unable to function as a minister, and even looting a church and stealing children's

savings accounts.

## INTRODUCTION

The Plaintiff hereby reports the state and federal statute violations of the Sherman Antitrust Act and the Clayton Act and the RICO Act and violations of the United States Constitution committed by the defendants pursuant to 18 U.S.C. section 4.This case arises from illegal harassment and anti-competitive behavior by secular private all white organizations to destroy over fifty religious racial minority medical organizations and to prohibit the founder, Reverend Doctor Lasko, from competing against the defendants with alternative medical organizations. To stop Reverend Lasko and to destroy competition, defendants have acted to prohibit plaintiff in his Exercise of Freedom of Religious Expression, Freedom of Religion, Freedom of Speech, Freedom of the Press, Freedom of Association, and the Right to Organize, and this done because of the defendants' seeking to establish and to perpetuate a monopoly in the medical marketplace and have contempt for the plaintiff's civil rights, contempt for racial and ethnic minorities and their right to organize and to be represented in Medicine, all done to further the defendants' monopoly in the medical marketplace, and to punish Reverend Doctor Lasko for publishing and speaking out against unnecessary surgery and calling the public's attention to the medical establishment abuses of patients and medical consumers, and particularly because Reverend Lasko founded medical organizations that the defendants wanted destroyed lest they could grow to challenge the defendants' monopoly in the medical certification market. These defendants have continuously publicly defamed the plaintiff and have used the legal system for harassment purposes to disrupt and block the plaintiff's Christian Evangelical activities of forming religious medical organizations. The actions of defendants have violated and continue to violate the plaintiff Reverend Lasko's Civil Rights under the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments to the United States Constitution, and have violated Federal Statutes prohibiting illegal Federal Debtors Prisons, and Due Process Rights of the Plaintiff have been violated with overbroad and over-reaching judgements obtained by the defendants against Reverend Doctor Lasko. Defendants have ignored Equal Protection of the Laws, ignored the Principle of Stare Decisis, ignored the large body of United States Supreme Court Decisions Prohibiting the civil rights violations done by the defendants, who have acted as racists promoting a superior position for their lily-white Directorates and Officers and in Racist Violation of Civil Rights and even the Right to Exist of over fifty religious medical minority organizations composed principally of non-white members. Reverend Doctor Lasko seeks damages and emergency assistance to compensate for injuries suffered as a consequence of this humiliating and devastating experience and seeks the cessation of the present and ongoing violations of his First Amendment Rights and other U.S. Constitutional Rights done by the defendants against Reverend Doctor Lasko, the First Church of the Epiphany, the Worldwide Ministries of Jesus Christ, the Congregation of Religious Medical Ministries, the American College of Christian Physicians, the American Council of Christian Physicians and Surgeons, and other Christian Evangelical Religious Medical Organizations founded by or associated with the plaintiff, Reverend Doctor Lasko.

## PARTIES

Plaintiff, Reverend Doctor Keith A. Lasko, since 2000, has brought over 6,000 physicians and dentists to sign a solemn pledge to always act as a humanitarian, to be kind, compassionate, and

to support and promote religious principles of Christian humanitarianism, traditional religious values, and to uphold the Ten Commandments and particularly the Commandment Thou Shalt Not Kill, and every one of the over 6,000 physicians, due to Reverend Lasko's letters and proselitizing, has then sworn to uphold and promote the Words of Jesus Christ in the Sermon on the Mount, Do Ye Unto Others As Ye Would Have Others Do Unto You, Words of Our Kind Lord and Savior, Jesus Christ, and called the Golden Rule. Reverend Lasko undertook numerous Christian Medical Missions all over the world and was instrumental, with the Christian Children's Crusade which he founded to save many lives of Christian street children from murderous death squads in Latin America. Reverend Lasko has provided Homeless Shelter for the poor in Las Vegas, Nevada, and built a playground for children with a large pool and full size basketball court. Plaintiff, Reverend Doctor Keith A. Lasko, M.D., Doctor Of Divinity (Honorary), is a United States citizen and resident of Las Vegas, Nevada. Reverend Doctor Keith Lasko was Ordained as a Christian Minister in 1972, Re-Ordained as a Born Again Christian Minister in 2005, again Re-Ordained as a Born Again Christian Minister in 2009, Founder of the National Academy of Ethics and Religion, 2012-2013, President and Minister of the Worldwide Ministries of Jesus Christ, 2005-2013, physician at St. Luke's Medical Mission Hospital in the Philippines and worked without any pay whatsoever for one year as a physician caring for indigent Filipinos. Christian Medical Missionary, Cambodia and VietNam, Oct.2010-Jan.2011, Christian Medical Missionary, Eastern Luzon and Tabac City, Philippines, 2008 and 2009, Minister of the First Church of the Epiphany, Parma, Ohio, 1972-1975, Minister of the First Church of the Epiphany, Las Vegas, Nevada, 2005, Minister of the First Church of the Epiphany,Van Nuys, CA,1979-1989, Honorary Doctor of Divinity Degree, 1973. Author of three published medical books. Managed and Directed the Congregation of Christian Medical Ministries,1994-2010, Managed and Directed Christian Medical Mission, Posse, Petropolis, R.J., Brazil, 1993-1999. Managed and Directed Christian Medical Mission, Cambodia, September, 2012-January 2011, Founder of the Congregation of Fellowship Ministry Organizations for Humanitarian, Scientific, Educational, Ethical, Religious Values, and the Worldwide Ministries of Jesus Christ, all being Nevada Not-For-Profit Humanitarian Evangelical Religious Corporations founded to emphasize, promote, and support Humanitarian, Religious Principles, and Ministries, with emphasis on Compassion, Morality, Ethics, Christian Humanitarian Religious Values, a Nevada Not For Profit Religious Corporation, Member of the National Association of Evangelicals, Prayer Leader of the National Association of Evangelicals, Member of Evangelicals For Social Action, Prayer Leader and a Member of Pastoral Council of the Christian Coalition, Reverend Doctor Lasko has brought over 6,000 physicians to promise to abide by, support, promote, The Ten Commandments and particularly the Commandment Thou Shalt Not Kill. After sustaining a heart attack while on a Christian Mission in Brazil, Reverend Lasko prayed that if Jesus let him survive, Reverend Lasko would work to bring Christian Kindness, Christian Humanitarian Values, and the Ten Commandments, and the words of Jesus Christ to the medical profession. Reverend Lasko kept his word to God and devoted his life to founding over 55 Religious Not For Profit Christian Medical and Dental Organizations to bring the Words of God and His Son Jesus Christ to every specialty in the medical profession as a mission to bring Christian Kindness to the medical profession and to bring God and Jesus and prayer to a cold and often heartless and godless medical profession. It was during Reverend Lasko's successful mission in Cambodia to save thousands of poor street children from being sexually exploited and being exposed to Aids that Reverend Lasko learned of the orders of the court on January 7, 2011 from Goldberg on behalf of the pleadings by American Board of

Surgery, Inc., in December 2010, all done while Reverend Lasko was on a Mission in Cambodia, orders that Reverend Lasko must cease all of his religious missions to the American medical profession, close down every Christian religious organization and mission, end the Worldwide Ministries of Jesus Christ, end the Congregation of Religious Medical Ministries, the American College of Christian Physicians, the American Council of Christian Physicians and Surgeons, and thirty-five other Christian Evangelical medical organizations, a long list that was later even more expanded upon by the defendants to drive away fifty-five competing medical organizations from ever competing with the defendants.

In private letters, the defendants had threatened Reverend Lasko, emphasized their potent use of Goldberg's court against Reverend Lasko, and tried to force a deal with him, if he would agree to never sue them for their antitrust violations or their defamations against him. Their demand that Reverend Lasko never sue them for their antitrust violations or their defamations against him was repeated to Philadelphia attorney Gary Green, and even put in writing in E-Mails and in the form of an "agreement" that the defendants demanded Reverend Lasko to sign. When Reverend Lasko refused to sign away his rights, defendants then proceeded to expand their defamations and legal harassment, particularly when they realized Reverend Lasko was a pauper and could not afford any legal representation.

The defendants are hereby sued under the Sherman Antitrust Act and the Clayton Act for violation and conspiracy to violate the antitrust laws of the United States in which defendants have interfered with interstate commerce in all fifty states, destroyed over fifty-five competitors and have sought to destroy the plaintiff and to perpetuate their monopoly in the medical marketplace through the destroying of competition.

The defendants are sued also under the United States Civil Rights Acts and Title 18 Sections 241, 242, 247, 249, and Title 42, U.S.C., Section 14141, and in their individual and official capacities under Bivens.

Defendant, American Board of Surgery Inc., a private corporation that with its sister, the American Board of Internal Medicine, Inc., controls most of the medical marketplace, and with its sister, the American Board of Internal Medicine, Inc., engaged in a longstanding campaign of defamation and of threats against the plaintiff that continues to this very day. American Board of Surgery Inc. pays no taxes, brags of their 150 million dollar war chest, and is a self-appointed regulator of medical organizations that encroach upon their dominant share of the medical marketplace. They have destroyed or aborted the development of fifty-five new medical organizations, including the Reverend Doctor Lasko's Christian religious medical organizations and also emptied the bank account and destroyed Reverend Lasko's First Church Of The Epiphany, demanded the closing down of Reverend Lasko's Worldwide Ministries Of Jesus Christ, and through orders of the court given by Goldberg at the American Board of Surgery Inc. request, destroyed the American Council of Christian Physicians and Surgeons, the American College of Christian Physicians, the American Academy of Ethical Physicians, and the Congregation of Religious Medical Ministries which was comprised of thirty Christian religious evangelical medical organizations. In all of its pleadings and complaints, the defendants never referred to Reverend Lasko as "reverend" or "reverend doctor" or "pastor", only referring to the defendant as "Lasko", in order to pretend that no religious violation was being done by them.

7

The defendants never mentioned any religious aspect at all to any of the above organizations, and completely ignored Reverend Lasko's repeated objections that his First Amendment Rights, particularly the Right of a U.S. Citizen to Freedom of Religious Expression and Freedom of Speech was being ignored and violated, and Goldberg's orders violated Due Process and violated the First Amendment and all of the prior restraints were unconstitutional. Besides the defendants insisting on ending the Worldwide Ministries of Jesus Christ of which Reverend Lasko was a Minister, the defendants emptied Reverend Lasko's First Church Of The Epiphany tiny bank account, took Reverend Lasko's social security money, took the $40 in Reverend Lasko's little boy's bank account, took Reverend Lasko's 22 year old automobile, took Reverend Lasko's wife's 12 year old automobile, and emptied the small bank acccounts of the Congregation of Religious Medical Ministries and of each of its component religious medical organizations.They then drove Reverend Lasko into bankruptcy, destroyed all of the Christian missions Reverend Lasko had undertaken, and had Goldberg issue prior restraints against Reverend Lasko ever creating any new Christian religious medical organization or ever writing letters to any doctor or any dentist to proselitize his religious Christian Evangelical Mission to Medicine.

Defendant, American Board of Medical Specialties Incorporated, called ABMS, is the head and umbrella of a number of medical monopolies, including American Board of Surgery, Inc. which monopolizes the surgeons, and American Board of Internal Medicine, Inc. which monopolizes the non-surgery physicians. Currently, ABMS is set up as a private corporation and parent board of 24 specialty boards that certify and re-certify physicians in all fifty states. They have acted against non-member boards to either destroy them, such as the American Board of Ambulatory Medicine, or bring them to their knees and take over organizations like the American Academy of Emergency Physicians, the American Board of Emergency Medicine, the American Academy of Pediatrics, or have dramatically weakened and caused the minimalization of the American Academy of Neurological and Orthopedic Surgeons which once threatened the American Board of Medical Specialties Inc. by forming their own competing medical specialty boards and specialty certifications. This is a multimillion-dollar a year industry. A few examples, from publicly available IRS forms 990 for the year 2009, are illustrative. In that year, the chairman of ABMS received $492,517 in salary and benefits. An adviser to the Chairman received $249,859 in salary and benefits.

Defendant, American Board of Internal Medicine, like its fellow monopolists, American Board of Surgery Inc, and American Board of Medical Specialties Inc, set up tax free foundations and pay no taxes, they have accumulated huge amounts of millions of dollars from their monopoly position. The chairman of the American Board of Internal Medicine (ABIM) received a salary of more than $800,000 in 2009. Total assets of the American Board of Internal Medicine at that time were $57,586,843.

Reverend Lasko Background and Mission:
Son of a Christian Evangelist, graduate first in his class in medical school, M.D. in 1971, Fellow in Internal Medicine at the Cleveland Clinic, Special Fellow in Cardiology at the Cleveland Clinic, Reverend Doctor Lasko, M.D. often was chosen by the Head of Cardiology at the Cleveland Clinic to take care of the patients of the Head of Cardiology at the Cleveland Clinic, sometime for a month at a time. Reverend Doctor Lasko, M.D. became an ordained Christian Minister in 1973, established his first church in Parma, Ohio, and then in private medical practice

and as a Christian Minister, established the First Church of the Epiphany in California and later in Nevada. After being shocked at encountering a great deal of cruelty and unnecessary surgeries in American private medical practice in California and the cover up of this by the medical establishment, Reverend Doctor Lasko wrote a book, The Great Billion Dollar Medical Swindle, which sold 23,000 copies, and Reverend Lasko went on 150 television and radio programs speaking out on behalf of the need for more kindness in medicine and spoke against unnecessary surgeries, and stated that the medical establishment was engaging in monopolism, had turned Medicine into a cold business, and had promoted a mafia-like atmosphere of a Code of Silence, with racist money men who would silence criticism to keep earnings high and had created a cold secular mercenary medical establishment. This resulted in Reverend Doctor Lasko encountering extreme anger and hatred from the defendants, especially the American Board of Surgery Inc, a private company that has worked for years to destroy Reverend Doctor Lasko and has used Goldberg's court to destroy fifty-five competing medical organizations that were founded by Reverend Doctor Lasko. Despite Reverend Lasko's Vows of Poverty, and his dedicating his life to fighting for Christian Humanitarianism in Medicine, the American Board of Surgery Inc. has conducted a continuing and longstanding campaign of suing, defaming, and destroying Reverend Lasko and every one of his Christian Medical Organizations, and the American Board of Surgery Inc has lied and falsely claimed that Reverend Lasko awards Degrees and Titles and Titles of Nobility which Reverend Lasko never has done. Reverend Lasko, contrary to the false charges by the American Board of Surgery Inc, has worked tirelessly on a Christian Religious Mission in Medicine and has worked as a Christian Missionary in the Phillipines, Cambodia, Vietnam, Brazil, and Uruguay, and is Founder of the Christian Childrens Crusade Against the Murders of Christian Street Children in Latin America. In contrast, the American Board of Surgery Inc has a mission of destroying Reverend Lasko and destroying all fifty-five competing medical organizations founded by Reverend Doctor Lasko. The private American Board of Surgery Inc. has, and is, using Goldberg and his court to help it monopolize and accomplish violating the Sherman Antitrust Act by destroying competition in the medical marketplace, and ruthlessly, and with viciousness and vengeance, making an example of the plaintiff who felt compelled to dare speak out against these selfish medical monopolists.

DEFENDANTS HAVE A LONG PATTERN OVER MANY YEARS OF HATRED, HARASSMENT, DEFAMATION, PERSONAL INJURY, RETRIBUTION, ATTEMPTED MURDER OF REVEREND DOCTOR LASKO

As a practicing Board Certified Internist and Cardiologist, graduated first in his class in medical school and voted medical school senior class president, awarded eight full scholarships, trained in Internal Medicine and in Cardiology at the prestige Cleveland Clinic that had recommended him as "an unusually gifted physician", there had never been a complaint or charge of any kind against Reverend Doctor Keith A. Lasko, M.D. who was practicing at seven hospitals and in good standing at all of them, and associate Chief of Medicine at one of the hospitals. Then Reverend Doctor Lasko wrote a book on Unnecessary Surgery and the Abuse of Patients in Hospitals and Racism in Medicine and showed that the Medical Establishment is more interested in money than in healing. The book sold 23,000 coies in hardcover, and Reverend Doctor Lasko appeared on 150 radio and television programs talking about unnecessary operations and how doctors and hospitals were more interested in earnings than in curing patients, and why no diseases are ever being cured because there is no money in a cure. Then plaintiff began receiving threats from the medical establishment and there was an attempt on his life. The book suddenly

disappeared from every bookstore and library. The publisher denied the existence of the book. Plaintiff was suddenly thrown out of all seven hospitals, his medical license was revoked without notification or any opportunity to bring forth documents and witnesses, other state medical boards took this revocation as the justification to revoke all his other licenses. Reverend Doctor Lasko was driven out of the medical profession. The American Board of Surgery Inc, with the American Board of Internal Medicine, Inc and the other defendants, continue the harassment, the punishing, the defamation campaigns, and the personal injury to Reverend Doctor Lasko to this very day, as an example and as a warning to anyone who dares to speak out to criticize or challenge the lucrative medical monopolies of the defendants. Reverend Doctor Lasko has seen the cruelty and the lack of compassion in medicine and has dedicated his life to trying to bring kindness, compassion, humanitarianism, Christian Love to the medical profession, it is his life's mission to bring Christian Humanitarianism and Jesus' Words to a cold unfeeling secular medical profession.

## GENERAL ALLEGATIONS

**CHARGE ONE: DEFENDANTS INTERFERED WITH INTERSTATE COMMERCE AND VIOLATED THE HOBBS ACT IN ORDER TO PERPETUATE A MONOPOLY IN THE MEDICAL MARKETPLACE**

Defendants have continually employed unfair methods in restraint of trade against plaintiff in all fifty states. The plaintiff engages in proselitizing in every one of the fifty United States and the defendants have acted to interfere with plaintiffs religious activities in all fifty states for many years and continue to do so to the injury and destruction of the plaintiff's Christian Ministryand Christian Organizations which defendants have destroyed so as to perpetuate their monopoly in the lucrative medical marketplace.

The Hobbs Act, 18 U.S.C. §§ 1951 provides in pertinent part: Whoever in any way or degree obstructs commerce or the movement of any article or commodity in commerce...or attempts or conspires to do so...in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

The Journal of the American Medical Association, November 15, 1965, "Professional people may establish any medical specialty board they desire, and there is, of course, no obligation on the part of any board that it seek approval by AMA, or that it meet AMA standards." This was before Wilk v. American Medical Association, 895 F.2d 352 (7th Cir. 1990) wherein the AMA lost a Sherman Antitrust Act suit for restraint of trade.

**CHARGE TWO: PER SE VIOLATION OF THE SHERMAN ANTITRUST ACT**

Conduct characterized as per se unlawful is that which has been found to have a "'pernicious effect on competition":

The American Board of Medical Specialties Inc is a private corporation that monopolizes all physicians and medical specialists in the all important certification of them as a specialist, which affects dramatically a physician obtaining hospital privileges, referral of patients from other physicians, acceptance among physicians and patients, and this certification is of immense financial value to a physician and directly and indirectly affects physicians' earnings. The monopoly by the American Board of Medical Specialists, Inc is principally maintained by two of its components: the American Board of Surgery Inc and the American Board of Internal Medicine Inc, which essentially divide the lucrative medical market between themselves and

exert a monopoly allowing them to charge thousands of dollars to physicians for a one day computerized exam. There is no alternative for the physician than to pay whatever the monopolist asks. Recently, the American Board of Internal Medicine Inc charged kidney specialists and cardiac subspecialists over $10,000 for a one day computerized exam. Furthermore, the monopoly controls applications for other physician specialty organizations, extending their horizontal monopoly and making vertical monopolies on top of this with numerous tying-in arrangements. To maintain this lucrative monopoly and to continue their enormous profits from physicians in every state, the defendants, as unrestrained monopolists, act to destroy any organizations that may be competition to them now or in the future, and the monopolists destroy existing competing medical organizations through campaigns of libel and harassment and expensive litigation, and thus destroy competition for the medical market. The defendants destroyed the American Board of Ambulatory Medicine, acted against the American Academy of Pediatrics and took them over, acted against the American Academy of Emergency Medicine and American Board of Emergency Medicine dictated terms to them and essentially took them over, defendants destroyed competing components of the American Academy of Neurological and Orthopedic Surgeons, and have acted against the plaintiff and destroyed the plaintiff's American Board of General Surgery, the American Academy of Surgery, the American Council of Surgical Specialties, the American Academy of Cosmetic and Plastic Surgeons, the American Academy of Breast Surgeons, the American College of Christian Physicians, the American Council of Christian Physicians and Surgeons, the American Academy of Ethical Physicians, the Congregation of Religious Medical Ministries, and over fifty Christian not for profit medical organizations **(Exhibit B)** that were founded by Reverend Lasko as part of his Christian Evangelical Mission to bring kindness, Christian humanitarianism, the Ten Commandments and particularly Thou Shalt Not Kill, and the Words of Jesus Christ, to the secular and monopolized medical and dental professions. By destroying competition, by restraining entrant organizations in the medical market, and in violation of the Sherman Antitrust Act and the Clayton Act, the defendants have maintained their monopoly on medicine and secured them hundreds of millions of dollars in annual profits, conspiring to monopolize the medical market, fix costs to physicians as high as the monopolists liked, and use their monopoly to substantially drive up costs to patients and doctors. As the plaintiff posed a threat to the monopoly by forming not for profit medical organizations that were largely composed of non-white physicians that could break the white racist monopoly in medicine, there was the need for the defendants to destroy Reverend Lasko and to destroy every organization he founded and to prevent Reverend Lasko from forming any new organizations that could compete with the monopolists and reduce their vast earnings. The destruction of so many competing medical organizations in order for the defendants to establish and perpetuate a voracious and unchecked monopoly that causes raised American doctors fees and increases costs to American consumers is a per se violation of the Sherman Antitrust Act. This is another situation of one or more competitors getting together to collectively restrain the trade of a competitor, and establish boycotts, secure price fixing, and maintain their huge share of the medical market, and keep their tying-in arrangements, in violation of antitrust law. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade … is hereby declared illegal." …the Sherman Act. Boycotts to prevent a firm from entering a market or to disadvantage a competitor are extremely illegal. The Supreme Court has defined monopoly power as the power to control prices or exclude competition. As a practical matter, such power is measured by the alleged monopolist's share of the relevant market. Absolute monopoly in the economic sense -- 100

11

percent of the market -- is a rare phenomenon, raising the question of how large a share a firm must possess to come within the statutory concept. Although there is no hard and fast rule, any market share of 50 percent or higher is sufficient to be of concern. American Board of Internal Medicine Inc admits to holding 87 percent of the internal medicine certification market and controls through tying-in the main subspecialties. American Board of Surgery Inc, similarly controls 100 percent of the surgeons certification market and with its tying-in arrangements controls most of the surgical subspecialties. Section 2 of the Sherman Act also prohibits attempts to monopolize by companies and engage in anticompetitive conduct and restraint of competitors in order to hold monopoly status. Antitrust is premised on the belief that a competitive economy can best be achieved by maintaining markets with a significant number of sellers. Hence, to a considerable extent, the structural aspect of the law focuses on avoiding or remedying the concentration of market power in a few firms with large market shares. Defendants knew they were violating the Sherman Antitrust Act and the Clayton Act and they tried to trick the plaintiff into signing away his right to sue them for their antitrust violations. **(Exhibit C)**

CHARGE THREE: ILLEGAL AND FRAUDULENT USE OF FALSE TRADEMARK CLAIM TO FALSELY CLAIM INFRINGEMENT AND TO USE THIS FRAUD TO DESTROY 55 COMPETING MEDICAL ORGANIZATIONS AND VIOLATE THE SHERMAN ANTITRUST ACT " UNDER COLOR OF LAW"
The American Board of Surgery Inc falsely claimed they trademarked their name. They had only trademarked a semicircular shape of printing their name. The plaintiff never used the name of the defendants or their semicircular shape, **(Exhibit D)** and yet, with Goldberg's assistance, in violation of the trademark law and in violation of the Sherman Antitrust Act and the Clayton Act, the American Board of Surgery Inc, Saul Ewing firm, and Goldberg, have used this fraud to harass, fine, order handcuffing and incarceratrion, injure, threaten with illegal federal debtor's prison, obstruct justice, defame, ruin, bankrupt, and violate the civil rights of the Plaintiff, and destroy fifty-five religious medical organizations.
On December 15, 2010, while plaintiff was on a Christian Medical Mission in Cambodia, American Board of Surgery, Inc requested Judge Goldberg in Court of Eastern Pennsylvania, to ban and destroy forever the following Christian Medical Organizations that were in competition with them and in competition with American Board of Internal Medicine Inc that had divided up the physician market among themselves and under the umbrella of the American Board of Medical Specialties. This was done while Reverend Lasko was on a Christian Medical Mission in Cambodia, and unaware and unable to reply to this Draconian act being done to destroy competition and to perpetuate defendants' control of the physian marketplace in surgery and non-surgery, and in all the subspecialties tied into them, in complete violation of antitrust laws, they asked for the immediate permanent destruction of the following competitors **(Exhibit E):**
American Board of General Surgery
American Academy of Surgery
American Council of General Surgeons
American Council of Surgical Specialties
American Council of Christian Physicians and Surgeons
American Board of Cosmetic and Plastic Surgery
American College of General Surgery
American Board of Hospital Physicians
American College of Ethical Physicians

American Academy of Neurological and Orthopedic Surgeons
Board of Hospital Physicians
American Board of Geriatric Medicine
American Board of Geriatrics
United States Medical Specialists Federation
American Board of Diabetes
American Academy of Cardiology
American College of Christian Physicians
American Academy of Oncology
American Council of Plastic Surgery
American Academy of Cancer Specialists
American Academy of Cosmetic Breast Surgery
United States Federation of Medical Specialists

And this was to apply to all of the fifty states and Reverend Lasko was to be forbidden from ever in the future having or founding any medical organization of any kind and not be allowed to write to any physician or to ever promote any medical organization in any way.
In December, 2010 and January 2011 Judge Goldberg agreed to all of this **(Exhibit F)**.

In April 2013, the same defendants added more medical organizations to the list and added five dental organizations that did not even exist, and now, with Goldberg's blessing and agreement: Reverend Lasko was to be forbidden from ever in the future having or founding any medical <u>or dental</u> organization of any kind and not be allowed to write to any physician or to ever promote any medical organization in any way.**(Exhibit G)**

Over fifty medical and dental organizations were destroyed or aborted, and Reverend Lasko, by Prior Restraint against his Freedom of Religious Expression, Freedom of Speech, Freedom of Religion, Freedom of Association, Freedom to Organize, Freedom to Proselitize his Christian Evangelical Mission to Medicine, was denied the Equal Protection of the Law, Due Process of the Law, and to secure a monopoly the defendants went on to violate Reverend Lasko's First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendment Rights, drove plaintiff to Chapter 7 Bankruptcy, and prepared to send the plaintiff, a Reverend with Vows of Poverty, to an illegal Federal Debtors Prison that was outlawed by Federal Statute since 1833. **(See Exhibit H, Official Transcript April 2013)**

CHARGE FOUR: DEFENDANTS USED A TRADEMARK INFRINGEMENT CLAIM TO DESTROY 50 RELIGIOUS ORGANIZATIONS WITH NAMES COMPLETELY DIFFERENT FROM THEIR TRADEMARK IN ORDER TO DESTROY COMPETITION AND PERPETUATE THEIR MONOPOLY
The Trademark Laws were meant to encourage competition in the marketplace by giving advantages of ownership and the benefits of having a successful, respected, and well-known brand. The Trademark Laws were never meant to be used to destroy competition or to be used to destroy all of a competitor's products having nothing whatever to do with the infringing name. Defendants, American Board of Surgery Incorporated, trademarked only the semi circular shape of their corporate logo name of "American Board of Surgery Incorporated", then used a trademark infringement suit, obtained a default judgement against Reverend Lasko from

13

Goldberg, even *before* Reverend Lasko was served at his legal address **(Exhibit I),** and used that ruling by Goldberg, with Goldberg's help, to destroy not only their accused infringer, Reverend Lasko's "American Board of General Surgery", but also American Board of Surgical Specialists, American Academy of Plastic Surgery, American Academy of Breast Surgery, American Academy of Surgery, and then American Academy of Ethical Physicians, American Academy of Geriatric Medicine, American Academy of Cardiology, American Academy of Ethical Physicians, American College of Christian Physicians, American Council of Christian Physicians and Surgeons, American Academy of Psychiatry, the First Church of the Epiphany, the Worldwide Ministries of Jesus Christ, and fifty other religious medical and dental organizations, and with Goldberg, at the American Board of Surgery Inc request, Goldberg issued Prior Restraint Orders against the plaintiff, Reverend Lasko, prior restraint against ever having any medical organization, and subsequently, at the request of American Board of Surgery Inc, Goldberg also issued prior restraint against Reverend Lasko ever having any dental organization also. **(Exhibit G)** The defendants have been able to destroy existing competing organizations and the defendants have been allowed to prevent, abort, and criminalize any new Christian Evangelical medical or dental organizations founded by or related to Reverend Lasko, and violated Reverend Lasko's First Amendment and other Constitutional Rights with Goldberg's extremely overly broad and extremely over reaching orders that violated Reverend Lasko's Due Process Rights and violated Equal Treatment and Equal Justice of American Citizens, and wrongfully used Prior Restraints to prevent plaintiff from exercise of his religious mission and religious expression and freedom of speech and freedom of the press (internet). The defendants wanted their competition shut down and destroyed forever, and resorted to any illegal order and any act necessary in order to perpetuate their extremely lucrative monopoly over medical certification and medical specialists in every state. In 2007, IGT v. Alliance Gaming Corp., D.Nev. March 22, 2007, the Nevada District Court noted that the misuse of patent rights may amount to a violation of the Sherman Act. The Federal Trade Commission, May 10, 2002, statements of Secretary Clark, warned of the Sherman Act being violated by using over-reaching use of trademark claims to destroy their competition: **(Exhibit J)** "owners of intellectual property should think twice if their infringement claims real motive is to destroy competition." Defendants knew they were violating the Sherman Antitrust Act and the Clayton Act and they tried to trick the plaintiff into signing away his right to sue them and defendants knew they were acting in Abuse of Process and they tried to trick the plaintiff into signing away his right to sue them. **(EXHIBIT C)**

CHARGE FIVE: VIOLATION OF FEDERAL TRADE COMMISSION ACTS
The Federal Trade Commission Act bans "unfair methods of competition" and "unfair or deceptive acts or practices." The Supreme Court has said that all violations of the Sherman Act also violate the Federal Trade Commission Act.

CHARGE SIX: TYING-IN VIOLATIONS OF THE SHERMAN ANTITRUST ACT
American Board of Internal Medicine Inc. admits to holding 87 percent of the internal medicine certification market and controls through tying-in the main subspecialties. In order for a non-surgical medical specialist to be certified as a specialist in his subspecialty, such as kidney disease or lung disease or heart disease, the physician must first pay American Board of Internal Medicine Inc., and must keep on paying them forever, and pay the tied-in subspecialty board to be certified as a specialist in:

Adolescent Medicine
Advanced Heart Failure
Transplant Cardiology
Allergy and Immunology
Cardiovascular Disease
Clinical Cardiac Electrophysiology
Critical Care Medicine
Endocrinology
Geriatric Medicine
Hematology
Hospice and Palliative Medicine
Hospital Medicine
Infectious Disease
Interventional Cardiology
Medical Oncology
Nephrology
Pulmonary Disease
Rheumatology
Sleep Medicine
Sports Medicine
Transplant Hepatology

American Board of Surgery Inc, similarly controls the surgeons market and with its tying-in arrangements controls most of the surgical subspecialties. In order for a surgical medical specialist to be certified as a specialist in his subspecialty, the surgeon must first pay American Board of Surgery Inc., and must keep on paying them forever, and then pay the tied-in subspecialty board to be certified as a specialist in:
Vascular Surgery
Pediatric Surgery
Surgical Critical Care
Surgery of the Hand
Hospice and Palliative Medicine
Complex General Surgical Oncology
Thoracic Surgery

The American Board of Medical Specialties Inc. controls:
American Board of Allergy and Immunology(ABAI)
American Board of Anesthesiology (ABA)
American Board of Colon and Rectal Surgery (ABCRS)
American Board of Dermatology (ABD)
American Board of Emergency Medicine (ABEM)
American Board of Family Medicine (ABFM)
American Board of Internal Medicine (ABIM)
American Board of Medical Genetics (ABMG)
American Board of Neurological Surgery (ABNS)
American Board of Nuclear Medicine (ABNM)

15

American Board of Obstetrics and Gynecology (ABOG)
American Board of Ophthalmology (ABO)
American Board of Orthopaedic Surgery (ABOS)
American Board of Otolaryngology (ABOto)
American Board of Pathology (ABP)
American Board of Pediatrics (ABP)
American Board of Physical Medicine and Rehabilitation (ABPMR)
American Board of Plastic Surgery (ABPS)
American Board of Preventive Medicine (ABPM)
American Board of Psychiatry and Neurology (ABPN)
American Board of Radiology (ABR)
American Board of Surgery (ABS)
American Board of Thoracic Surgery (ABTS)
American Board of Urology (ABU)

All of the above are private non-official corporations and control over 90 percent of the lucrative medical certifying market.

CHARGE SEVEN: DEFENDANTS KNEW THEY WERE VIOLATING THE SHERMAN ANTITRUST ACT AND THE CLAYTON ACT AND THEY TRIED TO TRICK THE PLAINTIFF INTO SIGNING AWAY HIS RIGHT TO SUE THEM
**(EXHIBIT C)**

CHARGE EIGHT: VIOLATION OF FREEDOM OF THE PRESS IN ORDER TO MAINTAIN A MONOPOLY
The defendants have continuously violated the Freedom of the Press of the plaintiff by demanding and obtaining through endless litigation that the plaintiff remove all websites for every one of his Christian Medical Organizations from the Internet and also obtained orders from Goldberg to allow the American Board of Surgery Inc to order removal from the internet of the Worldwide Ministries of Jesus Christ and to remove from the internet the Congregation of Religious Medical Ministries. The defendants thus succeeded in destroying and abolishing the websites of over fifty religious medical organizations, and the defendants even demanded the abolition of the Worldwide Ministries of Jesus Christ website and the sermons by Reverend Lasko on that website. There can be no more obvious a violation of Freedom of Religion and Freedom of Religious Expression and Freedom of the Press. This further exemplifies the malignant nature of the monopolists and their complete disdain for Constitutional Rights and their use of Goldberg's extremely overly broad and over-reaching orders and total compliance with the wishes of the American Board of Surgery Inc and their lawyers, Saul Ewing firm that was a generous donor, $450,000 to Goldberg's political organization. This willing compliance with their wishes was used voraciously by the defendants against the plaintiff.
**(Exhibits B, K, L, V)**

CHARGE NINE: THREATS AND PUNISHMENTS BY DEFENDANTS AGAINST THOSE INTERFERING WITH THEIR MONOPOLY
The defendants again and again threatened Reverend Lasko and warned him of punishments if he did not cease to compete with them. When Reverend Lasko refused to back down to their threats,

the defendants summarily had him stripped of his LIFETIME certification as a specialist in Internal Medicine and put his name on their website as NOT CERTIFIED AS A SPECIALIST IN INTERNAL MEDICINE. **(Exhibit M)** The removal of certification as a specialist is of great harm to any physician, and this was done because Reverend Lasko, a Doctor of Medicine, and a medical specialist, refused to give in to the defendants demands that he stop competing against them and he refused to give in to their monopoly in medicine. The defendants want their competition shut down and they will resort to any act whatsoever to perpetuate their lucrative monopoly.

CHARGE TEN: DEFENDANTS USE OF FALSE CRIMINAL CHARGES AND SWAT TEAMS AGAINST COMPETITORS
American Board of Internal Medicine Inc called in swat teams to harass and threaten Front Runners, competitors of American Board of Internal Medicine Inc tied-in study manuals. The defendants similarly in September 2010 obtained a swat team to invade Reverend Lasko's home and church and to seize most of his documents and the money inherited from his dead mother and his children's money saved for their future college education. The documents were never returned and included plaintiff's diplomate certification as a specialist, M.D. degree, Doctor of Divinity honorary degrees, certificates of ordination as a Christian Minister, certificates of post graduate training from the Cleveland Clinic and other institutions, and numerous other important documents that were not returned and could not be replaced. Even Reverend Lasko's wife's purse was emptied and her few dollars confiscated.

CHARGE ELEVEN: VIOLATING THE SHERMAN ANTITRUST ACT BY CLAIMING THE RIGHT TO MONITOR AND ABORT ANY NEW MEDICAL ORGANIZATION AND WITH THE COLLABORATION OF GOLDBERG TO THEN INFLICT LARGE FINES AND INCARCERATION OF REVEREND LASKO FOR DARING TO ASSERT HIS RELIGIOUS FREEDOM AND RELIGIOUS EXPRESSION AND FREEDOM OF SPEECH AND FREEDOM OF THE PRESS AND HIS RIGHT TO ORGANIZE NEW CHRISTIAN MEDICAL ORGANIZATIONS AS PART OF HIS MISSION TO BRING CHRIST AND THE TEN COMMANDMENTS TO THE MEDICAL PROFESSION.
This has been done by the defendants to perpetuate their monopoly on the medical profession and it is done under the hypocritical name of "protecting doctors" and "Lasko's contempt of court" (for Reverend Lasko ignoring the prior restraint unconstitutional "gag" order placed against Reverend Lasko by Goldberg acting to aid the anti-competitive requests of the defendants and in transparent violation of the First Amendment Rights of Reverend Lasko).
**(Exhibits A,B,C,D,E,F,G,H)**

CHARGE TWELVE: VIOLATING REVEREND LASKO'S RIGHTS AND VIOLATING THE SHERMAN ANTITRUST ACT AND THE CLAYTON ACT BY DEFENDANTS CLAIMING TO BE "GOOD MONOPOLISTS"
The defendants claim to be virtuously safeguarding medicine (from competitors and medical missionaries) and defendants pretend to ignore the fact that, as with all monopolies, the deprivation of choice for physicians and the ability of the defendant monopolists to charge as high and exorbitant fees as they wish, is destructive to the free market system, extremely harmful to physicians, who then must pass on these high costs to the American public, while the monopolists have huge financial gains. This is the reason for creating monopolies and why

monopolists destroy and abort and stifle all potential competition. Only the following are exempted from antitrust laws, and this does not include any of the defendants:
Labor unions
Agricultural associations and fisheries
Insurance—when state regulation exists, Export trading companies
Professional baseball
Oil marketing
Cooperative research and production
Joint efforts by businesspersons to obtain legislative or executive action
Other activities, including certain national defense actions, state actions, and actions of certain regulated industries

CHARGE THIRTEEN: PRICE FIXING
The defendants have removed and restrained competitors and are free to raise prices as high as they wish and to agree among themselves on high prices for every physician. Recently, the defendants agreed to charge $10,000 to $15,000 for a one day computerized exam for certain heart specialists and for kidney specialists. Since the defendants have eliminated competitors, the physicians throughout the United States have no choice but to pay the defendants whatever exorbitant fees the monopolists want. The defendants have eliminated competition and enjoy the financial fruits of their greed in a lucrative monopoly. When the defendants charged upwards of $3,000 for a one day exam in Geriatric Medicine, and one of Reverend Lasko's organizations charged only $500, the defendants began a defamation campaign with threats and legal attacks and destroyed Reverend Lasko's competing Geriatrics organization. Only a few years later, the defendants asked Goldberg to destroy all present and future Geriatrics organizations founded by Reverend Lasko. Goldberg immediately agreed and besides forbidding Reverend Lasko from any Geriatrics organization now or anytime in the future, Goldberg went on to destroy fifty-five other medical organizations and issued prior restraints and large fines against Reverend Lasko and threats of incarceration of Reverend Lasko if he intruded on the monopoly of the defendants. **(Exhibits D, E, F, G, H)**

CHARGE FOURTEEN: DEFENDANTS' THEFT OF COMPETITOR'S DOCUMENTS AND SUBSEQUENT PUBLIC DEFAMATIONS
The defendants used a swat team in September 2010 to invade Reverend Lasko's home and church and seize most of his documents, including his medical degree, his divinity degree, his diplomate certifications, his certificate as an intern, his certificate of medical residency. his certificate as a Fellow in Internal Medicine at the prestige Cleveland Clinic, his certificate as a Special Fellow in Cardiology at the Cleveland Clinic, his certificate as a Diplomate in Internal Medicine, and a very large number of other documents and certificates, none of which were ever retrieved. Subsequently the defendants' internet postings claimed that Reverend Lasko was only "claiming to be a doctor", as though the thousands of patients were deceived by someone pretending illegally at being a doctor, and discrediting and disgraceing plaintiff on the worldwide web, and laying a groundwork for all manner of lawsuits against the plaintiff, who the defendants described as "running wild".**(Exhibit N)**

CHARGE FIFTEEN: DEFENDANTS THEFT OF REVEREND LASKO'S CHILDREN'S MONEY

Defendants illegally seized plaintiff's oldest child's bank account containing the child's $40. Defendants also illegally seized the middle child's bank account and the youngest child's bank account netting the defendants $240 in money stolen from Reverend Lasko's children.

CHARGE SIXTEEN: DEFENDANTS THEFT OF ALL OF REVEREND LASKO'S FUNDS RENDERING HIM UNABLE TO CONDUCT MINISTRY AND CHURCH BUSINESS
Defendants illegally seized the exempt Social Security money in Reverend Lasko's personal bank account, $800, and defendants seized over $2,000 in Church Ministry Accounts, and defendants seized illegally any moneys in the First Church of the Epiphany account even though it would have been under $200. This deprived Reverend Lasko of money to continue conducting his Christian Evangelical Mission or Christian Ministry or Christian Church.(Exhibit O)

CHARGE SEVENTEEN: DEFENDANTS LOOTING OF CHURCH FUNDS AND LOOTING OF CHRISTIAN MINISTRIES
The money belonging to the church and the Christian Ministries that Reverend Lasko participated in were exempt from seizure, but Defendants, ignoring the Separation of Church and State, and the Right of Freedom of Religion, looted all Church and Christian Ministry accounts. Defendants American Board of Surgery Inc and Saul Ewing firm and their assigns illegally seized church money from the Worldwide Ministries of Jesus Christ, illegally seized money from the First Church of the Epiphany, illegally seized money from the Congregation of Religious Medical Ministries, illegally seized money from over 35 Christian Medical Ministry Organizations, and obstructed and destroyed religious institutions, obstructed the plaintiff in his religious expression, religious practices, and constitutes violation of 18 U.S.C. Section 247, 18 U.S.C. Section 242, 18 U.S.C. Section 241, 18 U.S.C. Section 249. (Exhibit O)

CHARGE EIGHTEEN: ILLEGAL THEFTS AND SEIZURES DONE UNDER THE COLOR OF LAW
Defendants admitted to stealing the small bank account of the Reverend's child who was never a party in the lawsuit, and the defendants illegally took the automobile of the wife of Reverend Lasko, although the car was exempt from any such action, and the defendants illegally took and never returned the Reverend's only automobile which was twenty years old, clearly exempt, and the Reverend's only means of transportation and for the conducting of his Ministry and other Church Business, the defendants admitted to looting the First Church of the Epiphany, and all bank accounts of the Congregation of Religious Medical Ministries and all of its component not for profit Christian Evangelical Ministry Organizations, and the Worldwide Ministries of Jesus Christ bank account. These thefts were done under color of law. None of the illegally seized money was ever returned. These illegal acts were done based upon Goldberg's orders and in violation of Federal Law. 18 U.S.C. Section 247, 18 U.S.C. Section 242, 18 U.S.C. Section 241, 18 U.S.C. Section 249

CHARGE NINETEEN: DEFENDANTS' THEFT OF PLAINTIFF'S AUTOMOBILES RENDERING A COMPETITOR UNABLE TO CONDUCT BUSINESS
Defendants illegally seized Reverend Lasko's twenty year old automobile, and car was clearly exempt being worth less than the $15,000 exemption number, in fact worth only about $3,000, and clearly exempt from seizure and rendered plaintiff unable to conduct church business or church ministries.

CHARGE TWENTY: DEFENDANTS ILLEGAL SEIZURE OF EXEMPT SOCIAL SECURITY MONEY

Defendants American Board of Surgery Inc and Saul Ewing firm and their assigns illegally seized Reverend Lasko's Social Security Money, over $800, that by law was exempt from their seizure.

CHARGE TWENTY-ONE: DEFENDANTS' ATTACK ON PLAINTIFF'S FAMILY

Defendants American Board of Surgery Inc and Saul Ewing firm and their assigns seized Reverend Lasko's wife's nine year old automobile, told Reverend Lasko's wife and little girl that they could be put in prison, told them that they were coming back to take everything, even the possessions of those not included in the seizure order, including the little girl's clothes and possessions, the teenage sons' clothes and possessions, the wife's clothes, household possessions and her furniture, and all property of those not even included in the seizure order. At the time of illegal seizures, told Reverend Lasko's wife and little girl that they could arrest her, handcuff her, put her in prison, causing the little girl to cry uncontrollably and to have a severe asthma attack, and she was not allowed to use her asthma inhaler. They then illegally seized Reverend Lasko's wife's bank account that was exempt from seizure, said they wanted the money from her purse, and left Reverend Lasko and his family penniless and emotionally disraught.

CHARGE TWENTY-TWO: DEFENDANTS AMERICAN BOARD OF SURGERY INCORPORATED AND SAUL EWING FIRM VIOLATED FEDERAL BANKRUPTCY COURT STAY IN NOVEMBER 2012 DESPITE BEING INFORMED OF THE STAY

During automatic stay, defendants continued seizing bank accounts, violating Federal Chapter 7 Bankruptcy Laws and Protections. TITLE 11, CHAPTER 3, SUBCHAPTER IV§ 362. During Stay defendants compelled Deposition of Reverend Lasko and committed acts to turn over Reverend Lasko's property to them and after driving Reverend Lasko to Chapter 7 bankruptcy filed an end run around the federal protection of bankruptcy, by inventing a $50,000 demand on Reverend Lasko, an amount conjured up out of thin air, with no basis on any provable damages of any kind, and this act agreed upon by Goldberg, and this large sum of money being demanded of a poor Reverend on food stamps and trying to feed seven mouths, himself, his wife, his three children, and two poor Hispanic children who Reverend Lasko had taken into his home. This cruelty clearly shows the avarice and malicious nature of these defendants and clearly shows a need for Reverend Lasko to continue trying to bring some Christian Humanitarianism and kindness and compassion to the medical field.**(Exhibit P)**

CHARGE TWENTY-THREE: RACISM AND DENIAL OF CIVIL RIGHTS

The Defendants are lily-white private corporations **(Exhibit A)**who acted as racist action groups to keep the United States medical establishment under the control of a few rich, all white individuals for immense profits and to keep racial minorities from power in the medical establishment and to keep racial minorities from sharing in the immense profits of the white medical establishment, and to do so, defendants destroyed plaintiff's largely non-white membership religious medical organizations and violated the Civil Rights of the plaintiff. Title 42, Chapter 21 of the U.S. Code prohibits discrimination against persons based on race, national origin, and religion. The defendants have acted to calumnize, abort, destroy, and prevent future medical organizations like the ones founded by Reverend Lasko that are composed of sixty to

20

seventy percent non-white racial minorities. The racism of the medical establishment has a long history in the United States, and the defendants' acts against Reverend Lasko and the medical organizations composed largely of racial minorities he has founded, or would ever be able to found. The acts of the defendants help to perpetuate racism in the medical establishment and racism in organizations that monopolize the medical profession, and keep the lucrative benefits of monopoly in the hands of a small number of rich white racist monopolists.

CHARGE TWENTY-FOUR: VIOLATION OF THE FIRST AMENDMENT PROHIBITION AGAINST ESTABLISHMENT OF A STATE RELIGION

The Court Orders by Goldberg deny equal rights to a Christian Reverend, Reverend Lasko, and a Christian Ministry, the Worldwide Ministries of Jesus Christ, and a Christian Church, the First Church of the Epiphany, and a Congregation of Christian Ministries, the Congregation of Religious Medical Ministries, and over fifty Christian Medical Organizations, and restraining orders prohibiting frees speech and religious expression of Christian Evangelical proselitizing by Reverend Lasko, and prohibiting posting of Christian medical organization websites by Reverend Lasko, and allowed the looting of a Christian Church, and the looting of bank accounts of Christian Ministries and Christian Medical Organizations. Judge Goldberg, who is Jewish, has allowed none of these attacks on religion to be done against any Jewish religious entity or any Moslem or Sikh or Hindu or Buddhist or Santoro or any other religious entity except for the Christian religious entities. The Orders of Goldberg thus establish that the Christian Religion is to be discriminated against and punished, and that other religions are not to be subjected to persecution. These Orders are favoring certain religions and destructive of one religion. This violates the First Amendment and tends to establish only certain churches as legal and thus establishes certain religious entities as the only valid state religions, and serves to establish state religions in violation of the First Amendment, and to the great harm of the plaintiff.

CHARGE TWENTY-FIVE: CIVIL RIGHTS VIOLATIONS

The First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The defendants violated the plaintiff's Freedom of Religious Expression, Freedom of Speech, Freedom of Religion, Freedom of the Press, Freedom of Association, Equal Rights Under Law, Due Process of Law, violated the United States Constitution First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, Fourteenth Amendments. In *Everson v. Board of Education* (330 U.S.,1947) the U.S. Supreme Court stated in its majority opinion: "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever from they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect 'a wall of separation

21

between Church and State. Civil rights include a class of rights and freedoms that protect individuals from unwarranted government action and ensure one's ability to participate in civil and political affairs without discrimination or repression.  A civil right is a right or privilege that can be enforced by an individual. Therefore, if a person violates another's civil rights, it gives the later a right to an action for injury.

CHARGE TWENTY-SIX: ILLEGAL VIOLATION OF FIRST AMENDMENT RIGHTS BY PRIOR RESTRAINT

Prior restraints are viewed by the U.S. Supreme Court as "the most serious and the least tolerable infringement on First Amendment Rights." In *Cantwell v. Connecticut,* the ordinance prohibited the solicitation of money or anything of value for a religious, charitable, or philanthropic cause unless the secretary of the public welfare council determined "whether such cause is a religious one or is a bona fide object of charity or philanthropy and conforms to reasonable standards of efficiency and integrity. . . ," In its application to solicitation for religious purposes, the ordinance was held to be invalid as a prior restraint. Prior restraints are considered a violation of the First Amendment and are rarely permitted except in cases in which the publication is obscene, defamatory, or represents a clear and present danger -- a theory articulated by the U. S. Supreme Court in *Near v. Minnesota* (1931).

CHARGE TWENTY-SEVEN: OBTAINING AND USING UNJUSTIFIED AND EXTREMELY INJURIOUS PRIOR RESTRAINT OF FREEDOM OF SPEECH TO PERPETUATE DEFENDANTS MONOPOLY

Defendants sought and obtained from Goldberg prior restraint of Freedom of Speech against Reverend Lasko, preventing him from communicating with any physician or dentist regarding his Christian Evangelical Ministry and Mission to bring Christian Love and Humanitarianism and the Ten Commandments and the Words of Jesus Christ on the Sermon on the Mount known as the Golden Rule to the medical and dental professions. This abuse of prior restraints against Reverend Lasko's Freedom of Speech had no justification. There was no danger to the Nation's Government, no serious danger to the public, no interfering with any war effort, no act like shouting fire in a packed theater, no obscenity, no defamation, no endangerment of anyone. Plaintiff was a Christian Evangelist on an Evangelical Mission to bring religious beliefs to doctors and dentists and this was and is protected speech, and the acts against this by the defendants was done with complete contempt for the Rights of Reverend Lasko and in complete contempt for the First Amendment, and with contemptuous ignoring of a very large body of U.S. Supreme Court and many other high court decisions and in denial of the Doctrine of Stare Decisis, and for the purpose of defendants protecting a monopoly.

CHARGE TWENTY-EIGHT: VIOLATION OF THE RELIGIOUS RESTORATION ACT

42 USC § 2000bb–Free exercise of religion protected, nevertheless the defendants flagrantly violated past, present, and with a priori restraints prevented plaintiff from any future exercise of a Christian Evangelical Mission to bring to physicians the Christian humanitarian values, the Ten Commandments, and the Words of Jesus Christ in the Sermon on the Mount, known as the Golden Rule.

CHARGE TWENTY-NINE: ATTEMPTS TO HAVE REVEREND LASKO INCARCERATED IN AN ILLEGAL FEDERAL DEBTOR'S PRISON

In April 2013, the defendants attempted to have Reverend Lasko handcuffed and incarcerated in a Federal Debtor's Prison, **(Exhibit H)** even though such punishment was outlawed since 1833 by Federal Statutes, ignored by Goldberg, and constitutes cruel and unusual punishment, violation of equal rights under law, indentured servitude, and slavery, and this being done to Reverend Lasko because he invoked his First Amendment Rights and happens to be poor and had taken Vows of Poverty, and had devoted his life to founding not for profit Christian Medical Organizations to bring Christian Love, Christian Humanitarianism, compassion, and kindness to the secular and cold medical profession. The punishment of a man for the crime of being poor is so far outside of the realm of American Justice that it belongs only in Charles Dickens' novels and is an example of a judge in violation of his oath and of the whole concept of Equal Rights Under The Law. It is also closely related to returning slavery to America.

CHARGE THIRTY: ATTEMPTED FALSE IMPRISONMENT
Defendants have attempted to falsely imprison Reverend Lasko for exerting his First Amendment Rights and on the basis of compelled testimony in which Reverend Lasko despite invoking his Right under the Fifth Amendment to not be compelled as a witness against himself. Defendants attempted to use the illegally obtained compelled testimony to attempt to incarcerate Reverend Lasko and violated the Fifth Amendment and the Fourth Amendment prohibition against the use of illegally obtained material as evidence.**(Exhibit H)**

CHARGE THIRTY-ONE: USE OF UNUSUALLY EXTREME OVERLY BROAD AND OVER-REACHING AND NON SEQUITAR RULINGS TO VIOLATE DUE PROCESS OF LAW AND ILLEGALLY THREATEN, FINE, AND ILLEGALLY ATTEMPT TO INCARCERATE REVEREND LASKO
By using a trademark violation against one of Reverend Lasko's religious Christian Evangelical medical organizations, defendants then destroyed over fifty other religious Christian Evangelical medical organizations and even Christian Evangelical dental organizations, and defendants obtained Goldberg's aid in preventing Reverend Lasko from ever founding any future medical or dental organizations. It is beyond any logic or justice to have such an extremely overbroad order, for if there was a trademark violation by one organization, how can one then prohibit all other medical and dental organizations? This is very overly broad and over-reaching. This is a most extreme violation of Due Process and constitutes extreme overstepping of jurisdiction. **(Exhibits B, D, E, J)**

CHARGE THIRTY-TWO: DESTRUCTION OF A CHURCH AND DESTRUCTION OF CHRISTIAN MINISTRIES
Plaintiffs acted to loot a Church, the First Church of the Epiphany, of which Reverend Lasko was a Minister, demanded the destruction of the Worldwide Ministries of Jesus Christ, destroyed the not for profit Congregation of Religious Medical Ministries, destroyed over fifty not for profit Christian Evangelical Medical and Dental Organizations, attacked and destroyed the not for profit Christian Evangelical American Council of Christian Physicians and Surgeons and the not for profit Christian Evangelical American College of Christian Physicians. Violation of Title 18 Section 247, and Title 18 Section 249, the latter being the Hate Crimes Act.

CHARGE THIRTY-THREE: DEFAMATION, LIBEL, FALSE LIGHT
**(Exhibit N)** Internet postings, the websites of the defendants, medical magazine articles, medical

journal articles, letters, and e-mails to physicians, have been continually used to calumnize and falsely accuse the plaintiff of illegal acts, fraudulent acts, misrepresentations, and with a cruel and vicious heart portrayed Reverend Lasko and his Mission to bring the Ten Commandments, the Words of Jesus Christ, and Christian Love and Humanitarianism to Medicine, as if this was an evil, corrupt, illegal, and malignant undertaking, and that only the defendants were honest, legal, and virtuous, and the defendants fraudulently portrayed themselves as though they were official and were the only legal medical organizations, and that Reverend Lasko was somehow violating the law with organizations competing with the defendants. The defendants falsely claimed that Reverend Lasko was "running wild" and "selling degrees" and "selling false documents" and "selling false Titles" and implied Reverend Lasko, an M.D. and a Diplomate, was not really a Doctor of Medicine and not a Doctor certified as a diplomate of the American Board of Internal Medicine Inc. The continuous lies, calumnies, misstatements, half truths, and false light have been done for many years and destroyed many of the plaintiff's organizations. In order to destroy competition and secure its monopoly status, American Board of Surgery Inc and American Board of Internal Medicine Inc committed fraudulent misrepresentation claiming Reverend Doctor Lasko was "selling" "diplomate certifications" and certifying specialist training in surgery", instead of his actually only offering voluntary memberships and voluntary membership as fellows of organizations under his Christian Ministry, and had been seeking to have doctors swear an oath to uphold Jesus' Words as in the Golden Rule and Moses' Ten Commandments given by God. Defendants' fraudulent postings and misrepresentation that certifying as a specialist was done, fraudulent statements about plaintiff certifying surgeons, which plaintiff never did, plaintiff offered a membership organization that never certified any surgeon or plastic surgeon, only offering membership and fellowship in organizations. American Board of Surgery Inc, a private corporation, has committed conspiracy to monopolize, fraudulent misrepresentation, interference with and destruction of all of the following Christian Evangelical medical organizations, and conducted campaigns of libel and slander, violation of individual and corporate civil rights, and attempting to monopolize the medical marketplace by interfering with and destroying all of the following competing medical organizations, in defiance and violation of Federal antitrust laws, and in its desire to maintain a monopoly in the medical marketplace driving up the costs of healthcare for the defendants' own selfish agrandizement, the American Board of Surgery Inc and the American Board of Internal Medicine Inc have conspired to damage and interfere with and destroy competition by all of the following organizations:

AMERICAN ACADEMY OF PEDIATRICS
AMERICAN ACADEMY OF AMBULATORY MEDICINE
VARIOUS EMERGENCY MEDICINE ORGANIZATIONS, INCLUDING AMERICAN ACADEMY OF EMERGENCY MEDICINE, AMERICAN BOARD OF EMERGENCY MEDICINE, AND OTHERS
AMERICAN ACADEMY OF NEUROLOGICAL AND ORTHOPEDIC SURGEONS
AND ALL OF REVEREND DOCTOR LASKO'S ATTEMPTS TO BRING CHRISTIAN HUMANITARIANISM TO EVERY SPECIALTY, INCLUDING:
AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS
AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS AND SURGEONS
AMERICAN COUNCIL OF CHRISTIAN PHYSICIANS AND SURGEONS
AMERICAN ACADEMY OF SURGERY
AMERICAN COUNCIL OF SURGEONS
AMERICAN COUNCIL OF SURGICAL SPECIALISTS

AMERICAN COLLEGE OF GENERAL SURGEONS
AMERICAN BOARD OF GENERAL SURGEONS
AMERICAN ACADEMY OF PLASTIC SURGERY
AMERICAN BOARD OF COSMETIC AND PLASTIC SURGERY
AMERICAN ACADEMY OF COSMETIC BREAST SURGERY
AMERICAN COLLEGE OF ETHICAL PHYSICIANS
AMERICAN BOARD OF ETHICAL PHYSICIANS
AMERICAN ACADEMY OF ETHICAL PHYSICIANS
AMERICAN COLLEGE OF ETHICAL PHYSICIANS
AMERICAN COLLEGE OF GERIATRICS
AMERICAN ACADEMY OF ONCOLOGY
AMERICAN BOARD OF DIABETES
AMERICAN COLLEGE OF CANCER SPECIALISTS
AMERICAN ACADEMY OF CARDIOLOGY
AMERICAN COLLEGE OF GERIATRICS SPECIALISTS
AMERICAN COLLEGE OF SPECIALISTS IN GERIATRICS
AMERICAN BOARD OF HOSPITALIST PHYSICIANS
AMERICAN BOARD OF HOSPITALISTS
AMERICAN COLLEGE OF DIABETES SPECIALISTS
AMERICAN BOARD OF GERIATRIC MEDICINE
AMERICAN BOARD OF GERIATRICS
AMERICAN ACADEMY OF GERIATRICS
NATIONAL COUNCIL OF CHRISTIAN PHYSICIANS
CONGREGATION OF RELIGIOUS MEDICAL ORGANIZATIONS
U.S. FEDERATION OF MEDICAL SPECIALISTS
U.S. MEDICAL SPECIALISTS FEDERATION
NATIONAL ACADEMY OF MEDICINE
NATIONAL ACADEMY OF DENTAL SCIENCES
AMERICAN PEDIATRICS COUNCIL
AMERICAN PEDIATRICS ASSOCIATION
AMERICAN COUNCIL OF PEDIATRICS SPECIALISTS
AMERICAN ACADEMY OF PSYCHIATRY
AMERICAN BOARD OF PSYCHIATRY
AMERICAN ACADEMY OF ETHICAL PSYCHIATRY
AND NUMEROUS OTHER ORGANIZATIONS, that were Not For Profit Christian Evangelical Organizations reaching out to every medical specialty and were each devoted to bringing Christian Humanitarianism, the Golden Rule And The Ten Commandments to Medicine. To stop the plaintiff's organizations from interfering with the defendants' lucrative monopoly in Medicine, the defendants Violated the Plaintiff's Freedom of Speech, Freedom of Association, Freedom of Religion, Freedom of Religious Expression, Freedom of the Press, Freedom of Association, Right to Organize, and Corporate Freedom of Speech, Corporate Freedom of Association, Corporate Freedom of Religion, Corporate Freedom of the Press, Corporate Freedom of Association, and defendants have permanently injured, damaged, and acted to destroy a Christian Church, a Christian Evangelical Ministry, and A Christian Minister, and sought to make the plaintiff an extreme example of what the defendants and their monopoly can do against anyone daring to compete against them. **(Exhibit C):** Defendants knew they were

committing defamation, libel, slander, and they tried to trick the plaintiff into signing away his right to sue them.

## CHARGE THIRTY-FOUR: FALSE STATEMENTS MADE IN LEGAL DOCUMENTS, PERJURY

Repeatedly, defendants lied in legal documents and falsely claimed that Reverend Lasko was "selling degrees" and "selling false documents" and "certifying surgeons" and "selling false titles", and defendants implied Reverend Lasko was not really a Doctor of Medicine and was not a doctor certified as a specialist and a diplomate of the American Board of Internal Medicine Inc. In order to destroy competition and make secure their monopoly status, American Board of Surgery Inc and Saul Ewing firm committed fraudulent misrepresentations on legal documents claiming plaintiff was "selling" "diplomate certifications" and "certifying specialist training in surgery", **(Exhibit Q and also E and N)** instead of his actually only offering voluntary memberships and voluntary membership as fellows of organizations, under his Christian Ministry seeking to have doctors swear an oath to uphold and promote Jesus Christ's words as in the Golden Rule and the Ten Commandments given by God, and particularly the Lord's Commandment That Thou Shalt Not Kill.

## CHARGE THIRTY-FIVE: VIOLATION OF THE RIGHT TO ORGANIZE AND THE NATIONAL LABOR RELATIONS ACT

Under the First Amendment Right of Peaceable Assembly comes the Right to Freedom of Association and the Right to Organize. The Supreme Court, recognizing the freedom of association as indispensable to all Americans, unanimously stated "effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association... state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." "It is the freedom of association which creates the possibility for citizens to win other freedoms." The freedom of association is closely linked with the right to organize. The right to organize is preserved by the National Labor Relations Act, 29 U.S.C. § 151–169.

## CHARGE THIRTY-SIX: DEFENDANTS HAVE COMMITTED RICO VIOLATIONS TO PERPETUATE THEIR MONOPOLY

After losing a federal antitrust suit on behalf of the American Medical Association, the Saul Ewing law firm began a policy of large donations to political organizations of federal and state judges. The Saul Ewing firm, now representing the defendants, donated over $450,000 **(Exhibit V)** to the political organization of Mitchell S. Goldberg, who acting as a judge awarded the defendants a default judgement against Reverend Lasko for a claim of trademark infringement by one of his Christian medical organizations *before* Reverend Lasko was even served at his legal address! Goldberg then gave the defendants everything they asked for and much more, and ignored Reverend Lasko pleadings that this was violating his First Amendment Rights, violating relevant U.S. Supreme Court decisions, and furthering an illegal monopoly. According to Philadelphia lawyer Gary Green, Goldberg has reacted with serious anger at the mention of the First Amendment in his courtroom. In April 2013, Goldberg told Reverend Lasko that he, Goldberg, recognized Reverend Lasko as a Christian Minister but would never accept anything Reverend Lasko claimed regarding the First Amendment. This included Reverend Lasko citing the Separation of Church and State, government non-interference or entanglement with religious

pursuits, Freedom of Religious Expression, Freedom of Speech, Freedom of Religion, Freedom of the Press, Freedom of Association. **(Exhibit H)** When Reverend Lasko insisted he had First Amendment Rights, Goldberg immediately cut him off and simply answered, "There are many exceptions to the First Amendment", but Goldberg refused to explain what exception he was referring to, if any existed. Goldberg then asked the lawyer for the Saul Ewing firm that had generously donated $450,000 to Goldberg's political organization, that *they* were to be the one to render sentence and incarceration of Reverend Lasko, turning his court into a Star Chamber proceeding judiciated by the Saul Ewing firm as prosecutor, judge, jury, and executioner. **(Exhibit H)** Goldberg compelled Reverend Lasko to be a witness against himself, over-ruling Reverend Lasko invoking his Fifth Amendment Right against being compelled to be a witness against himself in what Goldberg had now turned into a criminal trial. **(Exhibit H)** Goldberg using the illegally compelled testimony forced from Reverend Lasko against himself, violating the Fourth and Fifth Amendments in using illegally obtained evidence, Goldberg then invented a Federal Debtors Prison for incarcerating Reverend Lasko because he had no money and had taken Vows of Poverty, **(Exhibit H)** even though Federal Debtors Prisons were outlawed by Federal Statutes since 1833 and constituted cruel and unusual punishment, indentured servitude, and slavery, unequal treatment under the law, violation of Due Process. Goldberg had now violated the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments. To completely accommodate every request made against Reverend Lasko by the defendants over the past four years, Goldberg has ordered the abolition of over fifty Christian Evangelical not for profit medical and dental organizations founded by Reverend Lasko, condoned the looting of Reverend Lasko's First Church of the Epiphany by the American Board of Surgery Inc and the Saul Ewing firm, and ordered the destruction of the not for profit Christian Evangelical Congregation of Religious Medical Ministries and all of its component not for profit Christian Evangelical medical organizations and empowered the defendants to demand destruction of the Worldwide Ministries of Jesus Christ. To further accommodate all of the requests of the Saul Ewing firm and the American Board of Surgery Inc, Goldberg ordered a priori restraints against Reverend Lasko, prior restraints against writing or communicating with doctors or dentists on behalf of his Christian Evangelical Mission and ordered Reverend Lasko to never establish any kind of medical or dental organization ever again nor continue his Christian Evangelical Mission. Goldberg further asked the American Board of Surgery Inc and its lawyers, the Saul Ewing firm, that had contributed $450,000 to Goldberg's political organization, what other large fines and what prison sentence they would like him to inflict on Reverend Lasko. As if the American Board of Surgery Inc and the generous Saul Ewing firm were now to be prosecutor, judge, jury, and executioner, completely making a mockery of Due Process of Law, Fairness, Equal Rights. To aid the $450,000 donor to his political organization, Goldberg had violated his Oath thrice given to Uphold and Defend the United States Constitution, had violated the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments, and had ignored over fifty United States Supreme Court decisions that protected Reverend Lasko from violations of his Rights under the Law. It is a RICO violation to tamper with a judge. It is a RICO violation to use any form of bribery to affect a decision in a Court of Law. It is a RICO violation to Obstruct Justice. It is the RICO violation, slavery, to have a citizen incarcerated in an illegal Federal Debtors Prison. These RICO violations have been a pattern over several years and are violations set forth in 18 U.S.C.1961. A pattern of RICO violations of obstruction of justice by the Defendants has been continuous and blatant. Defendants denied Reverend Lasko's Constitutional Rights so as to obstruct justice. Defendants have been empowered to ignore the facts, ignore the law, cite

erroneous case law, cite case law that does not support the subject of the citation. Orders have been issued that contained false statements and perjury. Defendants have violated Due Process, rendering decisions that were unusual and extremely overly broad and extremely over-reaching and outside of their jurisdiction, this has been done to obstruct justice. Defendants have denied Reverend Lasko's Right to Appeal the unconstitutional and overly broad and over-reaching decision of Goldberg against Reverend Lasko by setting a bar of $10,000 for Reverend Lasko, a pauper, preventing appeal of the wrongful decision in December 2010, denying the plaintiff access to the courts, and allowing the defendants to obstruct justice. Goldberg ignored violations of the Constitution and especially of the First Amendment and ignored a large body of United States Supreme Court decisions forbidding these very violations of the Constitution and has ignored all of the wrongdoing of the American Board of Surgerry Inc and the Saul Ewing firm so as to reward them for obstruction of justice and their donating $450,000 to his political organization. Documents have been concealed to obstruct justice. Laws and rules have been violated to obstruct justice. Orders have been issued to obstruct justice. Valid motions have been denied to obstruct justice. The right to file motions has been denied to obstruct justice. Reverend Lasko has been libeled to obstruct justice. A judge has refused to recuse himself to obstruct justice. A judge has refused a change of venue to obstruct justice. A judge has claimed Reverend Lasko's appeals have been frivolous to obstruct justice. A judge has not properly handled various filings in order to obstruct justice. Goldberg and the other defendants have ignored case law to obstruct justice. Defendants may have attempted to have Reverend Lasko killed to obstruct justice. Defendants have had campaigns of lies, misstatements, false light, libel and slander to obstruct justice. Defendants have invented illegal Federal Debtors Prisons to enslave Reverend Lasko and silence him and obstruct justice. The "pattern of racketeering activity" consisted of many incidents of racketeering activity that have the same or similar intents, results, accomplices, victims, and methods of commission and are interrelated by distinguishing characteristics. The acts of racketeering activity committed by defendants have the same or similar methods of commission in that they involve the various aspects of committing fraud in legal matters, including obstruction of justice, perjury, false statements in orders, improper claims of law and case law, and more. The acts of racketeering activity committed by defendants have the same or similar objective: commit fraud upon the courts and upon Reverend Lasko, the Worldwide Ministries of Jesus Christ, and the Congregation of Religious Medical Ministries. Defendants' acts of racketeering activity involve a distinct threat of long-term racketeering activity. This activity has continued for years, is ongoing at the present time, and will continue into the future with a threat of repetition unless halted by judicial intervention. Defendants' actions appear to be part of a regular way of conducting business. The actions of a judge in engaging in the conspiracy are not part of a function normally performed by a judge, and thus are non-judicial. Judges do not have immunity for non-judicial acts. The association of defendants constitutes an enterprise. The enterprise is composed of groups of individuals and entities associated in fact although not a legal entity. The enterprise was established and maintained for the purpose of committing illegal acts and to perpetuate a lucrative monopoly and to milk physicians and their patients with exorbitant costs and fees. Defendants' violations of the RICO Act proximately have caused severe injury to Reverend Lasko, his Church, his Ministry, and his Christian Mission to bring Jesus Christ and the Ten Commandments and prayer and Christian Humanitarianism to Medicine. Defendants' violations of the RICO Act were intended to and did in fact subvert the legal and judicial process. The tortious conduct of defendants demonstrated an indifference to and a reckless disregard for the Rule of Law, the U.S. Constitution, Civil Rights, ,

28

the U.S. Supreme Court and other high courts, and serious and flagrant Antitrust Violations. The conduct involved repeated actions. The harm was the result of intentional malice, trickery, and deceit and were the acts not of decent individuals, but acts of racketeers with no moral scruples and no hesitation to violate civil rights, obstruct justice, influence judges, and are all violations of the RICO Act.

CHARGE THIRTY-SEVEN: DEFENDANTS VIOLATION OF THE FEDERAL HATE CRIMES ACT

Title 18, U.S.C., Section 249: Congress has defined a hate crime as a "criminal offense against a person or property motivated in whole or in part by an offender's bias against a race, religion, ethnic origin". All of the religious medical organizations attacked and destroyed by the defendants are comprised of 60 to 70 per cent racial minorities, all of the organizations attacked by the essentially all white defendants had been told that these minority racial organizations had no right to exist or to be any part of the white medical establishment. All of the organizations were part of a Christian Mission to bring Jesus Christ, Christian Humanitarianism, and the Ten Commandments to the medical profession, all were destroyed and prevented from promoting these religious beliefs. Public Law #103-322A, a 1994 federal law, defines a hate crime as:"a crime in which the defendant intentionally selects a victim, or in the case of a property crime, the property that is the object of the crime, because of the actual or perceived race, color, religion, national origin, ethnicity, gender, disability, or sexual orientation of any person."

CHARGE THIRTY-EIGHT: DEFENDANTS' VIOLATIONS OF THE PLAINTIFF'S CIVIL RIGHTS UNDER COLOR OF LAW

Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law: It is a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S. Acts under "color of any law" include acts not only done by federal, state, or local officials within the bounds or limits of their lawful authority, but also acts done without and beyond the bounds of their lawful authority; provided that, in order for unlawful acts of any official to be done under "color of any law," the unlawful acts must be done while such official is purporting or pretending to act in the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors, Security Guards, etc., persons who are bound by laws, statutes, ordinances, or customs. The plaintiff has been deprived of all Rights guaranteed by the First Amendment, under the color of law, and also deprived under color of law, plaintiff's Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendment Rights, including being deprived under color of law of Equal Treatment Under the Law, Due Process of Law, and the Right not to be an Indentured Servant or a Slave, and the Right to be Not Subjected to Any Cruel or Unusual Punishments.

CHARGE THIRTY-NINE: DEFENDANTS VIOLATION OF CIVIL RIGHTS UNDER TITLE 18, U.S.C., SECTION 241: CONSPIRACY AGAINST RIGHTS

It is unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same). It has been the continuous practice of the defendants to conspire to

injure, oppress, threaten. intimidate, penalize, and prevent Reverend Lasko from his Rights as a U.S. Citizen to express his Freedom of Religious Expression, Freedom of Speech, Freedom of Religion, Freedom of the Press, Freedom of Association, and other Constitutional Rights. The defendants have violated these Rights of the plaintiff and have imposed large money penalties and threats of imprisonment to violate Reverend Lasko's Civil Rights.

CHARGE FORTY: DEFENDANTS VIOLATION OF TITLE 18 SECTION 247, U.S.C., Prohibits intentional obstruction by force or threat of force, or attempts to obstruct any person in the enjoyment of that person's free exercise of religious beliefs. 18 USC 247, Sec. 247. Damage to religious property; obstruction of persons in the free exercise of religious beliefs.

CHARGE FORTY-ONE: DEFENDANTS CONTINUOUS WILLFUL AND MALICIOUS INFLICTION OF PERSONAL INJURY AGAINST REVEREND LASKO TO PUNISH HIS SPEAKING OUT AGAINST UNNECESSARY SURGERY AND AGAINST THE ALL WHITE RACISM OF THE DEFENDANT ORGANIZATIONS, AND THEIR ACTS TO DESTROY THE PLAINTIFF FOR ENDANGERING THEIR MONOPOLY
Since the publication of his book and his 150 television and radio appearances criticizing defendants and their cohorts and particularly since Reverend Lasko created religious medical organizations that the defendants wished to destroy and prevent from any future challenges by Reverend Lasko endangering the defendants' monopoly, there has been a campaign of threats, harassment, defamation, fines, threats of imprisonment against Reverend Lasko who has sustained three heart attacks, severe angina pectoris, severe cardiac disability, continuous nightmares about the defendants having him arrested and taking the home and money for food from his children. The defendants have used retribution and defamation to drive the plaintiff from the profession of medicine, and have driven him to change his name, caused his wife to tire of the constant harassment by the defendants and divorced Reverend Lasko after twenty years of marriage, the defendants have taken Reverend Lasko's twenty year old car and deprived him of transportation to do his church ministry, have stolen his child's small bank account, causing further distress to Reverend Lasko and his family, have deposed and interrogated him again and again and again, sent hundreds of pages in interrogatories to him while on a life saving medical mission in Cambodia **(Exhibit R),** have driven Reverend Lasko and his wife to Chapter Seven bankruptcy **(Exhibit P),** have pauperized Reverend Lasko, and have prevented Reverend Lasko from his Ministry having any further Christian medical missions or establishing any more homeless shelters or children's playgrounds, the defendants acts against Reverend Lasko and his Ministry have even prevented further efforts of the plaintiff's Childrens Christian Crusade to Save Street Children from Murder by Death Squads in Latin America. On receiving yet another threatening deposition from the defendants in early September of 2013, Reverend Lasko became upset and sustained his third heart attack.**(Exhibit S)**

CHARGE FORTY-TWO: DEFENDANTS RELIGIOUS PERSECUTION OF THE PLAINTIFF
Religious freedom is not just the freedom of worship, nor can it be reduced to an internal act of conscience or limited to its expression within the close circle of those whose faith one shares. The full integrity of the right to religious freedom includes dimensions that should be, all of them, not only respected but also promoted: the freedom to practice religion in private or public, individually or collectively, and, in addition, the public recognition of its institutional dimension, and the right to proselitize, promote, spread one's religious beliefs. Severe violation of freedom

of religion, regardless of which component of that freedom is targeted by the violation, is likely to amount to an 'act of persecution' where the asylum-seeker, by exercising that freedom or infringing the restrictions placed on the exercise of that freedom in his country of origin, runs a real risk of being executed or subjected to torture, or inhuman or degrading treatment, of being reduced to slavery or servitude, or of being prosecuted or imprisoned arbitrarily. Thomas Jefferson stated: "No provision in our Constitution ought to be dearer to man than that which protects the rights of conscience against the enterprises of the civil authority." This includes the "rights of conscience" that multitudes of others may disagree with."The Establishment Clause thus stands as an expression of principle on the part of the founders of our Constitution that religion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate. Another purpose of the Establishment Clause rested upon an awareness of the historical fact that governmentally established religions and religious persecutions go hand in hand."

CHARGE FORTY-THREE: DEFENDANTS THREATENED PLAINTIFF WITH ILLEGAL FEDERAL DEBTORS PRISON AND STATED THEY WOULD ENFORCE THIS IN SIX MONTHS AFTER THEIR STATEMENT TO DO THIS IN APRIL 2013 **(Exhibit H)**
Since 1833, Federal Statutes have made federal debtors prisons illegal, and such prisons violate the prohibition against cruel and unusual punishment, violate prohibitions against indentured servitude and slavery, deny the poor the Equal Protection of the Law, and are considered barbaric as well as completely illegal. *Williams v. Illinois* (1970) and *Bearden v. Georgia* (1983 *Tate v. Short* (1971), *Griffin v. Illinois*. In Tate v. Short (1971) the Court found it unconstitutional to impose a fine as a sentence and then automatically convert it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full. This is exactly what Goldberg, American Board of Surgery Inc. and Saul Ewing firm are doing **(Exhibit H)**.The fines themselves were illegal in the first place, because Reverend Lasko was to be fined for his Religious Expression and his Christian Evangelical proselitizing. Nevertheless, defendants Goldberg, American Board of Surgery Inc, Saul Ewing firm, were threatening Reverend Lasko with handcuffing and debtors prison in April 2013, and Goldberg stated Reverend Lasko, a pauper who had taken vows of poverty, had six months to get some money to pay defendants a fine that Goldberg was going to give for plaintiff exercising his Freedom of Speech and Freedom of Religious Expression in his Christian Evangelical Medical Mission, and if plaintiff could not pay this fine, plaintiff to be thrown into a Federal Debtors Prison. **(Exhibit H)** This puts American Justice as depending entirely on how rich you are, and essentially enslaves the poor. Goldberg is known for his propensity for ultra lengthy sentencing and recently gave two pornographers 25 years in Federal Prison with no parole. The constant threats of prison, large fines, dismissal of his civil rights, lack of rule of law, lack of any constitutional protections, ignoring U.S. Supreme Court decisions, ignoring of Oaths, and subjecting the plaintiff to the cruel and illegal whims of sadistic individuals acting above the law, outside of the law, and maliciously threatening, harassing, injuring Reverend Lasko, has had a severe effect on Reverend Lasko, who is a sick, seventy-year old with a history of severe and malignant arterial hypertension, coronary artery disease, three heart attacks, and has been devastating to the life and health and family of the plaintiff, and it appears to be the goal of the defendants to so harass the plaintiff as to hasten his death, while being imprisoned for the crime of being poor, and for being a sincere believer in God, and for spreading Jesus' Words, and for invoking his Constitutional Rights as an American Citizen.

31

CHARGE FORTY-FOUR: VIOLATION OF PLAINTIFF'S FIFTH AND FOURTH AMENDMENT RIGHTS:

September 26, 2013, Goldberg issued a court order compelling Reverend Lasko to be a witness against himself despite Reverend Lasko invoking his Fifth Amendment Right and in spite of Goldberg's previous statements in April 2013 that he would use such compelled statements by Reverend Lasko to incarcerate him. **(Exhibits H and S)** And even though Reverend Lasko was recovering from a heart attack. Violating the Fifth Amendment and violating the Fourth Amendment by using illegally obtained evidence to convict criminally in April 2013**(Exhibit H),** Goldberg continued to deprive Reverend Lasko of his Constitutionally guaranteed Civil Rights and to violate Due Process of Law and to deny Reverend Lasko of any of the Equal Protections of the Law. The defendants Goldberg, Saul Ewing firm, American Board of Surgery Inc thus continuing their war against the United States Constitution and the Bill of Rights, and continued their malicious persecution of Reverend Lasko for his exerting his religious beliefs and for challenging the defendants' monopoly, and for having spoken out against abuses of the public by unnecessary surgery, the Code of Silence in Medicine, and the worship of money in medicine.

CHARGE FORTY-FIVE: DEFENDANTS HAVE ACTED TO MALICIOUSLY INFLICT PERSONAL INJURY TO REVEREND LASKO AND HIS FAMILY

The constant threats of prison, large fines, dismissal of his civil rights, lack of rule of law, lack of any constitutional protections, ignoring of all U.S. Supreme Court decisions that protect civil rights, being subjected to the whims of sadistic individuals acting as if they are above the law and maliciously threatening, harassing, injuring Reverend Lasko, has had a severe effect on Reverend Lasko, a sick, seventy-year old with a history of severe and malignant arterial hypertension, coronary artery disease, three heart attacks, including most recently August and September 2013 **(Exhibit S),** and has been devastating to the life and health of Reverend Lasko and it appears to be the goal of the defendants to hasten the death of Reverend Lasko. (There was a previous attempt of a gunman to murder Reverend Lasko after a speech he made against the unnecessary surgery that was going on.) They have caused so great a degree of emotional stress to his family, that Reverend Lasko's wife of twenty years could not take the continuing harassing and threats by the defendants against Reverend Lasko, and divorced him. The children of Reverend Lasko have also been harmed by the constant harassment and are now alienated from their father, Reverend Lasko. The continuing campaign against Reverend Lasko has ruined his reputation and he has felt forced to have a legal name change, and even that change of name was subject for further harassment by the defendants in April 2013 **(Exhibit H)**. Typical of the cold and cruel harassment and personal injuries is the insistence of the defendants, particularly American Board of Surgery Inc., Saul Ewing firm, and Goldberg, insisting on a stressful interrogation and deposition of plaintiff, for at least the third or fourth time, in October 2013, especially after their learning that plaintiff was recovering from a heart attack and the stress they insisted on giving the defendant at that particular time that would be damaging and possibly fatal, yet defendants insisted on inflicting this stress at that very time and despite plaintiff objections and despite the damage and endangerment to plaintiff's recovery. **(Exhibit S)**

CHARGE FORTY-SIX: DEFENDANTS HAVE ALL ACTED TO CONTINUALLY VIOLATE PLAINTIFF'S EQUAL RIGHTS UNDER THE LAW AND EQUAL PROTECTION

OF THE LAW

42 USC § 1981 - Equal rights under the law: a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Protection against impairment:

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Defendants have violated Reverend Lasko's Rights and denied him the Equal Rights of a U.S. Citizen and Equal Protection of the Law:

The Fourteenth Amendment: The right of all persons to have the same access to the law and courts, and to be treated equally by the law and courts:

The defendants have acted as though Reverend Lasko has none of the Rights of a U.S. Citizen, Reverend Lasko is a natural born U.S. Citizen and has been denied equal protection of the law and the same rights of every U.S. Citizen.

Among the following violatiions by the defendants against Plaintiff:

-Civil Rights Violations: Reverend Lasko's Civil Rights as a United States Citizen have been violated

-Violation of Freedom of Religious Expression

-Violation of Freedom of Speech by Use of Prior Restraint

-Violation of Freedom of the Press (Internet Websites) and Prior Restraint

-Violation of Freedom of Association

-Violation of Religious Freedom

-Violation of the Separation of Church and State and Freedom from Government Entanglement With Religion

-Violation of the Right to Proseletize one's Religion, Religious Beliefs, and Religious Mission

-Violation of the Right to Compete

-Violation of the Sherman Antitrust Act and the Clayton Act in order to injure Reverend Lasko destroy him as a competitor, and this done openly, severely, and as though defendants, like Major League Baseball, can act as though there were no antitrust laws or as though defendants did not have to follow the Law, and could destroy competitors like Reverend Lasko and fifty-five competing organizations at will

-Violation of plaintiff's Right to Engage in Interstate Commerce

-Violation of Reverend Lasko's Rights under the Religious Restoration Act

-False Imprisonment

-Illegal Federal Debtor's Prison, since 1833 illegal, but making a special exception just for Reverend Lasko to be incarcerated in a forbidden and illegal debtor's prison and this includes giving Reverend Lasko special cruel and unusual punishment and illegally resurrecting the horrors of indentured servitude and slavery just for Reverend Lasko although this has been outlawed since the Civil War

-Violation of Due Process of Law by rendering default decisions based on false presentation of trademark infringement, default decision given before proper notification of Reverend Lasko at his legal address

- Violation of Due Process of Law by extremely overbroad and over-reaching orders

- Violation of Due Process of Law by preventing pauper Reverend Lasko from the Right to Appeal by imposing a $10,000 requirement for him to do so, preventing appeal of a dangerously wrongful and unconstitutional overbroad over-reaching set of orders, effectively shielding defendants from judicial review of their wrongdoings and unconstitutional decisions and orders
-Extreme violation of Due Process by a judge asking a party to a lawsuit to act as judge and jury and prosecutor and executioner against the other party, and a judge asking that party to be the one to render a decision of incarceration and to decide on how long the other party should be incarcerated, the judge not acting as a judge but as a member of one of the parties in a lawsuit
-Violation of Due Process Of Law by a judge violating the law, violating the Constitution, violating his Oath to Uphold and Defend the Constitution, ignoring the Law, ignoring Stare Decisis, ignoring the large body of U.S. Supreme Court decisions protecting civil rights, and protecting those Rights guaranteed by the U.S. Constitution
-Violating Due Process Of Law by a judge exceeding his jurisdiction
-Violating Due Process Of Law by a judge acting as an enemy of the Constitution
-Violating Due Process Of Law by a judge ignoring all civil rights decisions by the U.S. Supreme Court
-Violating Due Process Of Law by a judge ignoring the law and acting not as a judge
-Destruction of Reverend Lasko's Church and looting of his church
-Destruction of Reverend Lasko's Christian Evangelical Ministries and Christian Ministry Organizations and looting of each of them
-Illegal thefts and seizures under color of law
-Admission of false statements in lawsuit against Reverend Lasko
-Perjured Statements by the Defendants allowed to be used against Reverend Lasko
-Defamation and libel and slanderous false statements allowed to be used against Reverend Lasko
-Violation of Stay during Chapter 7 Federal Bankruptcy filing
-Violation of laws protecting Social Security moneys from seizure
-Violation of law by stealing Reverend Lasko's child's bank account
-Violation of law by stealing automobiles that were exempt from seizure
-Violation of RICO Laws including Wrongful Influence or Bribery and Acts of Obstruction of Justice
-Violation of Federal Law regarding obstructing the free exercise of religion, and destruction of a church and destruction of a ministry
-Violation of laws against Religious Persecution
-Violations made as conspiracy against Federally Protected Civil Rights of a US citizen
- Violations made under color of law against Federally Protected Civil Rights of a US citizen
-Fraud upon the court, issuance of illegal and unconstitutional orders against Reverend Lasko
-Punishing Reverend Lasko for asserting his Rights as a US Citizen
-Violation of the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments to the United States Constitution
-Illegal attempts to enforce Constitutionally Void Orders against Reverend Lasko
-Violating Plaintiff Fifth Amendment Rights by compelling him to be a witness against himself while Goldberg turned a civil proceeding into a criminal one against Reverend Lasko and violated the Fifth and Fourth Amendment Rights by using illegally obtained testimony against Reverend Lasko and refused to allow Reverend Lasko to invoke his Fifth Amendment Right not to be compelled to be a witness against himself and giving no Miranda Warning or allowing

34

appointment of a lawyer as was requested by Reverend Lasko.
-Violating Reverend Lasko's Rights to form any new religious medical or dental organization
-Violating Reverend Lasko's Right to proselitize on behalf of his Christian organizations
-Violation of judicial oath solemnly sworn to on three occasions to "Defend and to Support the United States Constitution"
-Violation of Oath of Pennsylvania bar to uphold and defend the United States Constitution
-Violation of Due Process in rendering default decisions against Reverend Lasko before he was served at his legal address
-Violating Due Process of Law with extremely over-reaching and overly broad orders
-Issuance of illegal Prior Restraints against Reverend Lasko's Freedom of Speech, Freedom of the Press. Freedom of Religious Expression
-Violation of the Doctrine of Stare Decisis
-Denial of Equal Rights to Reverend Lasko as a U.S. Citizen
-Denial of Equal Protection of the Law to Reverend Lasko
-Ignoring the Supremacy Clause of the United States Constitution
-Violation of the Rule of Law
-Acting to destroy existing competing medical organizations
-Acting to abort any new competing medical organizations
-Acting under color of law to seek out and destroy any existing or new competitor medical organizations
-Acting under color of law with the aid and encouragement of Goldberg to seek and destroy competition in the medical marketplace, and to have competitors harassed, subjected to legal attacks, defamation campaigns, large fines, prior restraints, violation of civil rights laws and other laws, and causing the incarceration of competitors for the crimes of being poor and for exercising Constitutional Rights
-Using Trademark Law to destroy potential competitors, even though the Trademark Law was meant to increase competition
- Violation of the Sherman Antitrust Act and Clayton Act to control a market, eliminate competition, fix prices, establish tying-in arrangements and boycotts, and raise fees outrageously to doctors for certification and to raise the cost to consumers of medical care, as the doctors passed on the increased costs to the patients

CHARGE FORTY-SEVEN: DEFENDANTS VIOLATION OF ARTICLE VI, SECTION 2 OF THE U.S. CONSTITUTION
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Defendants have ignored the Supremacy of the Constitution and have violated Amendments 1, 4, 5, 6, 8, 10, 13, and 14.

CHARGE FORTY-EIGHT: VIOLATION OF SWORN OATHS TO UPHOLD AND DEFEND THE UNITED STATES CONSTITUTION
Mitchell S. Goldberg has sworn three times to Solemn Oaths to Uphold and Defend the United States Constitution. After his appointment by a man who stated "the Constitution is just a goddamn piece of paper", Goldberg ignored Article Six, Section Two of the U.S. Constitution,

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; shall be the supreme law of the land; and the judges in every state shall be bound thereby... and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution."

Goldberg has deprived the Plaintiff of all Rights guaranteed by the First Amendment, under the color of law, and also deprived under color of law, plaintiff's Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments Rights, including plaintiff being deprived under color of law of Equal Treatment Under the Law, Due Process of Law, and the Right not to be an Indentured Servant or a Slave, and the Right to be Not Subjected to Any Cruel or Unusual Punishments. Ignoring the Principle of Stare Decisis, Goldberg has ignored and violated over fifty U.S. Supreme Court Decisions and a large number of other high court decisions that affirm the Constitutional Rights of Reverend Lasko. April of 2013, Goldberg plainly stated, in complete violation of the Oaths he had given, that he would not honor Reverend Lasko's First Amendment Rights, although Goldberg accepted the fact that Reverend Lasko is a Reverend, and Goldberg indicated that he did not accept the First Amendment. This is Perjury, violating an Oath to Uphold and Defend the Constitution, solemnly given, at least three times, (Title 18 U.S.C. §1621). Goldberg is thereby consistently acting as an enemy of the Constitution, an act of treason against the United States. The judicial Oath:"I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter.  So help me God." Perjury, Title 18 U.S.C. §1621. Saul Ewing firm lawyers have sworn to uphold and defend the United States Constitution in order to practice as lawyers in the State of Pennsylvania, and they have ignored, betrayed, and violated their solemn oath for mercenary reasons and to the great harm of plaintiff.

## CHARGE FORTY-NINE: BIVENS VIOLATIONS

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), was a case in which the United States Supreme Court ruled that an implied cause of action existed for an individual whose Fourth Amendment freedom from unreasonable search and seizures had been violated by federal agents. The victim of such a deprivation could sue for the violation of the Amendment itself, despite the lack of any federal statute authorizing such a suit. The existence of a remedy for the violation was implied from the importance of the right violated. Bivens has been subsequently interpreted to create a cause of action against the federal government similar to the one 42 U.S.C. § 1983 creates against the states. The U.S. Supreme Court: "For the reasons set forth below, I am of the opinion that federal courts do have the power to award damages for violation of 'constitutionally protected interests' and I agree with the Court that a traditional judicial remedy such as damages is appropriate to the vindication of the personal interests protected by the Fourth Amendment." The Court, in an opinion by Justice Brennan, laid down a rule that it will infer a private right of action for monetary damages where no other federal remedy is provided for the vindication of a constitutional right, based on the principle that for every wrong, there is a remedy. The court reasoned based upon a presumption that where there is a violation of a right, the plaintiff can recover whatever he could recover under any civil action, unless Congress has expressly curtailed that right of recovery, or there exist some "special factor counseling hesitation". Justice Harlan voted with the majority to reverse the lower court, but also wrote a separate concurring opinion. Harlan particularly emphasized the special importance of constitutional rights. He presented that it was well-settled, even undeniable, that a suit for

36

injury based on a constitutional right was long recognized in the Federal courts. That being the case, where equally necessary, a suit for damages should be equally if not more acceptable.

CHARGE FIFTY: DEFENDANTS COMMITTED FRAUD UPON THE COURT, ISSUANCE OF ILLEGAL AND UNCONSTITUTIONAL ORDERS AGAINST REVEREND LASKO AND PUNISHING REVEREND LASKO FOR REFUSING TO GIVE UP HIS CONSTITUTIONAL RIGHTS

Goldberg and American Board of Surgery Inc and Saul Ewing firm denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By issuing orders that were over broad, extremely over reaching, the Court denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By asking the opponents of Reverend Lasko to render the penalty including incarceration and sentencing and large fines against Reverend Lasko, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By holding his orders as higher than the United States Constitution, the Supreme Law of the Land, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By subjecting Reverend Lasko to Debtor's Prison, which had been outlawed for the Federal Government by Federal Law since 1833, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By previously barring Reverend Lasko from his right to appeal his decision, by Goldberg and the other Defendants demanding Reverend Lasko, a pauper, in order to appeal had to post $10,000 which Reverend Lasko absolutely was unable to do, Reverend Lasko was prevented from an appeal by Goldberg and the American Board of Surgery Inc and the Saul Ewing firm. Thus Reverend Lasko was prevented from appealing an unfair and unconstitutional decision against him, and therefore the defendants denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law and Obstructed Justice. By acting under color of law to violate the civil rights of a U.S. Citizen, the defendants violated the Civil Rights Act of 1964, Title 18, Sections 241 and 242, the Court denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By ignoring a whole body of U.S. Supreme Court Decisions and ignoring numerous other high court decisions, particularly ignoring First Amendment Protections of Reverend Lasko, and by ignoring the well-established doctrine of stare decisis, Reverend Lasko was denied Due Process Of Law and Equal Rights Under The Law. By refusing to follow U.S. Supreme Court Decisions regarding the Rights of a citizen, goldberg, American Board of Surgery Inc, and Saul Ewing firm were acting as enemies of the Law and denied the plaintiff the protections of Rule by Law and acted as outlaws denying plaintiff Due Process and Equal Rights Under the Law. By ignoring and violating the United Nations Treaty of which the United States is a signatory, The United Nations Treaty On Human Rights: Universal Declaration of Human Rights, plaintiff was denied Due Process Of Law and Equal Rights Under The Law. The 5th Amendment and the 14th amendment of the United States Constitution gives everyone a right to due process of law, which includes judgements that must comply with the rules and case law, plaintiff was denied this. By ignoring an Oath given as a Pennsylvania Lawyer and by ignoring an Oath given several times as a Judge, an Oath solemnly given to support and defend the United States Constitution, by ignoring and violating those Oaths, and violating the United States Constitution, Goldberg lost jurisdiction in the case, was not acting as a legal and legitimate judge and violated Reverend Lasko's Due Process Rights and violated Reverend Lasko's Right to the Equal Protection of the Laws and issued orders that were unconstitutional and void and not Rule of Law but rather Rule by Brute Force and foreign to a Constitutional Republic.

37

CHARGE FIFTY-ONE: GOLDBERG VIOLATED PRO SE DEFENDANT'S RIGHT TO
FAIRNESS: Section 1985(3) under Title 42 reaches both conspiracies under color of law and
conspiracies effectuated through purely private conduct. In this case plaintiff has alleged a class-
based, invidiously discriminatory animus is behind the conspirators' action as the court records
reflect. That actionable cause is the treatment of a non-lawyer pro se litigant as a distinct "class-
based subject" of the Court, wherein denial of equal protection of the laws and denial of due
process was clearly the product of bias and prejudice of the Court. See *Griffen v. Breckenridge*,
403 U.S. 88, 102 (1971). A judgement to dismiss because of some trumped up technicality
giving excuse to dismiss a non-lawyer pro se litigant's complaint with merit in a lawyer
dominated Court hearing. In support of plaintiff's motions to vacate Judgement, the following
cases are offered; *Picking v. Pennsylvania Railway*,(151 F2d.240) Third Circuit Court of
Appeals. The ruling of the court in this case held; "Where a plaintiff pleads pro se in a suit for
protection of civil rights, the court should endeavor to construe the Plaintiff's pleading without
regard to technicalities." In *Walter Process Equipment v. Food Machinery* 382 U.S. 172 (1965) it
was held that in a "motion to dismiss", the material allegations of the complaint are taken as
admitted." Pleadings in this case have been filed and are being filed by Reverend Lasko, pro se,
such pleadings are not to be held to the same high standards of perfection as practicing lawyers.
*Haines and Kerner* 92 Sct 594, also see Power 914 F2d 1459 (11th Cir 1990), also see *Hulsey v.
Ownes* 63 F3d 354 (5th Cir 1995), also see In Re: *Hall v. Bellmon* 935 f.2d 1106 (10th Cir. 1991).
Sixth Circuit USCA. Justice Black in *Conley v. Gibson*, 355 U.S. 41 at 48 (1957) in *Puckett v.
Cox*, it was held that a pro se pleading requires less stringent reading than one drafted by a
lawyer (456 F2d 233 (1972 Sixth Circuit USCA). Justice Black in *Conley v. Gibson*,355 U.S. 41
at 48 (1957). " The Federal Rules rejects the approach that pleading is a game of skill in which
one misstep by counsel may be decisive to the outcome and accept the principle that the purpose
of pleading is to facilitate a proper decision on the merits." According to Rule 8 (f) Federal Rules
of Civil Procedure and the State Court rule which holds that all pleadings shall be construed to
do substantial justice. In a judgement to dismiss because of some trumped up technicality giving
excuse to dismiss a non-lawyer pro se litigant's complaint with merit in a lawyer dominated
court hearing, it was held that where a plaintiff pleads pro se in a suit for protection of civil
rights, the court should endeavor to construe plaintiff pro se pleading without regard to
technicalities.

CHARGE FIFTY-TWO: UNCONSTITUTIONAL ORDERS ARE VOID AND SHOULD NOT
BE ENFORCED AND JURISDICTION IS LOST:
Generally, a void judgment has no effect and may be disregarded. *Gullet v. Gullet*, 992 S.W.2d
866 (Ky.App. 1999). And it is well-established that a person may not be held in contempt for
failure to comply with a void order. *Davis v. City of Bowling Green*, 289 S.W.2d 506 (Ky. 1956).
The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated
that "when a state officer acts under a state law in a manner violative of the Federal Constitution,
he "comes into conflict with the superior authority of that Constitution, and he is in that case
stripped of his official or representative character. Since by law, a judge is a state officer, the
judge acts not as a judge, but as a private individual. And has lost his jurisdiction in the court and
his orders are violative of Due Process of Law and are void. In *Cooper v. Aaron*, 358 U.S. 1, 78
S.Ct. 1401 (1958), the U.S. Supreme Court stated that "No state legislator or executive or
judicial officer can war against the U.S. Constitution without violating his oath to support that
Constitution."In *U.S. v. Will*, 449 U.S. 200,216, 101 S. Ct. 471, 66 L.Ed. 2d 392, 406 (1980) and

*Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821), " Whenever a judge acts where he or she does not have jurisdiction to act, the judge is engaged in an act or acts of treason." In re *Sawyer*, 124 U.S. 200 (1888), if a judge does not fully comply with the U.S. Constitution, then his orders are void.The court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F. Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject matter jurisdiction and the judge's orders are void, of no legal force or effect. In *Elliot v. Piersol*, 1 Pet. 328, 340, 26 u.S. 328, 340 (1828) the U.S. Supreme Court stated that if a court is "without authority, its judgements and orders are regarded as nullities, they are not voidable, but simply void. And all persons concerned in executing such judgements or sentences are considered, in law, as trespassers." "Further it is the obligation of every Judge to honor, abide by, and uphold not only the Constitution and laws of the State, but they are bound by the laws and Constitution of the United States as well." "State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law." *Stone v Powell*, 428 US 465, 483 n 35, 96 S. Ct 3037, 49 L Ed. 2d 1067 (1976)" "Any judge who does not comply with his oath to the Constitution of the United States, wars against that Constitution and engages in violation of the Supreme Law of the Land. If a judge does not fully comply with the Constitution, then his orders are void, In re *Sawyer*, 124 U.S. 200 (1888), he is without jurisdiction, and he/she has engaged in an act or acts of treason." "*U.S. v. Will*, 449 U.S. 200, 216, 101 S. Ct. 471, 66 Ed.2d 392, 406 (1980); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)" The Court in *Yates v. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that, "Not every action by any judge is in exercise of his judicial function. It is not a judicial function for a Judge to commit an intentional tort even though the tort occurs in the Courthouse. When a judge acts as a Trespasser of the Law, when a judge does not follow the law, the judge loses subject matter jurisdiction and The Judge's orders are void, of no legal force or effect." Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.; U.S.C.A. Const Amend. 5. *Klugh* v. U.S., 620 F.Supp. 892 (D.S.C. 1985). A void judgment is one which has a mere semblance, but is lacking in some of the essential elements which would authorize the court to proceed to judgment, *Henderson v. Henderson*, 59 S.E.2d 227, (N.C. 1950).Void judgment is one which has no legal force or effect whatever, it is an absolute nullity, its invalidity may be asserted by any person whose rights are affected at any time and at any place and it need not be attacked directly but may be attacked collaterally whenever and wherever it is interposed, *City of Lufkin v. McVicker*, 510 S.X.2d 141 (Twx.Civ.App.-Beaumone 1973). When rule providing for relief from void judgments is applicable, relief is not discretionary matter, but is mandatory, *Orner. V. Shalala*, 30 F.3d 1307 (Colo. 1994). Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside, *Jaffe and Asher v. Van Brunt*, S.D.N.Y.1994, 158 F.R.D. 278. A "void" judgment, as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack. No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen old wound and once more probe its depths. And it is then as though trial and adjudication had never been. *Fritts v. Krugh*, Supreme Court of Michigan, 92 N.W.2d 604, 354 Mich. 97 (10/13/58). In re *Sawyer*, 124 U.S. 200 (1888), if a judge does not fully comply with the U.S.

Constitution, then his orders are void.

CHARGE FIFTY-THREE: VIOLATIONS OF CIVIL RIGHTS AND OTHER SEVERE
VIOLATIONS BY GOLDBERG ARE ACTS OUTSIDE OF HIS LEGAL JURISDICTION
When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes
expressly depriving him of jurisdiction, judicial immunity is lost. *Rankin v. Howard*, (1980) 633
F.2d 844, cert den. *Zeller v. Rankin*, 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed 2d 326. In Rankin v.
Howard, 633 F.2d 844 (1980) the Ninth Circuit Court of Appeals reversed an Arizona District
Court dismissal based upon absolute judicial immunity, finding that both necessary immunity
prongs were absent; later, in *Ashelman v. Pope*, 793 F.2d 1072 (1986), the Ninth Circuit, en banc,
criticized the "judicial nature" analysis it had published in Rankin as unnecessarily restrictive.
But Rankin's ultimate result was not changed, because Judge Howard had been independently
divested of absolute judicial immunity by his complete lack of jurisdiction. Some Defendants
urge that any act "of a judicial nature" entitles the Judge to absolute judicial immunity. But in a
jurisdictional vacuum, (that is, absence of all jurisdiction) the second prong necessary to absolute
judicial immunity is missing. *Stump v. Sparkman*, id., 435 U.S. 349."Where there is no
jurisdiction, there can be no discretion, for discretion is incident to jurisdiction." *Piper v.
Pearson*, 2 Gray 120, cited in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872). A judge
must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity
from civil action for his acts. *Davis v. Burris*, 51 Ariz. 220, 75 P.2d 689 (1938). Generally,
judges are immune from suit for judicial acts within or in excess of their jurisdiction even if
those acts have been done maliciously or corruptly; the only exception being for acts done in the
clear absence of all jurisdiction. *Gregory v. Thompson*, 500 F2d 59 (C.A. Ariz. 1974).
There is a general rule that a ministerial officer who acts wrongfully, even if he claims to be in
good faith, is nevertheless liable in a civil action and cannot claim the immunity of the sovereign.
*Cooper v. O'Conner*, 99 F.2d 133.
When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction
requisites he may be held civilly liable for abuse of process even though his act involved a
decision made in good faith, that he had jurisdiction. State use of *Little v. U.S. Fidelity &
Guaranty Co.*, 217 Miss. 576, 64 So. 2d 697.
"... the particular phraseology of the constitution of the United States confirms and strengthens
the principle, supposed to be essential to all written constitutions, that a law repugnant to the
constitution is void, and that courts, as well as other departments, are bound by that instrument."
*Marbury v. Madison*, 1 Cranch 137 (1803).
"No judicial process, whatever form it may assume, can have any lawful authority outside of the
limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it
betond these boundaries is nothing less than lawless violence." *Ableman v. Booth*, 21 Howard
506 (1859).
"The courts are not bound by an officer's interpretation of the law under which he presumes to
act." *Hoffsomer v. Hayes*, 92 Okla 32, 227 F 417.

CHARGE FIFTY-FOUR: DEFENDANTS' VIOLATIONS OF CONSTITUTIONAL RIGHTS
OF THE PLAINTIFF AND THE DEFENDANTS' IGNORING AND VIOLATING UNITED
STATES SUPREME COURT DECISIONS IN ORDER TO INJURE REVEREND LASKO
In their zeal for destroying Reverend Lasko and destroying the fifty competing medical
organizations founded by Reverend Lasko, the defendants have ignored, defied, violated, and

have been contemptuous of all of the following United States Supreme Court and other High Court Decisions:

A church may be established on the basis of Liberty of Religion and permit to each of it's ministers the Liberty of Conscience to which they are naturally entitled.
In *Everson v. Board of Education*, 330 US 203, 91 L. Ed. 711, it was held that: "The establishment of religion, of the First Amendment means at least this: Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force or influence a person to go to or to remain away from a church against his will or force him to profess a belief or disbelief in any religion. **No person can be punished for entertaining or professing religious beliefs** or disbeliefs, for church attendance or nonattendance."

*Cantwell v. Connecticut* (1940). In this case, the Court held that the government has no role in determining religious truth. Furthermore, the Court also held that **the peaceful expression of beliefs—including religious views that might offend some listeners—is protected by the First Amendment from infringement by the federal government as well as state governments**
*CANTWELL V. CONNECTICUT*   US SUPREME CT: NO STATE INTERFERENCE WITH RELIGIOUS ACTIVITIES IS PERMITTED:
In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy. The essential characteristic of these liberties is, that under their shield many types of life, character, opinion and belief can develop unmolested and unobstructed. Nowhere is this shield more necessary than in our own country for a people composed of many races and of many creeds.

*United States v. Ballard*, 322 U.S. 78 (1944) - Court rules that religious teachings cannot be prosecuted for fraud. The beliefs of one person may seem preposterous to another, but religious liberty demands the "widest toleration of conflicting views."

*WEST VIRGINIA STATE BOARD OF EDUCATION  V.  BARNETTE*, 319 US 624 (1943)
IF THERE IS ANY FIXED STAR IN OUR CONSTITUTIONAL CONSTELLATION, IT IS THAT NO OFFICIAL, HIGH OR PETTY, CAN PRESCRIBE WHAT SHALL BE ORTHODOX IN POLITICS, NATIONALISM, RELIGION, OR OTHER MATTERS OF OPINION OR FORCE CITIZENS TO CONFESS BY WORD OR ACT THEIR FAITH THEREIN. IF THERE ARE ANY CIRCUMSTANCES WHICH PERMIT AN EXCEPTION, THEY DO NOT NOW OCCUR TO US.

US SUPREME COURT, NO.90-1014, (JUNE 24, 1992):
*ROBERT E LEE ET AL  V.  DANIEL WEISMAN:*
THE FIRST AMENDMENT'S RELIGIOUS CLAUSES MEAN THAT RELIGIOUS BELIEFS AND RELIGIOUS EXPRESSION ARE TOO PRECIOUS TO BE EITHER PROSCRIBED OR

41

PRESCRIBED BY THE STATE. THE DESIGN OF THE CONSTITUTION IS THAT PRESERVATION AND TRANSMISSION OF RELIGIOUS BELIEFS AND WORSHIP IS A RESPONSIBILITY AND A CHOICE COMMITTED TO THE PRIVATE SPHERE, WHICH ITSELF IS PROMISED FREEDOM TO PURSUE THAT MISSION. IT MUST NOT BE FORGOTTEN THEN, THAT WHILE CONCERN MUST BE GIVEN TO DEFINE THE PROTECTION GRANTED TO AN OBJECTOR OR A DISSENTING NON-BELIEVER, THESE SAME CLAUSES EXIST TO PROTECT RELIGION FROM GOVERNMENT INTERFERENCE.

*Watson v. Jones*, 13 Wall. 679 (1872) - Court rules that church membership disputes are beyond the bounds of civil courts.

*Presbyterian Church v. Hull Church,* 393 U.S. 440 (1969) - Court rules that property disputes that turn on questions of church doctrine are outside the bounds of civil courts.

*Jones v. Wolf,* 443 U.S. 595 (1979) - Court rules that questions of church property disputes are outside the bounds of civil courts.

*Stone v. Graham* 449 U.S. 39 (1980) FREEDOM OF RELIGION IS INVIOLABLE.

US DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA, CIVIL NO.S-1954, *UNIVERSAL LIFE CHURCH V. UNITED STATES OF AMERICA*, US DISTRICT JUDGE JAMES F. BATTIN:
NEITHER THIS COURT, NOR ANY BRANCH OF THIS GOVERNMENT, WILL CONSIDER THE MERITS OR FALLACIES OF A RELIGION. NOR WILL THE COURT COMPARE THE BELIEFS, DOGMAS, AND PRACTICES OF A NEWLY ORGANIZED RELIGION WITH THOSE OF AN OLDER, MORE ESTABLISHED RELIGION. NOR WILL THE COURT PRAISE OR CONDEMN A RELIGION, HOWEVER EXCELLENT OR FANATICAL OR PREPOSTEROUS IT MAY SEEM. WERE THE COURT TO DO SO, IT WOULD IMPINGE UPON THE GUARANTEES OF THE FIRST AMENDMENT.

*BRYCE V. EPISCOPAL CHURCH IN THE DIOCESE OF COLORADO*, ENTERED NOV 20, 2000: THE US DISTRICT COURT FOR COLORADO ESTABLISHED:1-THE FIRST AMENDMENT DOCTRINE OF CHURCH AUTONOMY DEPRIVES CIVIL COURTS OF JURISDICTION OVER FAITH, DOCTRINE, AND CHURCH GOVERNMENT **AND ENSURES FOR RELIGIOUS ORGANIZATIONS FREEDOM AND INDEPENDENCE FROM SECULAR CONTROL OR MANIPULATION,** 2-**CHURCH DISTRIBUTION OF WRITTEN MATERIALS, EVEN WHEN CONTROVERSIAL OR HURTFUL, ARE PROTECTED BY THE FIRST AMENDMENT, AND CIVIL COURTS HAVE NO JURISDICTION TO INVADE AND EVALUATE THOSE COMMUNICATIONS.**

*US SUPREME COURT: RUNYON V McCRARY*, 427 US 160, 175-176 (1976)
**THE COURT HAS RECOGNIZED A FIRST AMENDMENT RIGHT TO ENGAGE IN ASSOCIATION FOR THE ADVANCEMENT OF BELIEFS AND IDEAS**

US SUPREME COURT: *LEMON V. KURTZMAN* 403 US 602, 29 (1971):

THREE PRONG TEST WHETHER A GOVERNMENT ENACTMENT VIOLATES THE
ESTABLISHMENT CLAUSE:
1-MUST HAVE A SECULAR LEGISLATIVE PURPOSE
2-ITS PRINCIPAL OR PRIMARY EFFECT MUST NEITHER ADVANCE NOR INHIBIT
RELIGION
3-MUST NOT FOSTER "AN EXCESSIVE GOVERNMENT ENTANGLEMENT WITH
RELIGION"

*US DISTRICT COURT FOR MIDDLE DISTRICT OF FLORIDA: GIBSON V. LEE COUNTY
SCHOOL BOARD*, CASE NO. 97-529-CIV-FTM-17D:
"NEITHER A STATE NOR THE FEDERAL GOVERNMENT CAN, OPENLY OR
SECRETLY, PARTICIPATE IN THE AFFAIRS OF ANY RELIGIOUS ORGANIZATIONS
OR GROUPS AND VICE VERSA. IN THE WORDS OF JEFFERSON, THE CLAUSE
AGAINST ESTABLISHMENT OF RELIGION BY LAW WAS INTENDED TO ERECT A
WALL OF SEPARATION BETWEEN CHURCH AND STATE.

CANNOT INTERFERE WITH RELIGIOUS SOLICITING:
*Watchtower Bible & Tract Society of New York v. Village of Stratton*, (2002) - An 8-to-1
majority declare the village's door-to-door ordinance an unconstitutional burden on the religious
expression and freedom of speech of Jehovah's Witnesses. The ordinance required registration
with city officials, disclosure of names and obtaining a permit, which had to be produced on
demand.

Door-to-door proselytizing:
*Jones v. Opelika*, 316 U.S. 584 (1942) - Slim majority of court upheld an ordinance requiring a
fee for a license to sell books. The case was brought by Jehovah's Witnesses who wanted to sell
religious literature in the Alabama town. Later overturned as violating Religious Freedom and
Expression.

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943) - Slim majority of court overruled *Jones v.
Opelika* and ruled that imposing a fee to sell religious literature door-to-door was too great a
burden on religious liberty. Case was brought by Jehovah's Witnesses.

*Martin v. Struthers*, 319 U.S. 141 (1943) - Court rules that the town of Struthers, Ohio cannot
outlaw door-to-door selling altogether.
Proselytizing in other venues:

*Marsh v. Alabama*, 326 U.S. 501 (1946) - Court rules that Jehovah's Witnesses have a right to
distribute religious literature on the streets of a company town.

*Fowler v. Rhode Island*, 345 U.S. 67 (1953) - Court overturned conviction of a Jehovah's
Witness who gave a religious address in a public park without permission of Pawtuckett, Rhode
Island city officials. Pawtuckett officials had allowed other religous groups to speak in the park.

*Krishna v. Lee*, 112 S.Ct. 2701 (1992) - Majority of the Supreme Court ruled that airport
managers can prohibit solicitation of money by members of the Krishna religion, **but must allow**

**the free distribution of religious literature.**

*Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520 (1993) - Court finds ordinances passed by the city of Hialeah, Florida, to stop members of the Santeria religion from sacrificing animals in their religious ceremonies were aimed directly at the church and are therefore unconstitutional.

*Hague v. CIO*, 221 in which the Court, though splintered with regard to reasoning and rationale, struck down an ordinance which vested an uncontrolled discretion in a city official to permit or deny any group the opportunity to conduct a public assembly in a public place. Justice Roberts, in an opinion which Justice Black joined and with which Chief Justice Hughes concurred, found protection against state abridgment of the rights of assembly and petition in the privileges and immunities clause of the Fourteenth Amendment. "The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied."

NO INTERFERENCE WITH RELIGIOUS PURSUITS:
the Court in *Sherbert v. Verner*: Sherbert was reaffirmed and applied in subsequent cases involving denial of unemployment benefits. Thomas v. Review The Court applied the Sherbert balancing test in several areas outside of unemployment compensation. The first two such cases involved the Amish, whose religion requires them to lead a simple life of labor and worship in a tight-knit and self-reliant community largely insulated from the materialism and other distractions of modern life.

*Wisconsin v. Yoder* :That this interest outweighed the great harm which it would do to traditional Amish religious beliefs to impose the compulsory ninth and tenth grade attendance.

Irreparable Injury
***Elrod v. Burns*: An infringement of Plaintiffs' First Amendment rights guaranteed by the Establishment Clause, even for minimal periods of time, constitute[s] irreparable injury**.
*Elrod [\*1435] v. Burns*, 427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976).

CHARGE FIFTY-FIVE: DEFENDANTS VIOLATED THE PLAINTIFF'S FIRST AMENDMENT RIGHTS:
    On April 4, 2013, in Philadelphia, Judge Goldberg stated he did not accept Reverend Lasko's First Amendment Rights and ignored the plaintiff's Freedom of Religion and Freedom of Religious Expression.**(Exhibit H:Transcript Pages 51, 54, 56)**. Judge Goldberg had continuously ignored high court decisions affirming Reverend Lasko's First Amendment Rights. **(Exhibit H:Transcript Pages 40, 41, 44, 45)**. Even though he acknowledged that Reverend Lasko was an Ordained Reverend. **(Exhibit H:Transcript Pages 38, 46, 47)**. Reverend Lasko was engaged in a Christian Evangelical Mission to bring to the medical profession and to each medical specialty Christian Humanitarian Values, kindness, compassion, empathy, the Ten Commandments and particularly the Commandment by God to Moses and all the people "Thou Shalt Not Kill", and the Words of Jesus Christ that He Spoke on the Sermon On The Mount, often called the Golden Rule, "Do Ye Unto Others As Ye Would Have Others Do Unto You."

Reverend Lasko believed that he had a First Amendment Right to carry on a Christian Mission, as Freedom of Speech and Freedom of Religious Expression, and Freedom of Religion. Judge Goldberg judged this to be in Civil Contempt of Goldberg's orders that prohibited Reverend Lasko from the First Amendment Right to carry on a Christian Mission, Freedom of Speech, Freedom of Religious Expression, and Freedom of Religion. Goldberg then converted "civil contempt" to criminal contempt and then Goldberg asked the representatives of the American Board of Surgery Inc and the Saul Ewing firm **to be the ones to render the sentence upon Reverend Lasko including incarceration and a large fine, a sentence rendered by them!** (**Exhibit H**) to punish Reverend Lasko for having continued a Christian Evangelical Mission that Judge Goldberg had previously forbidden and had previously prevented from appealing that decision which Reverend Lasko believed to be an extreme and transparent violation of Freedom of Speech, and Freedom of the Press, Freedom of Religion, Freedom of Religious Expression, unconstitutional prior restraints in which Goldberg had denied Reverend Lasko the **Right to engage in (religious) medical organizations, or to write letters to physicians seeking their joining a Christian Mission, nor could Reverend Lasko have any internet websites for any Christian Medical Organization. Never was there cited any compelling and over-riding reason for the violation of Reverend Lasko's First Amendment Rights and this broad scope of Prior Restraints on Freedom of Speech, Press, Religion, and Religious Expression. Nor was any reason ever given for these draconian unconstitutional prior restraints.(Exhibit H)**

Earlier, on about January 7, 2011, while Reverend Lasko was on a mercy medical mission in Cambodia, (**Exhibit R**) where Reverend Lasko's efforts saved many children from sexual exploitation and AIDS, Judge Goldberg, again never citing any compelling and over-riding reason for so doing, absolutely banned Reverend Lasko's American College of Christian Physicians, American Council of Christian Physicians and Surgeons, First Church of the Epiphany, Worldwide Ministries of Jesus Christ, American Board of Ethical Physicians, American College of Christian Physicians and Surgeons, American Academy of Surgery American Council of Surgeons, American Council of Surgical Specialists, American College of General Surgeons, American Board of General Surgeons, American Academy of Plastic Surgery, American Board of Cosmetic and Plastic Surgery, American Academy of Cosmetic Breast Surgery, American College of Ethical Physicians, American Board of Ethical Physicians American Academy of Ethical Physicians, American College of Ethical Physicians, American College of Geriatrics, American Academy of Oncology, American Board of Diabetes, American College of Cancer Specialists, American Academy of Cardiology, American College of Geriatrics Specialists, American College of Specialists in Geriatrics, American Board of Hospitalist Physicians, American Board of Hospitalists, American College of Diabetes Specialists, American Board of Geriatric Medicine, American Board of Geriatrics, American Academy of Geriatrics, National Council of Christian Physicians, Congregation of Religious Medical Organizations, U.S. Federation of Medical Specialists, U.S. Medical Specialists Federation, American Pediatrics Council, American Pediatrics Association, American Council of Pediatrics Specialists, American Academy of Psychiatry, American Board of Psychiatry American Academy of Ethical Psychiatry, Congregation of Religious Medical Ministries which included thirty Christian Evangelical Medical Organizations seeking members in all medical specialties, and all letters to physicians promoting and proselitizing Reverend Lasko's Christian Medical Mission were prohibited, and prohibited every letter from every one of Reverend Lasko's religious medical organizations that asked physicians to sign a promise to support and promote Humanitarian Religious Values in Medicine and to promise to support and promote the

Ten Commandments and to support and promote the Words of Jesus Christ in the Sermon on the Mount, all such letters were banned by Goldberg's orders and at the request made to Goldberg by the American Board of Surgery Inc and by the Saul Ewing firm. Goldberg further ordered that Reverend Lasko could never engage in or participate in any medical organization or continue his Christian Evangelical Mission to Medicine and this was later extended by Goldberg to include prohibiting all present and future dental organizations as well. **(Exhibits B, E, F, G)** Then the American Board of Surgery Inc, Saul Ewing firm, blocked the plaintiff from appealing this over-reaching overly broad set of orders, Goldberg agreed. Plaintiff was prevented from appealing this devastating and destructive sweeping elimination of competition by unfettered lawless extreme monopolists.

Because Reverend Lasko had been prevented by Judge Goldberg from appealing Goldberg's orders of January 2011, and because Reverend Lasko believed that any order that transparently violated the United States Constitution was a void order, not legal, not legally enforceable, Reverend Lasko continued his Christian Evangelical Mission and continued his efforts to bring Christian Love and the Ten Commandments and God's Commandment that "Thou Shalt Not Kill" and the Words of Jesus Christ, to every specialty in medicine and Reverend Lasko sought to bring true Christian Humanitarianism to Medicine, one doctor at a time. For so doing, on April 4, 2013, Judge Goldberg held Reverend Lasko in contempt and sought to handcuff the Reverend, incarcerate the Reverend, heavily fine the Reverend, and because Reverend Lasko had taken Vows of Poverty and was a pauper, Judge Goldberg sought to place the Reverend in a Debtor's Prison either then or in six months if the Reverend was unable "to come up with a substantial sum of money" **(Exhibit H)** to be inflicted upon the Reverend by Goldberg and given to the American Board of Surgery Inc. (Federal Debtor's Prison has been outlawed by Federal Statutes since 1833.) This placed Reverend Lasko, his life, liberty, and property at the mercy of the vicious monopolists who were bent on destroying Reverend Lasko, destroying his Christian Mission, and eliminating competition to their lucrative and illegal monopoly.

The following excerpts (the complete letters are in the Appendix under **Exhibit T**) from Reverend Lasko letters and websites that are clearly protected speech and protected religious expression and have any compelling reason ever been cited for the banning and prohibiting of them, the wholesale use of Prior Restraints against the plaintiff's First Amendment and Due Process Rights, nor justifying the handcuffing, incarceration, and fining of a Man of God who had promised the Lord that he would devote his life to a Mission to bring Christian Humanitarian Values to a cold, secularized medical profession monopolized by intolerant white racists. Reverend Lasko founded the National Academy of Medicine whose *banned* letters stated: "the recognition of humanitarian and ethical achievement, including truest empathy and compassion, and recognition of true humanitarianism and the kindness of the true Healer...as both a Director and as a practicing ordained Evangelical Christian Minister, it is my wish that you will continue to always uphold...your humanitarian calling in Medicine, and as stated in the Hippocratic Oath, the Ten Commandments, and as the Golden Rule, and in the words of Jesus Christ, to always do unto others as you would have them do unto yourself." On the enclosed *banned* application form, the plaintiff asked the physician to sign this promise: "I PROMISE TO CONTINUE TO UPHOLD THE TRADITIONS OF HUMANITARIANISM AND EXCELLENCE AND I WILL CONTINUE TO PRACTICE IN ACCORDANCE WITH THE OATH OF HIPPOCRATES, THE TEN COMMANDMENTS, AND THE GOLDEN RULE: TO ALWAYS DO UNTO OTHERS AS I WOULD HAVE THEM DO UNTO ME, AND I WILL CONTINUE TO ENDEAVOR TO PROMOTE AND SUPPORT THE HIGHEST

STANDARDS OF EXCELLENCE AND COMPASSION, AND THE HIGHEST OF ETHICAL, MORAL, RELIGIOUS, AND HUMANITARIAN VALUES IN MY PROFESSION."

The above is in every *banned* letter of every medical organization founded by Reverend Lasko.

THE *banned* APPLICATION FORM FOR THE AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS STATES:

WE ARE INTERESTED IN EMPHASIS ON HUMANITY, INTEGRITY, KINDNESS, AND RELIGIOUS VALUES IN MEDICINE: DO YOU ACCEPT JESUS CHRIST? DO YOU READ OR REFER TO THE BIBLE? DO YOU BELONG TO ANY PARTICULAR CONGREGATION, CHURCH, OR MINISTRY? DO YOU BELIEVE  THAT LOVE OF YOUR FELLOW HUMAN BEING IS A MOST IMPORTANT VALUE IN MEDICINE AND IN RELIGION? DO YOU PROMISE TO WORK TO BRING GOD AND CHRISTIAN VALUES AND CHRISTIAN LOVE AND COMPASSION TO THE PRACTICE OF MEDICINE? WILL YOU FOLLOW THE LAWS OF THE TEN COMMANDMENTS AND OF THE GOLDEN RULE AND TRY AT ALL TIMES TO BE HUMANE AND KIND AND BRING RELIGIOUS LOVE OF HUMANITY TO ALL ASPECTS OF YOUR MEDICAL PRACTICE AND ENDEAVOR TO BE A TRULY HUMANITARIAN PHYSICIAN? DO YOU PROMISE TO ALWAYS WORK TO FURTHER CHRISTIAN VALUES IN MEDICINE AND HELP ADVANCE THE CHRISTIAN HUMANITARIAN IDEALS OF THE AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS? DO YOU PROMISE TO PRACTICE MEDICINE AS A TRUE CHRISTIAN AND HUMANITARIAN HEALER?

THE *banned* LETTER OF INVITATION TO THE AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS STATES:

We are a Christian Medical Organization certifying outstanding Christian Physicians as Diplomate in Christian Medicine and we grant appointment as Distinguished Fellow of the American College of Christian Physicians. *We believe that Christian Physicians deserve recognition from peers and from patients, and they should know that their physician is a practitioner of true Christian Values and the Ideals of Christianity. We believe in Jesus Christ and accept the Bible as the Word of God. It is our belief that Science and Applications of Science in Medicine must give attention to God and Christian Values in Medicine.* The American College of Christian Physicians stands for excellence in medical care within the scope of Christian Beliefs, Christian Love, and true Christian Values. We believe Jesus Christ is our Lord and Saviour. Our mission is to bring Reverence for God and Christian Values to an important place in Medicine and to emphasize Love, Compassion, and Humane Respect for Life, Family, and Traditional Christian Values. We believe Modern Medicine has forgotten God and ignored Jesus Christ as the true Healer of Mankind. We join other physicians to reshape Medicine into a more kind, humane, Christian profession. We certify Diplomates in Christian Medicine and Distinguished Fellows of the American College of Christian Physicians. *It is with this goal of advancing Christian Values and Ideals in Medicine that we certify physicians who practice Christian Medicine as Diplomates in Christian Medicine. Our Distinguished Fellows are appointed for life and Diplomates in Christian Medicine are given lifetime certification. We offer*

*Lifetime Diplomate Certification in Christian Medicine to you on the basis of your background in Medicine, including Ethical and Christian background and Christian Values. Our mission is for Christianity in Medicine and to bring Faith and Christian Love to an important place in Medicine. We believe Christian Medicine deserves its own medical board independent of any other board, or any other organization. We believe Christian Faith has been neglected in Medicine for too long and we embrace Christian Values in Medicine.* Immediate appointment as Diplomate in Christian Medicine and as a Distinguished Fellow of the American College of Christian Medicine is on a Grandfathering basis. An essay of at least one page on a subject on the enclosed list is required, and the application form must be filled out completely and satisfactorily. *We require a statement that you accept Jesus Christ and that you will practice Christian Medicine, with Love, Understanding, Compassion, Kindness, Forgiveness, and Christian Beliefs and Values.*

THE *banned* WEBSITE OF THE AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS STATES:

"THE AMERICAN COLLEGE OF CHRISTIAN PHYSICIANS IS DEDICATED TO THE PROMOTION OF AMERICAN FAMILY VALUES AND THE ENDORSEMENT AND PROMULGATION OF CHRISTIAN VALUES OF LOVE, KINDNESS, COMPASSION, FORGIVENESS, AND UNDERSTANDING, AND THE RECOGNITION OF ALMIGHTY GOD AS THE TRUE SOURCE OF ALL HEALING."

"The American College of Christian Physicians stands for excellence in medical care within the scope of Christian Love and true Christian values. We believe in Jesus Christ as our Lord and Saviour. Our mission is to bring God back into Medicine and to try to bring Christ and Love and Compassion and Humane Respect for Life and Family and Traditional Christian Values. We believe that Modern Medicine and Science have forgotten God and have ignored Jesus Christ as the one true Healer of Mankind. We seek to join with other physicians of similar beliefs and values who practice Christian Medicine. Our immediate mission is to promote Christianity in American Medicine and to work to restore Faith and Christian Love in Medicine."

The American Council of Christian Physicians and Surgeons letters state: It is our mission to emphasize and promote ethics, excellence, humanitarianism, morality, religious values...in the service of Our Lord and Saviour, Jesus Christ...We believe that Medicine has lost sight of Christian humanity...It is our Life's Work to try to restore kindness, compassion, humanitarianism, and Christian Love to all aspects of the medical profession."The application form asks physicians to sign a promise: "I do promise to uphold the tradition of humanitarianism in Medicine and to always practice my profession in accordance with the Ten Commandments, and the Golden Rule, to do unto others as I would have them do unto myself, and in accordance with the Hippocratic Oath, and to endeavor to promote the highest moral, ethical, religious, and traditional family values, in all aspects of the practice of medicine. I affirm that I accept Jesus Christ as my Lord and Saviour and I will practice my profession in accordance with Christian Love and compassion for all of mankind."

The *banned* applications for all of our medical organizations, each one asks:
With emphasis on humanity, integrity, kindness, and religious values in medicine: Will you promise to always follow the Ten Commandments and the Golden Rule? Will you try at all times to be humane and kind and bring religious love of humanity to all aspects of your medical

practice and endeavor to be a truly humanitarian physician? Will you support and promote humanitarian religious ethical, moral, and traditional religious family values in all aspects of medicine?

Reverend Lasko founded the *banned* National Academy of Ethics and Religion and the organization states:

"The purpose of the program is to promote and support recognition of the importance of exceptional excellence in Ethics and Religion and the recognition of humanitarian and ethical achievement, including truest empathy and compassion, and recognition of true humanitarianism and from the heart kindness." "As both a Director of the National Academy of Ethics and Religion and as a practicing twice ordained Evangelical Christian Minister and Christian Medical Missionary, it is my wish that you will continue to always uphold those practices that have won this award and appointment, namely your exceptional excellence in Ethics and Religion and your humanitarian calling from God, and as stated in the Ten Commandments, and as the Golden Rule, and in the words of Jesus Christ, to always do unto others as you would have them do unto yourself." The *banned* application form requires the following promise to be signed: "I HEREBY ACCEPT THE AWARD AND APPOINTMENT BY THE NATIONAL ACADEMY OF ETHICS AND RELIGION AND I PROMISE TO ALWAYS UPHOLD THE GREAT TRADITION OF RELIGIOUS HUMANITARIANISM, AND I WILL ALWAYS PRACTICE MY PROFESSION IN ACCORDANCE WITH THE TEN COMMANDMENTS AND THE GOLDEN RULE, ALWAYS TO DO UNTO OTHERS AS I WOULD HAVE THEM DO UNTO MYSELF."

Reverend Lasko founded the *banned* American Academy of Cardiology whose *banned* membership application asks:

" Do you promise at all times to maintain the high standard of kindness and humanity as exemplified by the Golden Rule, the Ten Commandments, and other similar laws given by the major world religions to exemplify the highest ideals of ethics and humanitarian philosophy?" In addition to asking physicians to sign the promise, "I PROMISE TO CONTINUE TO UPHOLD THE TRADITIONS OF HUMANITARIANISM AND EXCELLENCE AND I WILL CONTINUE TO PRACTICE IN ACCORDANCE WITH THE OATH OF HIPPOCRATES, THE TEN COMMANDMENTS, AND THE GOLDEN RULE: TO ALWAYS DO UNTO OTHERS AS I WOULD HAVE THEM DO UNTO ME, AND I WILL CONTINUE TO ENDEAVOR TO PROMOTE AND SUPPORT THE HIGHEST STANDARDS OF EXCELLENCE AND COMPASSION, AND THE HIGHEST OF ETHICAL, MORAL, RELIGIOUS, AND HUMANITARIAN VALUES IN MY PROFESSION.",

Reverend Lasko's *banned* American Board of Geriatric Medicine asks physicians to write essays on:

The Importance of Kindness, Understanding, and humanity in Geriatric Medicine, the Role of God in Geriatric Medicine, The Role of Prayer in Geriatric Medicine, The need for Faith in God in the Dying and Seriously Ill Patient

Reverend Lasko's *banned* National Institute of Geriatrics letter states:

"It is our mission to emphasize and promote ethics, compassion, humanitarianism, morality, religious values, family values, and overall professional excellence and achievement in Geriatric Medicine... and it is our wish that you continue to promote excellence, kindness, ethics, compassion, religious values, and humanitarianism in all aspects of Medicine." The physician must sign the following promise:

"I PROMISE TO UPHOLD FOREVER THE OUTSTANDING TRADITION OF HUMANITARIANISM IN MEDICINE AND TO ALWAYS PRACTICE MY PROFESSION IN ACCORDANCE WITH THE TEN COMMANDMENTS, AND THE GOLDEN RULE, TO DO UNTO OTHERS AS I WOULD HAVE THEM DO UNTO MYSELF, AND IN ACCORDANCE WITH THE HIPPOCRATIC OATH, AND TO ENDEAVOR TO PROMOTE THE HIGHEST MORAL, ETHICAL, HUMANITARIAN, RELIGIOUS, AND TRADITIONAL FAMILY VALUES, IN ALL ASPECTS OF THE PRACTICE OF MEDICINE."

Reverend Lasko's *banned* American Board of Diabetes:

"Do you pledge and promise to emphasize and promote humanity, kindness, ethics, understanding, humane religious values, and family values in all aspects of medicine?" Do you promise ata all times tomaintain the high standard of kindness and humanity as exemplified by the Golden Rule, in the Words of Jesus Christ, and the Ten Commandments given toMoses by God, and other similar laws given by the major world religions to exemplify the highest ideals of ethics and humanitarian philosophy?"

The *banned* American Academy of Gastroenterology: " The purpose of the program is to promote and support recognition of excellence of humanitarian, ethical, and religious achievement, including true empathy and compassion and the recognition and application of the true humanitarian and kindness of the true Healer...As a practicing ordained Christian Evangelical Minister... it is my wish that you will continue...your humanitarian calling in the practice of Medicine. Asa  Christian Evangelist, I hope you will never cease being a humanitarian physician and that you will practice in Medicine at all times in a Christian sense, as Jesus said: Do unto others as you would be treated yourself, in short, the Golden Rule...May you always continue to practice as a true healer and humanitarian and as a man of God."

Reverend Lasko's *banned* American Academy of Cosmetic Breast Surgery:

Physicians are asked to sign a promise of the following: "Do you pledge and promise to emphasize and to promote humanity, kindness, ethics, empathy, understanding, humane religious values, family values, in all aspects of medicine? " "I promise at all times to maintain the high standard of kindness and humanity as exemplified by the Golden Rule, the Ten Commandments, and other similar laws given by the major worls religions to exemplify the highest ideals of ethics and humanitarian philosophy."

Reverend Lasko's *banned* American Academy of Surgery:
"It is our mission to emphasize and promote ethics, excellence, humanitarianism, religious

values, family values" and the physician is asked to sign a promise: " I pledge and promise to emphasize and promote humanity, kindness, ethics, empathy, understanding, humane religious values, family values in all aspects of medicine and I promise at all times to maintain the high standard of kindness and humanity as exemplified by the Golden Rule, the Ten Commandments"

In all of Reverend Lasko's *banned* medical organizations, physicians were asked to sign a promise to be humanitarian and to support and promote religious humanitarian values in all aspects of medicine and to support and uphold the Ten Commandments and the Words of Jesus Christ known as the Golden Rule. Over 6,000 physicians signed the promise. What over-riding and compelling purpose requires the ban on the Mission of Reverend Lasko? Or the abolition of his First Amendment Right to Freedom of Religious Expression and Freedom of Religion and Freedom of Speech and Freedom of the Press to post religious Medical Ministries on the internet or to write to physicians and dentists asking them to sign a pledge to support and uphold Christian Humanitarian Values, compassion, kindness, the Ten Commandments, Thou Shalt Not Kill, the Words of Jesus Christ in the Sermon on the Mount, the Golden Rule as stated by Jesus?
    The following statements by the Founders and high court cases (**Exhibit T**) that have been ignored by Judge Goldberg support Reverend Lasko and indicate that the First Amendment was violated by the defendants: First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Madison's first draft of the First Amendment read: "The civil rights of none shall be abridged on account of religious belief or worship, nor shall any national religion be established, nor shall the full and equal rights of conscience be in any manner, or on any pretence, infringed." [1 Annals of Congress 434 (June 8, 1789)]  It is highly significant that religion, of all the liberties embodied in the Bill of Rights, is the very first freedom mentioned. The First Amendment, possibly the most important in the Bill of Rights, enumerates five freedoms: religion, speech, press, assembly, and petition. Those God-given freedoms facilitate individual participation in the process of self-government. Thomas Jefferson stated: "No provision in our Constitution ought to be dearer to man than that which protects the rights of conscience against the enterprises of the civil authority." This includes the "rights of conscience" that multitudes of others may disagree with."The Establishment Clause thus stands as an expression of principle on the part of the founders of our Constitution that religion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate. Another purpose of the Establishment Clause rested upon an awareness of the historical fact that governmentally established religions and religious persecutions go hand in hand."

*Texas v. Johnson, 1989: The Constitution protects desecration of the flag as a form of symbolic speech.*"Government may not prohibit the expression of an idea because society finds the idea itself offensive or disagreeable."Congress, Aug. 11, 1978 (U.S. Code, Title 42, Chapter 21, Subchapter I, 1996) it is "the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise {their} traditional religions . . . . including but not limited to . . . . use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites." U.S. SUPREME COURT in *Texas v. Gregory Lee Johnson*, 491 U.S. 397, Decided June 21, 1989: A statute that criminalizes the desecration of the American flag violates the First Amendment. A church may be established on the basis of Liberty of Religion and permit to each of it's ministers the Liberty of Conscience

to which they are naturally entitled.

*383 U.S. 787 UNITED STATES v. PRICE ET AL.*SUPREME COURT OF THE UNITED STATES, 383 U.S. 787; 86 S. Ct. 1152; 1966 U.S. LEXIS 1963, March 28, 1966, Decided. Federal Court Decision in *Lee County Bible Curriculum Case* **An infringement of Plaintiffs' First Amendment rights guaranteed by the Establishment Clause, even for minimal periods of time, constitute[s] irreparable injury.** *Elrod [*1435] v. Burns*, 427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976).

*ROBERT P. GIBSON, etc., et al., Plaintiff, vs. LEE COUNTY SCHOOL BOARD, etc., et al.,* Defendants. CASE NO. 97-529-CIV-FTM-17D, *UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA,* FORT MYERS DIVISION 1 F. Supp. 2d 1426; 1998 U.S. Dist. LEXIS 2696; 11 Fla. LawW. Fed. D 503, January 20, 1998, Decided: "Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect 'a wall of separation between Church and State." The U.S. Supreme Court, 1947.The First Amendment: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances. United States Constitution, Bill of Rights, First Amendment.

*Lemon v. Kurtzman*, U.S. Supreme Court:" The principal or primary effect of government action must not be either to advance or inhibit religion." "A statute must not foster an excessive government entanglement with religion."

*Stone v. Graham*, U.S. Supreme Court, 1980:"No recitation of a secular purpose can blind us to the religious nature of the Ten Commandments.""The Ten Commandments are undeniably religious"

*Harvey v. Cobb County*, North Georgia District Court. "It is part of the Founders' plan of preserving religious liberty to the fullest extent possible in a pluralistic society" , U.S. District Court Judge Barbara Crabb, in 2010 case regarding National Day of Prayer in Wisconsin.

*Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed.2d. (1919): Justice Oliver Wendell Holmes stated in this case his famous aphorism about "falsely shouting fire in a theatre" and set forth a "clear and present danger test" to judge whether speech is protected by the First Amendment.

*Whitney v. California*, 274 U. S. 357 (1927): Since Anita Whitney did not base her defense on the First Amendment, the Supreme Court, by a 7 to 2 decision, upheld her conviction of being found guilty under the California's 1919 Criminal Syndicalism Act for allegedly helping to establish the Communist Labor Party, a group the state argued taught the violent overthrow of government."The Whitney case is most noted for Justice Louis D. Brandeis's concurrence, "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence.

*Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931):, the Supreme Court invalidated as an infringement of constitutional guarantees a Minnesota statue allowing specified government officials or private citizens to maintain a lawsuit in the name of the State to suppress a public nuisance and enjoin the publication of future issues of a "malicious, scandalous and defamatory newspaper, magazine or other periodical," unless the publisher can prove "the truth was published with good motives and for justifiable ends."

*Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d. 430 (1969): The Supreme Court established the modern version of the "clear and present danger" doctrine, holding that states only could restrict speech that "is directed to inciting or producing imminent lawless action, and is likely to incite or produce such action."

In *Everson v. Board of Education*, 330 US 203, 91 L. Ed. 711, it was held that: "The establishment of religion, of the First Amendment means at least this: Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force or influence a person to go to or to remain away from a church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or nonattendance."

*Cantwell v. Connecticut* - US SUPREME CT: NO STATE INTERFERENCE WITH RELIGIOUS ACTIVITIES IS PERMITTED:In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.

U.S. SUPREME COURT in *West Virginia State Board of Education v. Barnette* 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628, 1943 U.S.: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us." "the right of freedom to believe, freedom to worship one's Maker according to the dictates of one's conscience, a right which the Constitution specifically shelters. Reflection has convinced me that as a judge I have no loftier duty or responsibility than to uphold that spiritual freedom to its farthest reaches.""Official compulsion to affirm what is contrary to one's religious beliefs is the antithesis of freedom of worship which, it is well to recall, was achieved in this country only after what Jefferson characterized as the 'severest contests in which I have ever been engaged." "The essence of the religious freedom guaranteed by our Constitution is therefore this: no religion shall either receive the state's support or incur its hostility. Religion is outside the sphere of political government."

U.S. SUPREME COURT in *UNITED STATES v. BALLARD*, 322 U.S. 78 (1944), 322 U.S. 78,

*UNITED STATES v. BALLARD et al.* No. 472.Decided April 24, 1944: Freedom of thought, which includes freedom of religious belief, is basic in a society of free men.""The First Amendment has a dual aspect. It not only 'forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship' but also 'safeguards the free exercise of the chosen form of religion."

U.S. SUPREME COURT, *PRINCE v. COM. OF MASS.*, 321 U.S. 158 (1944), 321 U.S. 158 *PRINCE v. COMMONWEALTH OF MASSACHUSETTS.* No. 98.Decided Jan. 31, 1944: "when state action impinges upon a claimed religious freedom, it must fall unless shown to be necessary for or conducive to the child's protection against some clear and present danger, cf. Schenck v. United States, 249 U.S. 47 , 39 S.Ct. 247; and, it is added, there was no such showing here."

"*Murdock v. Pennsylvania*, 319 U.S. 105, 108 , 109 S., 63 S.Ct. 870, 872, 873, 146 A.L.R. 82.: "Religious training and activity, whether performed by adult or child, are protected by the Fourteenth Amendment against interference by state action, except insofar as they violate reasonable regulations adopted for the protection of the public health, morals and welfare."

U.S. SUPREME COURT, *HEFFRON v. INT'L SOC. FOR KRISHNA CONSC.*, 452 U.S. 640 (1981) , 452 U.S. 640 *HEFFRON, SECRETARY AND MANAGER OF THE MINNESOTA STATE AGRICULTURAL SOCIETY. BOARD OF MANAGERS, ET AL. v. INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., ET AL.* CERTIORARI TO THE SUPREME COURT OF MINNESOTA. No. 80-795. Decided June 22, 1981: "The State does not dispute that the oral and written dissemination of the Krishnas' religious views and doctrines is protected by the First Amendment." "See *Schneider v. State*, 308 U.S. 147, 160 , 162-164 (1939); *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938). Nor does it claim that this protection is lost because the written materials sought to be distributed are sold rather than given away or because contributions or gifts are solicited in the course of propagating the faith. Our cases indicate as much. *Murdock v. Pennsylvania*, 319 U.S. 105, 111 (1943); *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980). See *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

The First Amendment protects the right of every citizen to "reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Kovacs v. Cooper*, 336 U.S. 77, 87 (1949).

U.S. Supreme Court, *KEDROFF v. ST. NICHOLAS CATHEDRAL*, 344 U.S. 94 (1952) 344 U.S. 94 *KEDROFF ET AL. v. SAINT NICHOLAS CATHEDRAL OF THE RUSSIAN ORTHODOX CHURCH IN NORTH AMERICA.* APPEAL FROM THE COURT OF APPEALS OF NEW YORK. No. 3. Decided November 24, 1952: "The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned."

*Watson v. Jones,* 13 Wall. 679 (1872) - Court rules that church membership disputes are beyond the bounds of civil courts.

U.S. Supreme Court, *PRESBYTERIAN CHURCH v. HULL CHURCH*, 393 U.S. 440 (1969) 393 U.S.440 *PRESBYTERIAN CHURCH IN THE UNITED STATES ET AL. v. MARY ELIZABETH BLUE HULL MEMORIAL* PRESBYTERIAN CHURCH ET AL. CERTIORARI TO THE SUPREME COURT OF GEORGIA. No. 71. Decided January 27, 1969
"The opinion [in *Watson v. Jones*] radiates . . . a spirit of freedom for religious organizations, an independence from secular control or manipulation - in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. Freedom to select the clergy, where no improper methods of choice are proven, we think, must now be said to have federal constitutional protection as a part of the free exercise of religion against state interference."U.S. Supreme Court, *Lemon v. Kurtzman*, 403 U.S. 602 (1971): "the three-part Establishment Clause test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Under that test as described in our past cases, to satisfy the Establishment Clause, a governmental [505 U.S. 577, 585]   practice must (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion."*Stone v. Graham* 449 U.S. 39 (1980) FREEDOM OF RELIGION IS INVIOLABLE. *United States v. Ballard*, 322 U.S. 78 (1944) - Court rules that religious teachings cannot be prosecuted for fraud. The beliefs of one person may seem preposterous to another, but religious liberty demands the "widest toleration of conflicting views." *Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520 (1993) - Court finds ordinances passed by the city of Hialeah, Florida, to stop members of the Santeria religion from sacrificing animals in their religious ceremonies were aimed directly at the church and are therefore unconstitutional. *Presbyterian Church v. Hull Church*, 393 U.S. 440 (1969) - Court rules that property disputes that turn on questions of church doctrine are outside the bounds of civil courts. *Jones v. Wolf*, 443 U.S. 595 (1979) - Court rules that questions of church property disputes are outside the bounds of civil courts.U.S. Supreme Court *JONES v. WOLF*, 443 U.S. 595 (1979)443

U.S. 595 *JONES ET AL. v. WOLF ET AL.* CERTIORARI TO THE SUPREME COURT OF GEORGIA.No. 78-91.
Decided July 2, 1979: "the State may adopt any method of overcoming the majoritarian presumption, so long as the use of that method does not impair free-exercise rights or entangle the civil courts in matters of religious controversy".

U.S. Supreme Court, *JONES v. CITY OF OPELIKA*, 319 U.S. 105 (1943) 319 U.S. 105 *MURDOCK v.COMMONWEALTH OF PENNSYLVANIA* Nos. 480-487. Decided May 3, 1943: "We only hold that spreading one's religious beliefs or preaching the Gospel through distribution of religious literature and through personal visitations is an age-old type of evangelism with as high a claim to constitutional protection as the more orthodox types."

U.S. Supreme Court, *MINERSVILLE SCHOOL DIST. v. GOBITIS*, 310 U.S. 586 (1940) 310 U.S. 586 *MINERSVILLE SCHOOL DIST. et al. v. GOBITIS* et al. No. 690. Decided June 3, 1940.: "the process may be utilized so long as men's right to believe as they please, to win others to their way of belief, and their right to assemble in their chosen places of worship for the devotional ceremonies of their faith, are all fully expected."

U.S. Supreme Court, *WISCONSIN v. YODER*, 406 U.S. 205 (1972) 406 U.S. 205 *WISCONSIN v.*

*YODER ET AL.* CERTIORARI TO THE SUPREME COURT OF WISCONSIN No. 70-110. Decided May 15, 1972: "A majority of the court was of the opinion that the State had failed to make an adequate showing that its interest in "establishing and maintaining an educational system overrides the defendants' right to the free exercise of their religion." 49 Wis. 2d 430, 447, 182 N. W. 2d 539, 547 (1971)."Long before there was general acknowledgment of the need for universal formal education, the Religion Clauses had specifically and firmly fixed the right to free exercise of religious beliefs, and buttressing this fundamental right was an equally firm, even if less explicit, prohibition against the establishment of any religion by government. The values underlying these two provisions relating to religion have been zealously protected, sometimes even at the expense of other interests of admittedly high social importance."

A STATE CANNOT INTERFERE WITH RELIGIOUS SOLICITING:*Watchtower Bible & Tract Society of New York v. Village of Stratton,* (2002) - An 8-to-1 majority declare the village's door-to-door ordinance an unconstitutional burden on the religious expression and freedom of speech of Jehovah's Witnesses. Door-to-door proselytizing: *Jones v. Opelika,* 316 U.S. 584 (1942) - Slim majority of court upheld an ordinance requiring a fee for a license to sell books. The case was brought by Jehovah's Witnesses who wanted to sell religious literature in the Alabama town. *Murdock v. Pennsylvania,* 319 U.S. 105 (1943) - Slim majority of court overruled *Jones v. Opelika* and ruled that imposing a fee to sell religious literature door-to-door was too great a burden on religious liberty. Case was brought by Jehovah's Witnesses. Proselytizing in other venues: *Marsh v. Alabama,* 326 U.S. 501 (1946) - Court rules that Jehovah's Witnesses have a right to distribute religious literature on the streets of a company town. *Fowler v. Rhode Island,* 345 U.S. 67 (1953) - Court overturned conviction of a Jehovah's Witness who gave a religious address in a public park without permission of Pawtuckett, Rhode Island city officials. Pawtuckett officials had allowed other religous groups to speak in the park. *Krishna v. Lee,* 112 S.Ct. 2701 (1992) - Majority of the Supreme Court rules that airport managers can prohibit solicitation of money by members of the Krishna religion, but must allow the free distribution of religious literature.

STATE BARRED FROM INTERFERENCE WITH RELIGIOUS PURSUITS: the Court in *Sherbert v. Verner* Sherbert was reaffirmed and applied in subsequent cases involving denial of unemployment benefits. *Thomas v. Review Board* The Court applied the Sherbert balancing test in several areas outside of unemployment compensation. The first two such cases involved the Amish, whose religion requires them to lead a simple life of labor and worship in a tight-knit and self-reliant community largely insulated from the materialism and other distractions of modern life. *Wisconsin v. Yoder* that this interest outweighed the great harm which it would do to traditional Amish religious beliefs to impose the compulsory ninth and tenth grade attendance.

HIGH COURTS HAVE RULED THAT THE TEN COMMANDMENTS IS CLEARLY RELIGIOUS *ACLU v. McCreary County* (Supreme Court, 2005). THE GOLDEN RULE IS RELIGIOUS: Muhammad said: "choose the same thing for your brother that you like for yourself". Confucius said "Do not impose on others what you do not wish for yourself." Jesus said, "And as ye would that men should do to you, do ye also to them likewise." Luke 6:31.

THE DEFENDANTS VIOLATED THE FIRST AMENDMENT PROTECTION OF FREEDOM OF THE PRESS: *Near v. Minnesota,* 1931: *"The liberty of the press ... is safeguarded from*

*invasion by state action."* with rare exceptions, it cannot stop a person from publishing or expressing a thought. FREEDOM OF EXPRESSION

*City of Charleston v. The Kanawha Players*, U.S. SUPREME COURT DECISION, MAY 4, 2010: In a decisive and vulgar 7-2 ruling, the U.S. Supreme Court once again upheld the constitution's First Amendment this week, calling the freedom of expression among the most "inalienable and important rights that a motherfucker can have.""It is the opinion of this court that the right to speak without censorship or fear of intimidation is fundamental to a healthy democracy," Justice Ruth Bader Ginsburg wrote for the majority. "Furthermore, the court finds that the right to say whatever the hell you want, whenever the hell you want, is not only a founding tenet, but remains essential to the continued success of this nation." THE GOLDBERG COURT VIOLATED THE FIRST AMENDMENT FREEDOM OF RELIGION, SEPARATION OF CHURCH AND STATE, FREE EXERCISE OF RELIGIOUS BELIEFS: Madison's first draft of the First Amendment read: "The civil rights of none shall be abridged on account of religious belief or worship, nor shall any national religion be established, nor shall the full and equal rights of conscience be in any manner, or on any pretence, infringed." [1 Annals of Congress 434 (June 8, 1789)] It is highly significant that religion, of all the liberties embodied in the Bill of Rights, is the very first freedom mentioned.Thomas Jefferson stated: "No provision in our Constitution ought to be dearer to man than that which protects the rights of conscience against the enterprises of the civil authority."

*Lovell v. Griffin* (1938) The Court ruled that the city of Griffin, Georgia had no right to make an ordinance that someone had to seek governmental permission to distribute religious pamphlets.

*Brandenberg v. Ohio* (1969) A KKK leader's speech, which included a threat of vengeance on the President, was protected by the first amendment, because it must be proven that the danger advocated in the speech is real and not imaginary.*Wisconsin v. Yoder* – (1972) Amish parents declined to send their children to school after eighth grade due to religious reasons, therefore Wisconsin's compulsory education law violated their religious freedom rights. *Wooley v.*

*Maynard* – (1977) The State of New Hampshire could not prosecute citizens for covering the "Live Free or Die" motto on the state license plate, if the slogan is repugnant to their beliefs.

*Bolger v. Youngs Drug Products Corporation* – (1983) The Court supported commercial free speech for a company that mailed pamphlets advertising contraception and discussing venereal disease treatments. Irreparable Injury: An infringement of Plaintiffs' First Amendment rights guaranteed by the Establishment Clause, even for minimal periods of time, constitute[s] irreparable injury. *Elrod [*1435] v. Burns*, 427 U.S. 347, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976).

Defendants violated Reverend Doctor Lasko's First Amendment Rights with no apparent reason for so doing and no citing of any over-riding and compelling need to ignore and violate the First Amendment Rights of Reverend Lasko. Goldberg violated Reverend Lasko's Right to Freedom of Religious Expression and Freedom of Speech without ever citing a reason so necessary to preserve public safety or so necessary because of potential danger to the State or so obscene or so violative of decency that it was necessary to over-ride the First Amendment and issue

wholesale Prior Restraints to permanently prohibit Reverend Lasko from his Freedom of Speech, Freedom of the Press (internet), and deprive Reverend Lasko of Religious Liberty, Freedom of Religion, Freedom of Religious Expression. Never was any over-riding need to violate and abolish Reverend Lasko's First Amendment Rights ever cited. Goldberg violated Freedom of the Press and ordered all websites of Reverend Lasko's Religious Medical Organizations removed from the internet. The following high court cases support the Right of Reverend Lasko to Freedom of the Press:

*Near v. Minnesota*, 1931: *"The liberty of the press ... is safeguarded from invasion by state action."* New York Times Company v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d. 822 (1971): In the *"Pentagon Papers"* case, the U.S. government attempted to enjoin the *New York Times* and the *Washington Post* from publishing classified documents concerning the Vietnam War. Applying the doctrine of prior restraint from *Near v. Minnesota*, the Court found that the claims that publication of the documents would interfere with foreign policy and prolong the war were too speculative, and could not overcome the strong presumption against prior restraints. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d. 41 (1988): the Court could see no standard to distinguish among types of parodies that would not harm public discourse, which would be poorer without such satire. *American Library Association v. U.S. Department of Justice* and *Reno v. American Civil Liberties Union*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d. 874 (1997): The U.S. Supreme Court held that speech on the Internet is entitled to the highest level of First Amendment protection, similar to the protection the Court gives to books and newspapers. *Mainstream Loudoun, et al. v. Board of Trustees of the Loudoun County Library*, 24 F.Supp.2d 552 (E.D. of Va. 1998): On November 23, 1998, Judge Leonie Brinkema declared that the highly restrictive Loudoun County Internet policy was invalid under the free speech provisions of the First Amendment.

## CHARGE FIFTY-SIX: DEFENDANTS VIOLATED PLAINTIFF'S FREEDOM OF ASSOCIATION

The Right to Freedom of Association is protected by the First Amendment Right to Peaceably Assemble and the Due Process Clause of the Fourteenth Amendment. Without citing any over-riding compelling reason to do so, the defendants violated Freedom of Association. By banning all Christian Evangelical medical and dental organizations founded by Reverend Lasko, and prohibiting Reverend Lasko from writing to physicians or posting websites, the defendants ignored Reverend Lasko's Rights and ignored the Rights of over 6,000 physician members of those organizations, who had joined those organizations voluntarily. Goldberg, American Board of Surgery Inc, Saul Ewing firm demanded complete dissolution of all of those organizations, violating Freedom of Association, and acted so that Goldberg, having no medical background whatsoever, was somehow better qualified to judge what medical organizations physicians should be able to join than the physicians themselves, and prohibited the choice for physicians as to what organizations the physicians preferred or wished to be a part of, the assumption of the defendants being that the 6,000 physicians did not know what they were doing, and that Goldberg somehow knows the physicians' needs and wishes far better than the physicians themselves. The following cases support Reverend Lasko's Right to Freedom of Association: *Bates v. City of Little Rock*, 361 U.S. 516, 522 -23 (1960); *United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 578 -79 (1971); *Healy v. James*, 408 U.S. 169, 181 (1972) the Court's opinions that the right of association is derivative from the First Amendment guarantees of speech, assembly, and petition. *National Association for the Advancement of Colored People*

*v. Alabama*, 357 U.S. 449 (1958) -- the U.S. Supreme Court strikes down Alabama's statute that demanded the membership roles of the NAACP and recognizes, for the first time, a constitutionally protected right of association: "We hold that the immunity from state scrutiny ... is here so related to the right of the members to pursue their lawful private interests privately and associate freely with others in so doing to come within the protection of the Fourteenth Amendment."

CHARGE FIFTY-SEVEN: DEFENDANTS VIOLATED PLAINTIFF'S FOURTH AMENDMENT RIGHTS:
After violating the plaintiff's Fifth Amendment Right, defendants then used the information obtained from illegally compelling Reverend Lasko to be witness against himself, despite his invoking his Fifth Amendment Right to not be forced to be a witness against himself. **(Exhibit H)** The defendants, Goldberg, American Board of Surgery Inc, and Saul Ewing firm, then used that illegally obtained compelled testimony forced from Reverend Lasko to convict Reverend Lasko and threaten him with handcuffing and incarceration and large fines. The Fourth Amendment prohibits such use of illegally obtained testimony as evidence. The defendants nevertheless went on to continue the violation of Reverend Lasko's Fourth and Fifth Amendment Rights as if these rights had never existed or else that Reverend Lasko has no rights at all. **(Exhibit H)**

CHARGE FIFTY-EIGHT: DEFENDANTS VIOLATED THE PLAINTIFF'S  FIFTH AMENDMENT RIGHTS
No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. Goldberg deceptively converted civil contempt to criminal contempt and commenced sentencing of Reverend Doctor Lasko and handcuffing and incarceration with no Miranda Warning, and on the basis of illegally forced statements compelled from Reverend Lasko against himself despite Reverend Lasko invoking his Fifth Amendment Right which was denied by Goldberg, and Reverend Doctor Lasko asking for a court appointed attorney, which Goldberg refused, and with no Miranda Warning, Goldberg compelled Reverend Lasko to be a witness against himself in what had become a criminal proceeding, despite Reverend Lasko objecting and citing his Fifth Amendment Right to not be compelled to be a witness against himself. Furthermore, Reverend Lasko received no Miranda warning, was not given a lawyer although he asked for one, and Reverend Lasko was to be deprived of liberty and property without Due Process of Law since the judge asked <u>the other party to pronounce a prison sentence and Goldberg asked the other party to render a decision as to how much money the defendant should pay to them.</u> Here we have Goldberg no longer even pretending to be a legitimate judge and letting the opposition to Reverend Lasko be the judge, jury, and executioner, all done in extreme departure from Due Process of Law, or Fundamental Fairness, or Equal Rights Under the Law. **(Exhibit H)** Reverend Lasko suffers from severe malignant arterial hypertension and would have died in custody without the medication that he requires every three hours. The judge and plaintiff were now acting together to consider what would actually have been <u>a death</u>

sentence for Reverend Lasko *for his standing for his First Amendment Rights against unconstitutional orders* that violated Due Process of Law. *Miranda v. Arizona,* U.S. Supreme Court. June 13, 1966: persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would otherwise not do so freely." Therefore, a defendant "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."*Gideon v. Wainright,* 1963: Defendants in criminal cases have an absolute right to counsel. *Mapp v. Ohio,* 1961: Evidence that is illegally obtained may not be used against a defendant in court. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." Since *Ex parte Virginia,* 100 U.S. 339, 345-46 (1879), the Supreme Court has recognized the breadth of the Congressional power under § 5: "Whatever legislation is appropriate, that is, adapted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the employment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power." the Supreme Court to be within the scope of property and liberty rights protected by the Fourteenth Amendment. See Slip Op. at 14 citing *Tulsa Prof'l Collection Serv. v. Pope,* 485 U.S. 478, 485 (1998) (an unsecured claim against an estate); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 (1982) ("[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact'.") (Citations omitted); *Paul v. Davis,* 424 U.S. 693, 710 (1976) ("[T]here exists a variety of interests which are difficult of definition, but are nevertheless comprehended within the meaning of 'liberty' or 'property' as meant in the Due Process Clause.") *See also Liggett Co. v. Baldridge,* 278 U.S. 105, 111 (1928), *overruled on other grounds, North Dakota Pharmacy Bd. v. Snyder's Stores,* 414 U.S. 156 1973); *Pierce v. Society of Sisters,* 268 U.S. 510, 536 (1925); *Truax v. Corrigan,* 257 U.S. 312, 327 (1921); *Smith v. Texas,* 233 U.S. 630, 636 (1914); and *United States v. Tropiano,* 418 F.2d 1069, 1076 (2d cir. 1969), *cert. denied,* 397 U.S. 102 (1970) "The right to pursue a lawful business including the solicitation of customers necessary to the conduct of such business has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments to the Constitution."

CHARGE FIFTY-NINE: DEFENDANTS VIOLATED THE PLAINTIFF'S SIXTH AMENDMENT RIGHTS:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence. Reverend Lasko asked the Court before April 4, 2013 for a lawyer for his defense. Goldberg again refused, even though he was to immediately change the civil proceeding into a criminal proceeding. Again Reverend Lasko asked Goldberg for the assistance of counsel for his defence There was no indictment, no jury, nor was there an impartial judge since the judge was Goldberg who was prosecuting Reverend Lasko for violating orders given by Goldberg himself and who was now prosecuting Reverend Lasko for not complying with his orders violating Reverend

Lasko's Civil Rights, and those orders were in transparent violation of Reverend Lasko's Constitutional Rights and overbroad and over-reaching and violated Due Process and were, in fact, orders that were transparently unconstitutional, illegal, and void on their very face. The civil contempt became converted by Goldberg to criminal contempt against Reverend Lasko and Goldberg called for handcuffing and incarcerating Reverend Lasko for believing in Civil Rights. Cases stating an absolute right to counsel at trial: **Powell v. Alabama,** *Johnson v. Zerbst, Betts v. Brady and Progeny, Gideon v. Wainwright, Miranda v. Arizona.* U.S. SUPREME COURT, June 13, 1966: persons suspected or accused of crime contains inherently compelling pressures which undermine the individual's will to resist and to compel him to speak where he would otherwise not do so freely." A defendant "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Gideon v. Wainright,* 1963: Defendants in criminal cases have an absolute right to counsel. Reverend Lasko was completely denied his Sixth, Fifth, and Fourth Amendment Rights, and was subjected to a sham proceeding and clear violation of Due Process of Law and punished for invoking his Civil Rights. **(Exhibit H)**

CHARGE SIXTY: DEFENDANTS VIOLATED THE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS:
The Eighth Amendment prohibits the federal government from imposing excessive bail, excessive fines, or cruel and unusual punishments, including torture. Incarceration of an ordained reverend for exercising his Civil Rights Freedom of Religious Expression and excessive fines and Debtor's Prison for a minister who has taken vows of poverty and has dedicated his life to a Christian Mission to bring God and the Ten Commandments and the Words of Jesus to the medical profession is extremely cruel and federal debtors prison was outlawed by Federal Law in 1833 and therefore constitutes a very unusual and very excessive and very cruel punishment and a violation of the very Law that judges are entrusted to uphold and swear an oath to uphold, and now represents a throwback to the 1950's and 1960's persecutions of Civil Rights workers and the jailing of Martin Luther King.

CHARGE SIXTY-ONE: DEFENDANTS VIOLATED THE TENTH AMENDMENT RIGHTS OF THE PLAINTIFF IN EXCEEDING JURISDICTION AND IGNORING THE RIGHTS OF THE PLAINTIFF THAT WERE NEVER SPECIFIED IN THE FEDERAL OR STATE CONSTITUTIONS
Defendants had no right to monitor Reverend Lasko's church activities nor any right to change copyright law to exceed a given copyright nor to use copyright law to destroy fifty-five organizations having no similarity whatever to the name in question as being infringed upon, nor did defendants have a right to invent a Federal Debtor's Prison that had no law so authorizing and was in violation of Federal statutes and Constitutional prohibitions.

CHARGE SIXTY-TWO: DEFENDANTS VIOLATED THE PLAINTIFF'S THIRTEENTH AMENDMENT RIGHTS
"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Formally abolishing slavery in the United States, the 13th Amendment was passed by the Congress on January 31, 1865, and ratified by the states on December 6, 1865. By

claiming to have the right to sentence Reverend Lasko to a Federal Debtor's Prison on either April 4, 2013, or six months later, if Reverend Lasko could not come up with a substantial amount of money, an amount to be decided upon by the defendants in opposition to Reverend Lasko, with the blessing of Goldberg, or by Goldberg, who violated the federal statutes against federal debtors prisons and also violated the prohibition against Indentured Servitude in the United States, and for the first time since 1865, Goldberg and the other defendants who in no way objected, established a sentence of Slavery specially for Reverend Lasko, ignoring the Thirteenth Amendment, ignoring the American Civil War, and violating Abraham Lincoln's Emancipation Proclaimation. Furthermore, Goldberg ignored and violated Federal Law abolishing Federal Debtor Prisons, a Law that had stood for over one hundred and eighty years. The United States eliminated the federal imprisonment of debtors by federal statutes in 1833.

## CHARGE SIXTY-THREE: DEFENDANTS VIOLATED THE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Reverend Doctor Keith A. Lasko is a natural born citizen of the United States. The Goldberg Court and the defendants have violated Reverend Doctor Lasko's Right to Due Process of Law and Equal Protection of the Laws by violating Reverend Lasko's Right to Freedom of Religion, Freedom of Religious Expression, Freedom of Speech, Freedom of the Press, the Right to Freedom of Association, the Right to not be compelled to be a witness against himself in what was in actuality a criminal trial, the Right to a lawyer in a criminal proceeding, the Right to a fair and impartial jury, the Right to not be forced into Slavery or Indentured Servitude, the Right to have the Federal Law followed abolishing Federal Debtor's Prisons, the Right to not be subjected to cruel and unusual punishment, the Right to sufficient Due Process of Law so that the judge would not appoint the opposition against Reverend Lasko to be judge, jury, and sentence giver and de facto executioner, the Right to the Civil Rights Laws under Title 18, Sections 241 and 242 that state that no citizen of the United States shall have his civil rights taken away under color of law, and Reverend Lasko further was denied Due Process of Law and the Equal Protection of the Law by having a judge who ignored the U.S. Constitution and Bill of Rights and ignored a large body of U.S. Supreme Court and other High Court precedents that would have been protective of Reverend Lasko's Rights, and someone who violated his judicial oath, given three times, to protect and defend the United States Constitution. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." Since *Ex parte Virginia*, 100 U.S. 339, 345-46 (1879), the Supreme Court has recognized the breadth of the Congressional power under § 5: " to secure to all persons the employment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power." the Supreme Court to be within the scope of property and liberty rights protected by the Fourteenth Amendment. See Slip Op. at 14 citing *Tulsa Prof'l Collection Serv. v. Pope*, 485 U.S. 478, 485 (1998) (an unsecured claim against an estate); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact'.") (Citations omitted);

*Paul v. Davis*, 424 U.S. 693, 710 (1976) ("[T]here exists a variety of interests which are difficult of definition, but are nevertheless comprehended within the meaning of 'liberty' or 'property' as meant in the Due Process Clause.") *See also Liggett Co. v. Baldridge*, 278 U.S. 105, 111 (1928), *overruled on other grounds, North Dakota Pharmacy Bd. v. Snyder's Stores*, 414 U.S. 156 (1973); *Pierce v. Society of Sisters*, 268 U.S. 510, 536 (1925); *Truax v. Corrigan*, 257 U.S. 312, 327 (1921); *Smith v. Texas*, 233 U.S. 630, 636 (1914); and *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d cir. 1969), *cert. denied*, 397 U.S. 102 (1970) "The right to pursue a lawful business including the solicitation of customers necessary to the conduct of such business has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments to the Constitution."

## CHARGE SIXTY-FOUR: DEFENDANTS VIOLATED ARTICLE SIX SECTION TWO OF THE UNITED STATES CONSTITUTION

"This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." The "supremacy clause" is the most important guarantor of national union. It assures that the Constitution and federal laws and treaties take precedence over state law and binds all judges to adhere to that principle in their courts. The Goldberg Court violated the Supreme Law of the Land, the United States Constitution, as Goldberg placed his own orders as being higher than the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, Fourteenth Amendments to the Constitution, and ignored a large body of United States Supreme Court Decisions, violated stare decesis, and Goldberg placing his own orders as though they were the Supreme Law of the Land and higher than the United States Constitution and higher than the decisions and rulings of the U.S. Supreme Court. *Marbury v. Madison*, 1803: "A law repugnant to the Constitution is void."*McCulloch v. Maryland*, 1819: "Let the end be legitimate ... and all means which are ... consistent with the letter and spirit of the Constitution, *Gibbons v. Ogden* (1824): John Marshall wrote, "The nullity of an act, inconsistent with the Constitution, is produced by the declaration that the Constitution is the supreme law."

## CHARGE SIXTY-FIVE: DEFENDANTS VIOLATED DUE PROCESS OF LAW AND EQUAL RIGHTS UNDER THE LAW

By violating the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments, Goldberg denied Reverend Lasko Due Process Of Law and denied Reverend Lasko Equal Rights Under The Law. By issuing orders that were over broad and over reaching, Goldberg denied Reverend Lasko Due Process of Law and Equal Rights Under The Law. By asking the party against Reverend Lasko to decide and to render the penalty against Reverend Lasko, including incarceration and sentencing and large fines, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law, acting not as a judge but as an advocate of the party in opposition to Reverend Lasko, that being the American Board of Surgery Inc and the Saul Ewing firm. By holding his own orders as higher than the United States Constitution, the Supreme Law of the Land, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By subjecting Reverend Lasko to Federal Debtor's Prison, which had been outlawed by Federal Law since 1833, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By previously barring Reverend Lasko from his Right to

Appeal Goldberg's unconstitutional decisions and unconstitutional orders, by demanding that Reverend Lasko, a pauper, in order to appeal, had to post $10,000 which he absolutely could not do, Reverend Lasko was barred from appealing an unfair decision against him, and therefore Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law, and Goldberg wrongfully shielded his unconstitutional actions from review. By acting under color of law to violate the civil rights of a U.S. Citizen, Goldberg and the American Board of Surgery Inc and the Saul Ewing firm violated the Civil Rights Act of 1964, Title 18, Sections 241 and 242, and denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By ignoring a large body of U.S. Supreme Court Decisions and ignoring numerous other high court decisions, particularly ignoring all precedents affirming the First Amendment Rights and Protections of Reverend Lasko, and by ignoring the well-established doctrine of stare decisis, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. By ignoring and violating the United Nations Treaty of which the United States is a signatory, The United Nations Treaty On Human Rights: Universal Declaration of Human Rights, Goldberg denied Reverend Lasko Due Process Of Law and Equal Rights Under The Law. The 14th amendment of the United States Constitution gives everyone a Right to Due Process of Law, which includes judgements that must comply with the Constitution and case law, particularly U.S. Supreme Court case law. By ignoring an Oath given as a Pennsylvania Lawyer and by ignoring an Oath given several times as a Judge, an Oath solemnly given to support and defend the United States Constitution, by ignoring and violating those Oaths, and violating the United States Constitution, Goldberg lost jurisdiction in the case, violated Reverend Lasko's Due Process Rights and violated Reverend Lasko's Right to Equal Treatment and Equal Protection of the Laws.

CHARGE SIXTY-SIX: THE DEFENDANTS VIOLATED PRO SE DEFENDANT'S RIGHT TO FAIRNESS:

Section 1985(3) under Title 42 reaches both conspiracies under color of law and conspiracies effectuated through purely private conduct. In this case plaintiff Reverend Lasko has alleged a class-based, invidiously discriminatory animus and the perpetuation of monopoly is behind the defendant conspirators' actions as the court records reflect. That actionable cause is the treatment of a non-lawyer pro se litigant as a distinct "class-based subject" of the Court, wherein denial of equal protection of the laws and denial of due process was clearly the product of bias and prejudice of the Court. See *Griffen v. Breckenridge*, 403 U.S. 88,102 (1971). A judgement to dismiss because of some trumped up technicality giving excuse to dismiss a non-lawyer pro se litigant's complaint with merit in a lawyer dominated Court hearing. In support of plaintiffs motion to vacate Judgement, the following cases are offered; *Picking v. Pennsylvania Railway*,(151 F2d.240) Third Circuit Court of Appeals. The ruling of the court in this case held; "Where a plaintiff pleads pro se in a suit for protection of civil rights, the court should endeavor to construe the plaintiff's pleading without regard to technicalities." In *Walter Process Equipment v. Food Machinery* 382 U.S. 172 (1965) it was held that in a "motion to dismiss", the material allegations of the complaint are taken as admitted."Pleadings in this case have been filed and are being filed Pro Se by Reverend Keith Lasko, such pleadings are not to be held to the same high standards of perfection as practicing lawyers. *Haines and Kerner* 92 Sct 594, also see *Power* 914 F2d 1459 (11th Cir 1990), also see *Hulsey v. Ownes* 63 F3d 354 (5th Cir 1995), also see In Re: *Hall v. Bellmon* 935 f.2d 1106 (10th Cir. 1991). Sixth Circuit USCA). Justice Black in *Conley v. Gibson*, 355 U.S. 41 at 48 (1957) In *Puckett v. Cox*, it was held that a pro se pleading requires less stringent reading than one drafted by a lawyer (456 F2d 233 (1972 Sixth Circuit USCA).

Justice Black in *Conley v. Gibson,* 355 U.S. 41 at 48 (1957). " The Federal Rules rejects the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." According to Rule 8 (f) Federal Rules of Civil Procedure and the State Court rule which holds that all pleadings shall be construed to do substantial justice. A judgement to dismiss because of some trumped up technicality giving excuse to dismiss a non-lawyer pro se litigant's complaint with merit in a lawyer dominated court hearing, in support of Plaintiff's motion to vacate Judgement, the following cases are offered: *Picking v.Pennsylvania Railway,* (151 F2d. 240) Third Circuit Court of Appeals.In *Walter Process Equipment v. Food Machinery* 382 U.S. 172 (1965) it was held that where a plaintiff pleads pro se in a suit for protection of civil rights, the court should endeavor to construe Plaintiff pro se pleading without regard to technicalities.

CHARGE SIXTY-SEVEN: DEFENDANTS GAVE OR OBTAINED UNCONSTITUTIONAL ORDERS AND UNJUSTIFIED PRIOR RESTRAINT ORDERS AGAINST PLAINTIFF AND VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS AND THOSE ORDERS ARE VOID ON THEIR VERY FACE FOR THEIR BEING UNCONSTITUTIONAL AND NEVERTHELESS DEFENDANTS HAVE ATTEMPTED TO ILLEGALLY ENFORCE THESE VOID ORDERS WITH CONTEMPT ORDERS AGAINST PLAINTIFF THAT FURTHER THE DEFENDANTS' MONOPOLY AND RESTRAINT OF TRADE AND ELIMINATION OF COMPETITION AND TRANSPARENTLY VIOLATE THE PLAINTIFF'S FREEDOM OF SPEECH AND RELIGION AND RELIGIOUS EXPRESSION
Generally, a void judgment has no effect and may be disregarded. Gullet v. Gullet, 992 S.W.2d 866 (Ky.App. 1999). And, it is well-established that a person may not be held in contempt for failure to comply with a void order. Goldberg has threatened in April 2013 and later in 2013 has threatened Reverend Lasko with prison and fines for contempt of court because Reverend Lasko refuses to follow Goldberg's unconstitutional orders that violate Reverend Lasko's First Amendment Rights to Free Exercise of Religion, Freedom of Speech, Freedom of the Press, and Freedom of Religion and numerous other violations of Reverend Lasko's Rights in the unconstitutional orders given by Goldberg that are over broad over reaching, violate Due Process, are transparently unconstitutional, illegal, and void. *Davis v. City of Bowling Green,* 289 S.W.2d 506 (Ky. 1956).The U.S. Supreme Court, in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character. Since by law, a judge is a state officer, the judge acts not as a judge, but as a private individual. And has lost his jurisdiction in the court and his orders are violative of Due Process of Law and are void. In *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401 (1958), the U.S. Supreme Court stated that "No state legislator or executive or juducial officer can war against the U.S. Constitution without violating his oath to support that Constitution." In *U.S. v. Will,* 449 U.S. 200,216, 101 S. Ct. 471, 66 L.Ed. 2d 392, 406 (1980) and *Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821), " Whenever a judge acts where he or she does not have jurisdiction to act, the judge is engaged in an act or acts of treason."In re *Sawyer,* 124 U.S. 200 (1888), if a judge does not fully comply with the U.S. Constitution, then his orders are void.The court in *Yates v. Village of Hoffman Estates, Illinois,* 209 F. Supp. 757 (N.D. Ill. 1962) held that "not every action by a judge is in exercise of his judicial function. When a judge acts as a trespasser of the law, when a judge does

not follow the law, the judge loses subject matter jurisdiction and the judge's orders are void, of no legal force or effect. In *Elliot v. Piersol*, 1 Pet. 328, 340, 26 u.S. 328, 340 (1828) the U.S. Supreme Court stated that if a court is "without authority, its judgements and orders are regarded as nullities. They are not voidable, but simply void. And all persons concerned in executing such judgements or sentences are considered, in law, as trespassers." "Further it is the obligation of every Judge to honor, abide by, and uphold not only the Constitution and laws of the State, but they are bound by the laws and Constitution of the United States as well." "State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law." *Stone v Powell*, 428 US 465, 483 n 35, 96 S. Ct 3037, 49 L Ed. 2d 1067 (1976)" "Any judge who does not comply with his oath to the Constitution of the United States, wars against that Constitution and engages in violation of the Supreme Law of the Land. If a judge does not fully comply with the Constitution, then his orders are void, In re *Sawyer*, 124 U.S. 200 (1888), he is without jurisdiction, and he/she has engaged in an act or acts of treason." "*U.S. v. Will*, 449 U.S. 200, 216, 101 S. Ct. 471, 66 Ed.2d 392, 406 (1980); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)" The Court in *Yates Vs. Village of Hoffman Estates, Illinois*, 209 F.Supp. 757 (N.D. Ill. 1962) held that,"Not every action by any judge is in exercise of his judicial function. It is not a judicial function for a Judge to commit an intentional tort even though the tort occurs in the Courthouse. When a judge acts as a Trespasser of the Law, when a judge does not follow the law, the judge loses subject matter jurisdiction and the Judge's orders are void, of no legal force or effect" Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.; U.S.C.A. Const Amend. 5. *Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985). A void judgment is one which has a mere semblance, but is lacking in some of the essential elements which would authorize the court to proceed to judgment, *Henderson v. Henderson*, 59 S.E.2d 227, (N.C. 1950). Void judgment is one which has no legal force or effect whatever, it is an absolute nullity, its invalidity may be asserted by any person whose rights are affected at any time and at any place and it need not be attacked directly but may be attacked collaterally whenever and wherever it is interposed, *City of Lufkin v. McVicker*, 510 S.X.2d 141 (Twx.Civ.App.-Beaumone 1973).When rule providing for relief from void judgments is applicable, relief is not discretionary matter, but is mandatory, *Orner. V. Shalala*, 30 F.3d 1307 (Colo. 1994). Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside, *Jaffe and Asher v. Van Brunt*, S.D.N.Y.1994, 158 F.R.D. 278. A "void" judgment, as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack (thus here, by). No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen old wound and once more probe its depths. And it is then as though trial and adjudication had never been. *Fritts v. Krugh*, Supreme Court of Michigan, 92 N.W.2d 604, 354 Mich. 97 (10/13/58). In re *Sawyer*, 124 U.S. 200 (1888), if a judge does not fully comply with the U.S. Constitution, then his orders are void.

In a *Constitutional Republic* like the United States of America, acts by officials are *legitimate* only if they are consistent with and based on a Constitution, a body of laws which are superior to all subsequent statutes and other acts of officials. It is a fundamental principle that all acts of officials not derived from the delegated powers of the Constitution are *null and void from*

*inception*, not just from the point at which a court may find them unconstitutional. Since the ratification of the Constitution for the United States and each of its properly ratified amendments, there have been numerous acts by officials, including statutes, regulations, executive orders, court rulings, and ordinary decisions and actions taken while on duty and under color of law, which have been unconstitutional, and in many cases, in violation of civil rights of persons and of constitutional laws.

The contempt power of judges is awesome. Nowhere in our political system can an individual exercise authority comparable to that of a judge holding someone in criminal contempt. By finding someone guilty of contempt and ordering that person jailed or fined, a court combines the roles of grand jury, prosecutor, and judge. Subsequent appeals or reconsideration may ultimately modify or overturn the contempt order, but these do little to compensate the alleged contemnor who may already have spent time behind bars. In *Goldblum*, an NBC attorney was jailed when he refused to turn over a documentary that was to be aired the following evening so that the judge could check for inaccuracies. *Id.* at 906. The Ninth Circuit, issuing a writ of mandamus, reversed the trial court's order and invalidated the contempt citation as an unconstitutional prior restraint. Serious constitutional problems arise when the contempt power clashes with other compelling interests, especially those guaranteed by the First Amendment. *Craig v. Harney*, 331 U.S. 367, 372-76 (1947) (noting that freedom of speech should not be hindered unless serious threat to justice is imminent); *Bridges v. California*, 314 U.S. 252, 260-72 (1941) (holding that freedom of press must be given broadest scope possible and must not be restricted absent "clear and present" danger to orderly administration of justice). Freedom of speech and press enjoy a near-sacred position in our system. Any statute, court order, or administrative policy that restricts their exercise is subject to strict judicial scrutiny and must clear numerous constitutional hurdles. Although First Amendment freedoms enjoy this "preferred position," other constitutional rights, such as the right to a fair trial, are also indispensable to a free society. When those fundamental rights clash, judges must weigh the competing interests and determine how each is best preserved. This balancing of interests is often difficult for even the most conscientious judge. The issues become even more complicated when judges illegally restrict the exercise of First Amendment rights by issuing invalid orders and attempt to force compliance under threat of contempt. This has been done by defendants and used against Reverend Lasko for his insisting upon his Freedom of Religious Expression, Freedom of Speech, Freedom of the Press, Freedom of Religion, Freedom of Association. The most common circumstance in which unconstitutional orders are issued against the press occurs when judges restrain journalists in advance of publication in a fair trial/free press context. The Supreme Court has declared that "any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity," *Austin v. Keefe*, 402 U.S. 415, 419 (1971) (finding heavy burden needed to justify restraint of speech) and will be tolerated only under the most limited circumstances. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 568-70 (1976) (holding that court order restraining media from publishing admissions of murder suspect until jury was impaneled violates first amendment rights) and *New York Times, Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (finding that government did not carry heavy burden required to support prior restraint on newspaper's publication of classified material regarding government's Vietnam policy) and *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713, 721-23 (1931) (concluding that statute which authorized public officials to bring publishers of "malicious, scandalous, and defamatory" periodicals before judge to prove material is true and published in good faith was an unconstitutional restraint of freedom of expression). Plaintiff contends that the Goldberg orders are transparently unconstitutional,

severely violative of the First Amendment, violate Due Process by being overly broad and over-reaching and are therefore void orders and should not be enforceable, and Goldberg's contempt orders against plaintiff are wrongful and are an excessive use of prior restraint transparently violating the First Amendment, and that the judicial oath is violated and jurisdiction is lost, and the contempt orders of Goldberg must be set aside and are examples of religious persecution and unfair treatment of the plaintiff and injurious to plaintiff while these unconstitutional orders serve to aid and abet the defendants' monopoly and destruction of competition.

CHARGE SIXTY-EIGHT: DEFENDANTS OBSTRUCTED JUSTICE BY PREVENTING APPEAL BY PLAINTIFF AND VIOLATED REVEREND LASKO'S DUE PROCESS RIGHT TO APPEAL AN UNCONSTITUTIONAL DECISION
The defendants prevented Reverend Lasko from appealing the unconstitutional orders of December 2011, given by Goldberg while Reverend Lasko was on a Christian Mission in Cambodia. **(Exhibits R and E)** Defendants demanded $10,000 from Reverend Lasko, a pauper who had taken Vows of Poverty, and had no money, and thereby defendants prevented Reverend Lasko from appealing orders that violated his Due Process and First Amendment Rights. Judge Mitchell S. Goldberg of the Eastern Pennsylvania District Court issued orders under color of law to prevent any appeal from a U.S. Citizen whose Constitutional Rights have been violated by Goldberg, and thereby blocked any judicial review of illegal and unconstitutional and overly broad and over-reaching orders against Reverend Lasko. Goldberg had violated the First Amendment and Due Process of Law and ignored all U.S. Supreme Court Decisions that clearly affirmed that Reverend Lasko's Rights were being severely violated. It is extreme violation of Due Process for a judge to be allowed to prevent a review of his illegal orders. If a lower court judge can block any appeal of his orders there is no need for any court of appeals and there can be no Rule of Law, as this allows a lower court judge to violate any laws and ignore everything in the Constitution. This blocking of an appeal is itself a violation of Due Process of Law. It is on its face the best evidence that the judge has violated a Citizen's Rights and the judge is trying to cover it up. His orders, on that basis alone, should be void. Moreover, in violating the Constitution, the judge violated his judicial oath, is not acting as a legal judge, has lost his jurisdiction, and his orders are illegal and void. By acting to set a very high fee, $10,000, for Reverend Lasko, a pauper living on $800 a month and with only $100 in savings, and Goldberg aware that the Reverend is a pauper, **(Exhibits U and H)** prevented Reverend Lasko from an appeal of Goldberg's orders which severely violate all of Reverend Lasko's First Amendment Rights, and exemplifies the violations of Due Process of Law against Reverend Lasko. Further, this is an attempt of the defendants to hide their illegal acts and prevent any legal review that might bring to light their illegal acts and prevent continued violation of the plaintiff's Rights.

CHARGE SIXTY-NINE: DEFENDANTS' FRAUD UPON THE COURT, CRIMINAL INTERFERENCE WITH INTERSTATE COMMERCE, CRIMINAL WARRING AGAINST THE CONSTITUTION, TREASON
    A judge is an officer of the court, as well as are all legally qualified attorneys. A federal judge is a federal judicial officer, paid by the federal government to act impartially and lawfully. *A judge is not the court. People v. Zajic*, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980). Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not

68

fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." "Fraud upon the court" makes void the orders and judgments of that court.

Any attempt to commit "fraud upon the court" vitiates the entire proceeding. *The People of the State of Illinois v. Fred E. Sterling*, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); *Allen F. Moore v. Stanley F. Sievers*, 336 Ill. 316; 168 N.E. 259 (1929) ("The maxim that fraud vitiates every transaction into which it enters ..."); In re *Village of Willowbrook*, 37 Ill.App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything."); *Dunham v. Dunham*, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); *Skelly Oil Co. v. Universal Oil Products Co.*, 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); *Thomas Stasel v. The American Home Security Corporation*, 362 Ill. 350; 199 N.E. 798 (1935).

Under Federal law, when any officer of the court has committed "fraud upon the court", the orders and judgment of that court are void, of no legal force or effect. Federal law requires the automatic disqualification of a Federal judge under certain circumstances.

In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." *Liteky v. U.S.*, 114 S.Ct. 1147, 1162 (1994).

Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process."). That Court also stated that Section 455(a) "requires a judge to recuse himself in any proceeding in which her impartiality might reasonably be questioned." *Taylor v. O'Grady*, 888 F.2d 1189 (7th Cir. 1989). In *Pfizer Inc. v. Lord*, 456 F.2d 532 (8th Cir. 1972), the Court stated that "It is important that the litigant not only actually receive justice, but that he believes that he has received justice."

The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", *Levine v. United States*, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954). A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice. **(Exhibit V)**

"Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself sua sponte under the stated circumstances." *Taylor v. O'Grady*, 888 F.2d 1189 (7th Cir. 1989).

Further, the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language [455(a)] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed." *Balistrieri*, at 1202. Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto*, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").

Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his / her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity. It has been said that this judge, acting in this manner, has no more lawful authority than someone's next-door neighbor (provided that he is not a judge). However some judges may not follow the law.

If you were a non-represented litigant, and should the court not follow the law as to non-represented litigants, then the judge has expressed an "appearance of partiality" and, under the law, it would seem that he/she has disqualified him/herself.

*Cooper Vs. Aaron*. 358 U.S. 1 78 S.Ct. 1401 (1958). If a judge does not fully comply with the Constitution, then his orders are void, in re *Sawyer*, 124 U.S. 200 (1888), he/she is Without jurisdiction.

The Supreme Court has also held that if a judge wars against the Constitution, or if he acts without jurisdiction, he has engaged in treason to the Constitution. If a judge acts after he has been automatically disqualified by law, then he is acting without jurisdiction, and that suggests that he is then engaging in criminal acts of treason, and may be engaged in extortion and the interference with interstate commerce.

Courts have repeatedly ruled that judges have no immunity for their criminal acts. Since both treason and the interference with interstate commerce are criminal acts, no judge has immunity to engage in such acts. Mitchell S. Goldberg has been influenced by the other defendants and the $450,000 paid to his political organization. (**Exhibit V**) He has then issued so many unfair and unconstitutional and overly broad and extremely over-reaching rulings against the plaintiff, that there can be no question that he has warred against the constitution, interfered with interstate commerce, and committed fraud upon the court to deny Reverend Lasko his civil rights and to injure Reverend Lasko and to further the illegal monopoly of the other defendants. No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it." *Butz v. Economou*, 98 S.Ct. 2894 (1978); *United States v. Lee*, 106 U.S. at 220, 1 S.Ct. at 261 (1882)". Plaintiff has been discriminated against and treated with unfairness, bias and prejudice by Goldberg and the opposing counsel. Any uninterested lay person would question Goldberg's impartiality and neutrality. "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." In re *Murchinson*, 349 U.S. 133, 136 (1955)" "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it." *Butz v. Economou*, 98 S.Ct. 2894 (1978); *United States v. Lee*, 106 U.S. at 220, 1 S.Ct. at 261 (1882)". "Further it is the obligation of every Judge to honor, abide by, and uphold not only the Constitution and laws of the State, but they are bound by the laws and Constitution of the United States as well." Federal courts, have a

constitutional obligation to safeguard personal liberties and to uphold federal law." *Stone v Powell*, 428 US 465, 483 n 35, 96 S. Ct 3037, 49 L Ed. 2d 1067 (1976)"."Any judge who does not comply with his oath to the Constitution of the United States, wars against that Constitution and engages in violation of the Supreme Law of the Land. **If a judge does not fully comply with the Constitution, then his orders are void**, In re *Sawyer*, 124 U.S. 200 (1888), he is without jurisdiction, and he/she has engaged in an act or acts of treason." *U.S. v. Will*, 449 U.S. 200, 216, 101 S. Ct. 471, 66 Ed.2d 392, 406 (1980); *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821).


CHARGE SEVENTY: DEFENDANTS CIVIL RIGHTS VIOLATIONS AGAINST PLAINTIFF DONE UNDER COLOR OF LAW

42 U.S.C. Section 1983. Civil action for deprivation of rights: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Title 42, United States Code, Sec. 1983 (History: R.S. Sec. 1979 derived from act Apr. 20, 1871, ch. 22, Sec. 1, 17 Stat. 13. "An Act to Enforce the Provisions of the Fourteenth Amendment."

42 U.S.C. Section 1985. Conspiracy to interfere with civil rights:

(2) Obstructing justice; if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges: If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Title 42, United States Code, Sec. 1985. [History: R.S. Sec. 1980 derived from acts July 31, 1861, ch. 33, 12 Stat. 284; Apr. 20, 1871, ch. 22, Sec. 2, 17 Stat. 13 "An Act to Enforce the Provisions of the Fourteenth Amendment." Section was formerly classified to section 47 of Title 8, Aliens and Nationality.] This statute, enacted to aid in "'the preservation of human liberty and human rights'" *Owen v. City of Independence*, 445 US 622, 636 (1980), reflects a congressional judgment that "damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees." As remedial legislation, [the Act to Enforce the Provisions of the Fourteenth Amendment] is to be construed generously to further its primary

purpose. *Gomez v. Toledo*, 446 US 635 (1980).

CHARGE SEVENTY-ONE: 42 U.S.C. § 1983 DEPRIVING PLAINTIFF OF HIS PROPERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT

The acts of the defendants to seize moneys, including plaintiff's childrens' money and they were never part of any legal action, and Reverend Lasko's social security money which was exempt from any legal seizure, and two exempt automobiles were illegally taken, these acts against plaintiff were based on violation of Due Process of Law, unconstitutional orders, extremely overly broad and over-reaching orders, undue influence on a judge, and obstruction of justice.

CHARGE SEVENTY-TWO: DEFENDANTS COMMITTED ACTS OF DOMESTIC TERRORISM

Under the Patriot Act, Title X, Section 1002 (b) violation of the Patriot Act by committing bigotry and acts of discrimination or violence against any Americans.

CHARGE SEVENTY-THREE: PATRIOT ACT VIOLATIONS BY THE DEFENDANTS, ACTS OF TERRORISM TO DAMAGE THE AMERICAN INFRASTRUCTURE

The American infrastructure is more than physical buildings and railroads, bridges, and highways, it is also infrastructure to have Rule of Law, Due Process of Law, Justice, Civil Rights, a Free Market Economy, Protection of Citizens from voracious monopolists, Protection from Religious Persecution, the Right to Organize, Freedom of Association, the Right not to be forced as in a Star Chamber to be compelled to be a witness against yourself, the Right to Have Corporations, the Right to have a Business free from Interference by Competitors, the Right to engage in Interstate Commerce, freedom from Racketeering and bribing and undue influence of public officials, and the Right to Life, Liberty, and Property. All of these are attacked by the defendants and all of these are integral parts of the American Infrasructure. The actions and legal precedents being set by the defendants are destructive of the American way of life and strike at the very core of what America has always stood for, and these acts by the defendants are more of a terrorist body blow to the structure of America than any physical act.

CHARGE SEVENTY-FOUR: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTIONS ACT

15 USC Chapter 41, Subchapter V: § 1692d Harassment or abuse, § 1692e False or misleading representations, § 1692f Unfair practices, § 1692k Civil liability: any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the

court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

The acts of the defendants and their assigns to threaten the plaintiff's wife and little girl with arrest, handcuffing, prison, illegal seizure of moneys, including plaintiff's childrens' money and they were never part of any legal action, and Reverend Lasko's social security money which was exempt from any legal seizure, and two exempt automobiles were illegally taken, illegally taking church money from the First Church of the Epiphany, the Worldwide Ministries of Jesus Christ, the Congregation of Religious Medical Ministries, the Christian Ministries and Christian Organizations that were components of the Congregation of Religious Medical Ministries, the threats by the defendants to handcuff, arrest, and imprison in a Federal Debtors Prison that federal statutes made illegal in 1833.

CHARGE SEVENTY-FIVE: DEFENDANTS ENGAGE IN TAX FRAUD TO ACCUMULATE EXCESSIVE WEALTH TO USE IN ORDER TO PERPETUATE THEIR MONOPOLY

Defendants American Board Of Surgery, Inc, American Board Of Medical Specialties, Inc, American Board Of Internal Medicine, Inc engage in tax fraud, by fraudulently obtaining and using tax free status and bogus tax free foundations to be able to accummulate wealth and use that wealth to be able to pay lawyers to perpetuate monopolies, to be able to influence judges, and to conduct defamation campaigns, and to finance other actions to destroy competition in the lucrative medical marketplace to the detriment of medical consumers and physicians who have been and are being exploited by a greedy monopoly conducted by and aided by the defendants and depriving federal and state governments of hundreds of millions of dollars in taxes. The defendants American Board of Surgery, Inc, American Board of Medical Specialties, Inc, American Board of Internal Medicine, Inc, have fraudulently, like a wolf in sheep's clothing, set themselves up and established tax free foundations to avoid paying hundreds of million of dollars in federal and state taxes, and pretend to be benign, benevolent, and merely working for the scientific, educational, and culteral enrichment of physicians and consumers, while they actually violate laws, harass, defame, engage in copious legal harassment, influence judges, fraudulently bring in swat teams to help rid themselves of opponents, maliciously engage in antitrust crimes, civil rights crimes, RICO crimes, defamation campaigns, personal injury of competitors, undue influence of government officials, obstruction of justice, the driving of reverends to bankruptcy, violating Federal Stay in Chapter Seven bankruptcy, taking children's life savings, grabbing away of automobiles illegally, all as part of a cruel monopolistic perpetuation of an illegal empire built on their enrichment, exorbitant fees for doctors, passing on of those fees to hapless consumers, and deprivation of huge amounts of taxes from both federal and state tax collectors. Defendants American Board of Surgery, Inc, and American Board of Medical Specialties, Inc, and American Board of Internal Medicine, Inc should also be denied tax exemption because they racially discriminate. A 1983 Supreme Court ruling found Bob Jones University could be denied tax exempt status because the government's "fundamental, overriding interest in eradicating racial discrimination in education" justified denying the school the tax breaks afforded other educational institutions. Later cases, helped refine these rules leading to regulations now used to deny racist groups tax exempt status under the claim that they are neither "educational" nor "charitable", nor do they seriously engage in any scientific, educational, or culteral enrichment.

CHARGE SEVENTY-SIX: DEFENDANTS TOOK UNFAIR ADVANTAGE AND PUSHED THROUGH UNOPPOSED ORDERS WHEN PLAINTIFF WAS ON A MERCY MEDICAL

MISSION IN CAMBODIA (**Exhibits B, E, F, R, T**)
Plaintiff Reverend Lasko was on a mercy medical mission in Cambodia and VietNam, and was out of touch with events in America. During October, November, December of 2010, and during January of 2011, the defendants took advantage of the situation and pushed through Draconian requests and claims against plaintiff, who was not informed of what they were doing against him and his Christian Mission and Christian Ministry. The defendants then had requested of Goldberg, and attained everything and more that they requested, and had over thirty-five medical organizations ordered destroyed and obtained a prior restraint order prohibiting forever any medical organization -any Christian medical organization- from ever being organized by the plaintiff, and they obtained from Goldberg a prior restraining order forbidding Reverend Lasko from ever writing to any doctor promoting or proselitizing his Christian Evangelical Mission to bring Christian Humanitarianism, the Words of Jesus, and the Ten Commandments to the medical profession. thus the defendants enhanced and perpetuated their monopoly in medicine by destroying thirty-five competitors and prohibiting furure competition as well.

CHARGE SEVENTY-SEVEN: ONGOING ACTS BY DEFENDANTS AGAINST THE PLAINTIFF VIOLATING CIVIL RIGHTS OF THE PLAINTIFF, MALICIOUSLY AND WILLFULLY CAUSING PERSONAL PHYSICAL AND EMOTIONAL DAMAGE TO PLAINTIFF, ACTS BY DEFENDANTS IN VIOLATION OF ANTITRUST LAWS, ACTS THAT ARE RICO VIOLATIONS, ACTS OF CRUELTY, AND CONTINUING RACIST ANTI MINORITY ACTS AGAINST COMPETING MEDICAL ORGANIZATIONS, ACTS TO DEFAME AND DESTROY AND PERPETUATE AN ILLEGAL MONOPOLY AND DESTROY A CHRISTIAN MISSION UNDERTAKEN BY REVEREND DOCTOR LASKO AND THE WORLDWIDE MINISTRIES OF JESUS CHRIST AND THE CONGREGATION OF RELIGIOUS MEDICAL MINISTRIES.
The defendants have continually acted as though they are above the Law. Even the Supremacy Clause of the Constitution has been ignored, as have most of the Rights guaranteed in the Bill of Rights and all U.S. Supreme Court Decisions affirming and supporting these God Given Rights. This hubris and careless disregard for the plaintiff's Rights is largely attributable to the fact that Reverend Lasko is too poor to afford legal assistance, so the defendants have had a field day in bullying and attacking and punishing Reverend Lasko and Violating the Sherman Act, the RICO Act, and Reverend Lasko's Civil Rights, in the certain knowledge that Reverend Lasko was too poor and too weak and too sick to fight back. The purpose of Law and the Constitution and the Courts is not to protect the bully, but rather to protect the weak from the lawbreakers and bullies, and to render the equal rights and equal protection of the laws to even the smallest and weakest and poorest among us.

PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Reverend Doctor Keith Alan Lasko, the Worldwide Ministries of Jesus Christ, and the Congregation of Religious Ministries, pray that the Court issue an injunction enjoining the defendants from continuing their acts of discrimination and violation of First Amendment and other Constitutional Rights and especially acts of violation of Freedom of Religious Expression and Freedom of Religion and Religious Pursuits, and cease from further Acts in Violation of Antitrust Laws, and that the Court notify the Internal Revenue Service of the illegal acts and racism of the defendants that may cause them to lose their Tax Free status, and

that the Court award plaintiff such additional or alternative relief as may be just, proper, and equitable, including costs. Damages done to Plaintiff by Per Se violation of the Sherman Antitrust Act and destruction of fifty-five Christian Medical Ministries with fifty-five million dollars in damages and request for treble this amount. Damages to Reverend Lasko for Civil Rights Violations of one million dollars and request for one million dollars punitive damages. Personal Injury Damages done to Plaintiff of one million dollars and request for one million dollars in punitive damages. Civil Rico damages of one million dollars and request for treble damages and punitive Damages.

Respectfully submitted,

*Reverend Doctor Keith, Lasko*

Reverend Doctor Keith Alan Lasko, M.D., Doctor of Divinity (Hon.)
8604 Vivid Violet Avenue
Las Vegas, Nevada 89103
PRO SE                                   Dated: October 7, 2013