1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9

Keith Alan Lasko,

10

Plaintiff

11

v.

12

American Board of Surgery et al.,

13

Defendants

14

15

Case No.: 2:13-cv-01893-JAD-NJK

**Order
Granting Motions to Dismiss [Docs. 21, 43],
Granting in Part and Denying in Part
Motions to Dismiss [Doc. 36, 45],
and Denying Other Motions
[Docs. 18, 29, 44, 63, 79, 97, 125,
130, 136, 140, 156]**

16    Pro-se plaintiff Keith Alan Lasko sues eleven governmental, organizational, and individual

17  defendants for antitrust violations, civil-rights violations, and obstruction of justice.[1]  Fifteen

18  motions are pending in this case, eight filed by Lasko and seven filed by defendants.[2]  This order

19  resolves all pending motions.  Having considered the record and relevant law, I deny Lasko's motion

20  for recusal (Doc. 125); grant Judge Mitchell S. Goldberg's motion to dismiss based on judicial

21  immunity (Docs. 21, 29); grant the motion to dismiss brought by the American Board of Surgery,

22  Inc., Joseph B. Cofer, David M. Mahvi, Frank R. Lewis Jr., Jo Buyske, Mark Malangoni, and

23  Gabriel Bevilacqua ("the seven defendants") (Doc. 43) for improper venue; grant in part and deny in

24

25      [1] *See generally* Doc. 19.  I liberally construe Lasko's claims and arguments.  *See Bernhardt v.
    L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003) (acknowledging that courts must construe pro-se motions
    and pleadings liberally).

26

27      [2] *See* Docs. 18, 21, 29, 36, 43–45, 63, 79, 97, 125, 130, 136, 140, 156.  I find these motions
    appropriate for resolution without oral argument.  LR 78-2.

28

1

1   part the American Board of Internal Medicine's ("ABIM") (Doc. 36); grants in part and denies in

2   part Saul Ewing LLC and Gabriel Bevilacqua's 12(b)(6) motion to dismiss (Doc. 45); and deny the

3   remaining motions (Docs. 18, 29, 44, 63, 79, 97, 130, 136, 140, 156) for the reasons outlined below.

4                                              **Background**

5          This is not the first lawsuit involving Keith Lasko and many of the defendants.  The

6   American Board of Surgery ("ABS") sued Lasko in the Eastern District of Pennsylvania four years

7   ago, and Judge Mitchell Goldberg presided over the litigation.[3]  Lasko actively participated in that

8   suit, where he was held in contempt for violating Judge Goldberg's order, apparently lost his suit,

9   and appealed to the Third Circuit Court of Appeals.[4]  The Third Circuit affirmed the district-court

10  judgment on July 25, 2013.[5]  Goldberg appealed again on October 1, 2013.[6]  Fifteen days later,

11  Lasko filed this suit here in the District of Nevada.[7]

12         The substantive connections between this suit and the Pennsylvania suit are expressed in

13  Lasko's amended complaint and motions.  His first cause of action, which is for antitrust violations

14  and interference with interstate commerce, essentially seeks a reversal of Judge Goldberg's

15

16  ─────────────────

17         [3] *See* Doc. 43-1 (Pennsylvania complaint); *see also* Doc. 43-7 at 9 (order signed by Judge
    Mitchell S. Goldberg).  Federal Rule of Evidence 201 permits courts to take judicial notice of any fact

18  "not subject to reasonable dispute in that it is either: (1) generally known within the territorial
    jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources

19  whose accuracy cannot reasonably be questioned."  Judicial notice is properly taken of public-record
    proceedings in other courts, both within and without the federal judicial system, if those proceedings

20  directly relate to matters at issue.  *Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003), *overruled
    on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010).  I therefore take judicial notice

21  of the complaint and motions filed in the Eastern District of Pennsylvania and Third Circuit that are
    cited in this order.

22         [4] Doc. 43-5 (motion filed by Lasko in the Eastern District of Pennsylvania); Doc. 43-11 (same);

23  Doc. 43-17 (same); Doc. 43-6 (order by Judge Goldberg denying motion by Lasko); Doc. 43-7 (same);
    Doc. 43-12 (district-court order finding Lasko in contempt); Doc. 43-14 (notice of Lasko's appeal to

24  the Third Circuit).

25         [5] Doc. 43-14 (summary affirmation of district-court judgment); Doc. 43-15 (Third Circuit entry
    of judgment).

26         [6] Doc. 43-16 (Lasko appeal).

27         [7] Doc. 1-1 (complaint filed October 16, 2013).

28                                                  2

judgment in the Eastern District of Pennsylvania.[8]  The second cause of action seems to allege that Judge Goldberg's decision was a conspiracy between ABS, the Saul Ewing law firm, and Judge Goldberg to interfere with Lasko's constitutional and civil rights.[9]  While the third claim is not pled against a specific defendant, it also appears to allege that Lasko's civil and constitutional rights were violated.[10]  Claim four is for defamation, libel, and false light.[11]  Lasko explains in a motion that this claim is at least partly against the "abusive use of permanent prior restraints" and, elsewhere in his complaint, argues that Judge Goldberg imposed "draconion permanent prior restraints" on the plaintiff.[12]  In Lasko's fifth cause of action, he contends that Saul Ewing donated more than $451,000 to Judge Goldberg's political organization.[13]  He believes that ABS "has used the Saul Ewing law firm to attack Reverend Lasko and to destroy all of his past, present, future, medical and dental organizations by obtaining orders to that effect from the court of Mitchell S. Goldberg."[14]

Among the motions now pending before this court, five are motions to dismiss filed by various defendants.[15]  Two are motions for sanctions against Lasko for failure to comply with orders that Magistrate Judge Nancy Koppe and I issued directing him to stop filing frivolous motions.[16]  Lasko has eight pending motions, including a motion for recusal that seeks to remove the

---

[8] Doc. 19 at 7–8, 15.

[9] *Id.* at 16–17, 19.

[10] *Id.* at 22.

[11] *Id.*

[12] *Id.* at 22–23; Doc. 48 at 28.

[13] *Id.* at 22–26.

[14] Doc. 19 at 22.

[15] Docs. 21, 36, 43–45.

[16] Docs. 130, 136 (motions for sanctions); *see also* Docs. 60, 72, 107, 109 (orders granting defendants' motions to strike and denying plaintiff's motion for discovery).

1   undersigned from this case.[17]  I begin my analysis with the recusal motion, as its disposition directly

2   decides my ability to review this case.  I then resolve the remaining motions.

3   **Discussion**

4   **I.      Motion for Recusal (Doc. 125)**

5         Lasko has repeatedly sought to remove the district and magistrate judges assigned to his case

6   in Nevada.[18]  In his motion for recusal—which I also liberally construe as a motion for

7   reconsideration—Lasko contends that I "work[] with magistrate, support[] every decision of

8   magistrate, including denial of plaintiff responses, striking responses of plaintiff from the record . . .

9   denial of any discovery . . . denial of Rights of Plaintiff Corporations to the First Amendment and to

10  Due Process, and to Equal Treatment Under the Law."[19]  He also believes that I am "pro abortion,"

11  while he and his religious organizations are "pro life"—a situation that he argues creates a "conflict

12  of interest" from which I "may" recuse myself.[20]

13        When a party "files a timely and sufficient affidavit" showing a judge that she has "a personal

14  bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no

15  further" in that case.[21]  Under 28 U.S.C. §§ 144 and 455, judges have an affirmative duty to recuse

16  themselves when "a reasonable person with knowledge of all the facts would conclude that the

17

18

19

20    [17] Docs. 18, 156 (motions for default); Doc. 29 (motion to release Judge Goldberg with certain provisions); Doc. 63 (motion for relief); Doc. 79 (motion objecting to magistrate-judge order); Doc. 97

21  (emergency motion to remove Magistrate Judge Koppe); Doc. 125 (motion to remove Magistrate Judge Koppe and Judge Dorsey); Doc. 140 (motion for sanctions).

22
      [18] *See* Docs. 97 (motion to recuse magistrate judge), 118 (motion to recuse magistrate judge),

23  125 (motion to recuse district and magistrate judges), 126 (motion to recuse magistrate judge); *see also* Doc. 127 (Magistrate Judge Koppe denying two motions for recusal).

24
      [19] Doc. 125 at 5.  Lasko styles this a motion for mistrial and recusal, but no trial has occurred,

25  so there cannot have been a mistrial.  *See id.* at 1.

26    [20] Doc. 125 at 5.

27    [21] 28 U.S.C. § 144; *see also* 28 U.S.C. § 455.

28                                                    4

judge's impartiality might reasonably be questioned."[22]  Either actual bias or its appearance justifies recusal.[23]  The Supreme Court affirmed in *Liteky v. United States* that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[24]  Similarly, opinions that judges form "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[25]

Motions for reconsideration are not expressly authorized in the Federal Rules of Civil Procedure, but courts may grant them under Rule 59(e).[26]  This is only warranted when: (1) the movant presents newly discovered evidence, (2) the district court committed clear error or the initial ruling was manifestly unjust, or (3) there is an intervening change in controlling law.[27]  Though reconsideration may also be warranted under other unusual circumstances, it is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."[28]

Lasko's first basis for requesting recusal—or, possibly, reconsideration—essentially centers on his argument that I "support[] every decision" of the magistrate judge assigned to this case.[29]  As *Liteky* indicates, the fact that the law has compelled me to rule against Lasko and to affirm Magistrate

---

[22] *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (citing *In re Yagman*, 796 F.2d 1165, 1179 (9th Cir. 1986), *opinion amended on denial of reh'g sub nom, In re Yagman*, 803 F.2d 1085 (9th Cir. 1986)); *United States v. Conforte,* 624 F.2d 869, 880–81 (9th Cir. 1980)).

[23] *Id.* (citing *United States v. Monaco*, 852 F.2d 1143, 1147 (9th Cir. 1988)).

[24] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)) (discussing the rule that, under Section 144, disqualifying bias and prejudice stem from extrajudicial sources).

[25] *Id.*

[26] *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 179 F.3d 656, 665 (9th Cir. 1999).

[27] *Id.* (citing *All Haw. Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987)).

[28] *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2007) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

[29] *See* Doc. 125 at 5.

Judge Koppe's ruling is, by itself, a thin foundation for recusal.  Lasko has filed 44 motions in this case,[30] 10 of which the court struck as improper because they were filed in violation of court orders.[31]  Lasko has been warned that his conduct could lead to sanctions, but he has filed 16 motions since that warning, many of which seek the same or similar relief as was previously denied.[32]  I do not find that my decisions have improperly followed or supported Magistrate Judge Koppe's orders.  On the contrary, in reviewing the record, I find that Lasko's conduct compelled my decisions.  There is also no new evidence, clear error or manifest injustice, or intervening change in law that warrants reconsideration of the order he now challenges.  I thus find no basis for recusal based on any consistency between my decisions and Magistrate Judge Koppe's.

Second, Lasko asks me to recuse because he baldly alleges that I am "pro abortion," while he characterizes himself and his organizations as "pro life."  On the face of his complaint, I do not see any abortion-related issues.[33]  Apart from Lasko's argument for recusal, I am unaware of any connection that any person's or organization's views on abortion may have with his suit.  And now having been advised of Lasko's beliefs, I can and do decide the motions on their legal merits.  I do not believe that a reasonable person, knowing all the facts, could question my impartiality in this case.

The motion for recusal is therefore denied.[34]

---

[30] *See* Docs. 1, 13, 14, 18, 28, 29, 47–48, 55, 61–69, 73–74, 77, 79, 97, 99, 100, 100–03, 108, 111, 117–18, 124–26, 132, 137, 140–41, 151, 153, 156, 161, 162.

[31] *See* Docs. 60, 72, 107 (orders by district and magistrate judges granting motions to strike ); *see also* Docs. 55, 61–69, 73–74.

[32] Docs. 72 at 3 (warning Lasko that he must comply with court orders); Doc. 107 at 4 (warning Lasko that he could be sanctioned for continuing to violate court orders by reraising matters that are already fully briefed); *see also* Docs. 108, 111, 117–18, 124–26, 132, 137, 140–41, 151, 153, 156, 161, 162 (post-warning motions by Lasko).

[33] *See generally* Doc. 19 (amended complaint).

[34] Lasko's motion for recusal also seeks Magistrate Judge Koppe's removal.  *See id.* at 2–6.  I agree with her earlier decision to deny two of Lasko's motions for her recusal, as her order explains well at Doc. 127.

## II.     Judge Mitchell S. Goldberg's Motion to Dismiss (Doc. 21)

Judge Goldberg seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that the only action he is alleged to have committed is "the issuance of orders in his official capacity, in cases over which his court had subject-matter jurisdiction."[35]  He thus argues that he is entitled to absolute judicial immunity for every claim Lasko brings against him.[36]  Lasko concedes he "will not oppose" the judicial-immunity argument out of respect and patriotism.[37]  At the same time, he states that "he does not believe judicial immunity is actually viable here"; seeks to stipulate that "Goldberg hold[] Reverend Lasko and his church, ministry, and mission harmless and not retaliate in any way"; and notes that he believes fairness is served by not changing venue to Pennsylvania.[38]  Because Lasko concedes Judge Goldberg's dismissal without conceding judicial immunity on its merits, I give this issue the same thorough consideration that I would absent his concession.

"It is well settled that [j]udges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official functions."[39]  Whether an act is judicial turns on whether it is "a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity."[40]  When a judge acts erroneously, maliciously, or beyond his authority, immunity still shields him.[41]  Of course, "[a] judge is not free, like a loose cannon, to inflict indiscriminate damage whenever he announces that he is acting in his judicial

---

[35] *See* Doc. 21 at 2 (incorporating by reference all arguments made in Doc. 6); Doc. 6 at 2.

[36] *Id.*

[37] Doc. 29 at 14.

[38] *Id.*

[39] *Partington v. Gedan*, 961 F.2d 852, 866 (9th Cir. 1992) (quoting *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc)) (internal quotation marks omitted).

[40] *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)) (internal quotation marks omitted).

[41] *Stump v. Sparkman,* 435 U.S. 349, 356 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)) (internal quotation marks omitted).

capacity."[42]  But the single limitation placed on a judge's absolute immunity is jurisdictional: a judge opens himself to liability when he acts in the "clear absence of all jurisdiction," whether he acts without subject-matter or personal jurisdiction.[43]  In short, absolute immunity's scope is broadly construed to ensure judicial decisionmaking that is both independent and disinterested.[44]

Lasko's allegations of misconduct by Judge Goldberg are all aimed at functions Judge Goldberg performed in his official role.[45]  Lasko disagrees with the orders Judge Goldberg issued. Lasko does not allege that Judge Goldberg acted in the clear absence of subject-matter or personal jurisdiction—and I cannot find that Judge Goldberg even slightly exceeded his jurisdiction.  Judge Goldberg is thus entitled to absolute judicial immunity.  I grant Judge Goldberg's motion to dismiss (Doc. 21) and deny Lasko's motion to release Judge Goldberg with certain provisions (Doc. 28) as moot.

## III.  Motion to Dismiss Brought by Seven Defendants (Doc. 43)

In their joint motion to dismiss, the seven defendants argue that venue is improper in Nevada because (1) most of Lasko's claims should have been filed as compulsory counterclaims in Pennsylvania and (2) Lasko is improperly using this suit as a collateral attack on decisions by the Eastern District of Pennsylvania and the Third Circuit.[46]  Lasko opposes transfer because he believes there is bias against him in the Eastern District of Pennsylvania—which he characterizes as "undue influence and possible RICO obstruction of justice involving the Eastern District of

---

[42] *Id.* at 367 (Stewart, J., dissenting) (footnote omitted).

[43] *Stump*, 435 U.S. at 356  (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)) (internal quotation marks omitted); *Mullis v. U.S. Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1389 (9th Cir. 1987) (citations omitted) (discussing the total absence of subject-matter or personal jurisdiction).  As the District of Idaho observes in a decision affirmed by the Ninth Circuit, "There is a notable difference in exceeding proper jurisdiction and acting in a clear absence of subject matter jurisdiction."  *Samuel v. Michaud*, 980 F. Supp. 1381, 1400–01 (D. Idaho 1996).

[44] *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citations omitted).

[45] *See generally* Doc. 19; *see also* discussion of Lasko's claims in the Background section above.

[46] Doc. 43 at 11.

Pennsylvania"—and because he claims that his health does not allow him to litigate there.[47]

When a case is filed in the wrong venue, 28 U.S.C. § 1406(a) provides that the district court "shall dismiss, or if it be in the interest of justice, transfer" the case.  Federal Rule of Civil Procedure 12(b)(3) likewise permits dismissal when a party brings a motion for improper venue.  Justice is not served by transferring a case "back to a jurisdiction that [a party] purposefully sought to avoid through blatant forum shopping."[48]  This is all the more true when the plaintiff has not asked the court for transfer.[49]  And as the Ninth Circuit observed in *King v. Russell*, an "action smacks of harassment and bad faith on the plaintiff's part [when] it appears that [he] filed it here after repeatedly losing on at least some similar claims" in another state.[50]  In short, a plaintiff may not file suit in one district to circumvent or challenge adverse rulings in another district.  In the federal courts, losing parties are allowed one appeal as of right; that is the process through which dissatisfied parties must work.

This case is effectively an appeal of the Eastern District of Pennsylvania litigation.  Each of Lasko's claims refers to perceived problems with the Pennsylvania case.[51]  In a clear act of forum shopping, Lasko filed suit here 15 days after one of his appeals to the Third Circuit; he did not even allow the Third Circuit time to resolve his appeal.[52]  Instead, Lasko has "purposefully sought to avoid" that venue and seeks a more favorable outcome here.[53]  Moreover, the fact that Lasko actively

---

[47] Doc. 47 at 29; *see also* Doc. 48.

[48] *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983).

[49] *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586, 588 (9th Cir. 1991) (citing *Wood v. Santa Barbara Chamber of Commerce*, 705 F.2d 1515, 1523 (9th Cir. 1983)).

[50] *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (quoting district-court decision).

[51] *See* Doc. 19 at 7–28.

[52] Doc. 43-16 (Third Circuit appeal on October 1, 2013);  Doc. 1-1 (District of Nevada complaint filed October 16, 2013).  At the time of filing their motion to dismiss, the seven defendants represented that Lasko's third appeal was pending before the Third Circuit—and that Judge Goldberg had ruled against Lasko's efforts to transfer the Eastern District of Pennsylvania litigation to the District of Nevada.  Doc. 43 at 12.

[53] *See Wood*, 705 F.2d at 1523.

filed motions and appeals in the case giving rise to this one belies his claim that his health prevents

him from litigating in Pennsylvania.  Lasko's attempt to use this court to circumvent the

Pennsylvania court's decisions "smacks of harassment and bad faith."[54]

Given Lasko's patent forum shopping to avoid the decisions rendered in the Eastern District

of Pennsylvania and the Third Circuit, this case against these moving defendants must be dismissed.

With this dismissal, Lasko still has recourse: his concerns can be substantively addressed in the

courts where venue properly existed in the first place.  Accordingly, the seven defendants' motion to

dismiss (Doc. 43) is granted under 28 U.S.C. § 1406(a) and Rule 12(b)(3).  Lasko's claims against

ABS, Cofer, Mahvi, Lewis, Buyske, Malangoni, and Bevilacqua are dismissed.

## IV.    American Board of Internal Medicine's Motion to Dismiss (Doc. 36)

ABIM moves for dismissal under Federal Rules of Civil Procedure 8(a), 8(d), 12(b)(6), and

41(d).[55]  Though these claims appear closely related to the claims that this order dismisses against the

seven defendants, ABIM has waived its venue challenge.  Under Rule 12, improper-venue arguments

are waived "if a defendant moves to dismiss on one or more of the other grounds specified by Rule

12 while failing to raise venue in the same motion."[56]  Because ABIM brings this Rule 12(b)(6)

motion to dismiss without seeking dismissal under Rule 12(b)(3), I consider dismissal on its

substantive merits.[57]

## A.    Motion to Dismiss

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain

---

[54] *See King*, 963 F.2d at 1304.

[55] Doc. 36 at 1.  ABIM's motion seeks dismissal under both Rule 41(b) and Rule 41(d).  *Id.* at 1–3.  Rule 41(b) governs involuntary dismissal and Rule 41(d) addresses the costs of a previously dismissed action.  Because the body of ABIM's motion analyzes its argument under 41(b), I adopt the same approach.

[56] *See King*,  963 F.2d at 1304.

[57] *See generally* Doc. 36.

statement of the claim showing that the pleader is entitled to relief."[58]  While Rule 8 does not require detailed factual allegations, the Supreme Court clarified in *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal* that the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[59]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[60]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[61]

District courts employ a two-step approach when evaluating a complaint's sufficient on a Rule 12(b)(6) motion to dismiss.  First, the court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[62]  Mere recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient.[63]  Second, the court must consider whether the well-pled factual allegations state a plausible claim for relief.[64]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[65]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has

---

[58] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also* Fed. R. Civ. P. 8(d) ("Each allegation must be simple, concise, and direct.")

[59] *Id.* at 570.

[60] *Id.* at 678.

[61] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[62] *Iqbal*, 556 U.S. at 678–79.

[63] *Id.*

[64] *Id.* at 679.

[65] *Id.*

11

1  "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[66]

2  ABIM's dismissal motion contends that Lasko failed to provide a short and plain statement of

3  claims, he failed to state any plausible claim to relief, and his complaint cannot be read to assert any

4  plausible claim specifically against ABIM.[67]  Lasko's response does not directly respond to these

5  arguments; instead, Lasko asserts that ABIM is associated with organizations "obviously trying to

6  destroy competition against themselves and against their sister organization, American Board of

7  Internal Medicine."[68]  He believes these groups "worked for years to destroy plaintiff and plaintiff

8  organization through campaigns of defamation and libel."[69]  He references a threat, which they

9  allegedly carried out, to revoke his "Lifetime Diplomatic Certification in Internal Medicine" if he

10  "did not stop competing."[70]

11  In his complaint, Lasko claims that ABIM conspired as a sister organization to ABS in

12  "acting to divide the medical marketplace, eliminate competitors to perpetuate control of a market of

13  medical certification"; violated the Sherman and Clayton Antitrust Acts; interfered with interstate

14  commerce; and committed the torts of "Defamation, Libel, and False Light."[71]  Lasko contends that

15  ABS, ABIM and the American Board of Medical Specialists (ABMS) are "monopolist" organizations

16  that "all falsely present themselves as semi official and a sort of benevolent monopoly in the public

17  interest."[72]

18  This is the background with which I now consider the sufficiency of Lasko's claims against

19

20  _____

[66] *Twombly*, 550 U.S. at 570.

21  [67] Doc. 36 at 2–3.

22  [68] Doc. 48 at 2, 21, 23, 27–28.

23  [69] *Id.* at 2.

24  [70] *Id.*  Lasko seeks discovery to prove this allegation and argues that Ken Sullivan, an attorney
25  in Chicago, was a witness to defendants' threatening and anti-competitive conduct.  *Id.*

26  [71] *See* Doc. 19 at 4–5.

27  [72] *Id.* at 12.

28  12

ABIM.

### 1. Claim one: antitrust violations

Lasko's first claim is for violations of the Sherman Antitrust Act, violations of the Clayton Antitrust Act, and interference with interstate commerce, which I analyze in turn.[73]

### a. Sherman Antitrust Act

Because Lasko does not specify which Sherman Act section he believes was violated, I discuss the first two sections.[74] Under Section 1, plaintiffs must allege facts showing "(1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce."[75] A Section 2 violation for attempted monopolization requires a showing of four elements: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving "monopoly power"; and (4) causal antitrust injury."[76] Monopoly under Section 2 has two elements: (1) possessing monopoly power "in the relevant market" and (2) willfully acquiring or maintaining monopoly power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."[77]

Any Section 1 theory fails at the first element because Lasko never alleges any contract

---

[73] Doc. 19 at 7. Lasko also alleges fraudulent use of a false-trademark claim eight pages into his first claim, but this section mentions other defendants without mentioning ABIM. *See id.* at 14–15. Ultimately, this section still appears to be about the alleged antitrust violations. *See id.*

[74] *See generally* Doc. 19. Section 1 discusses conspiracy; Section 2 discusses monopoly. 15 U.S.C. §§ 1–2.

[75] *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1033 (9th Cir. 2005) (citing *Am. Ad Mgmt., Inc. v. GTE Corp.,* 92 F.3d 781, 784, 788 (9th Cir. 1996)).

[76] *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432–33 (9th Cir. 1995) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988)).

[77] *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966).

13

between ABIM and another party.[78]  Attempted monopoly under Section 2 likewise fails at the first element, as a matter of law, because it cannot be reasonably inferred that ABIM has the specific intent to control prices or destroy competition.[79]  And Section 2 monopoly is not sufficiently alleged because Lasko neither shows any reason for his claim that ABIM exercises monopolistic power nor alleges facts showing that ABIM willfully exercises monopolistic power.[80]  Lasko's assertions that ABIM controls the market—or mistreated him—are insufficient to state claims under the antitrust statute he cites.  The closest Lasko comes to stating a claim is his allegation that ABIM and others are controlling "a market of medical certification."[81]  But his complaint gives no information on what kind of certification this is, how ABIM is exercising control, or what basis he has for believing this is an exercise of deliberate control.  I thus find that Lasko's Sherman Act claims must be dismissed under Rule 12(b)(6).

### b. Clayton Antitrust Act

The Clayton Act likewise prohibits a variety of activities, and without presenting an exhaustive discussion of the act, I again find no connection between Lasko's allegations and the statute he cites.  Section 13 of the Clayton Act forbids price discrimination "between different purchasers of commodities of like grade and quality."[82]  Section 14 forbids sales that prohibit the buyer from also making purchases from the seller's competitors, where the impact "may be to substantially lessen competition or tend to create a monopoly."[83]  And the focus of Section 18 is mergers and acquisitions.[84]  There is nothing at all in Lasko's complaint that supports an allegation of

[78] *See generally* Doc. 19.

[79] *See id.*

[80] *See id.*

[81] *Id.* at 4.

[82] 15 U.S.C. § 13(a).

[83] 15 U.S.C. § 14.

[84] 15 U.S.C. § 18.

14

price discrimination, agreements not to purchase from competitors, or corporate monopoly through merger and acquisition.  Lasko states that ABIM and others are "acting to divide the medical marketplace" and "eliminate competitors," but a liberal interpretation suggests that Lasko objects to ABS's litigation in the Eastern District of Pennsylvania—where he lost on ABS's trademark-infringement claims—rather than suggesting any details to substantiate Clayton Act violations.  Without any plausible claims for relief, I must also dismiss Lasko's Clayton Act claim against ABIM.

### c. Interference with interstate commerce

Interference with interstate commerce is not an independent federal tort, though it may be an aspect of a Sherman Act violation.[85]  I therefore do not analyze this as a separate claim.

### 2. Claim two: civil-rights violations

Lasko's second claim is for civil-rights violations by ABIM and others.[86]  Lasko cites 18 U.S.C. §§ 241, 242, 247, and 249 and 42 U.S.C. § 1983.[87]  The first four statutory sections create criminal violations, with possible punishments ranging from a fine to the death penalty, and these are not statutes under which a private citizen may bring a civil action; only the federal government may prosecute crimes under these Title 18 provisions.[88]

Section 1983 is a civil statute permitting suits for acts performed by a state actor under color of law.[89]  Action under color of state law is the "[m]isuse of power, possessed by virtue of state law

---

[85] *See, e.g.*, *United States v. S. Cal. Wholesale Grocers' Ass'n*, 7 F.2d 944, 947 (S.D. Cal. 1925) ("'The four cases and the one here, considered together, clearly illustrate the vital difference, under the Sherman Act, between a direct, substantial, and intentional interference with interstate commerce and an interference which is incidental, indirect, remote, and outside the purposes of those causing it.'").

[86] *See* Doc. 19 at 16–22.

[87] *Id.* at 17.

[88] *See* 18 U.S.C. §§ 241–42, 247, 249.

[89] 42 U.S.C. § 1983; *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).

and made possible only because the wrongdoer is clothed with the authority of state law."[90]  Lasko never alleges—nor does it appear that he can allege—facts showing that any state has clothed ABIM with monopoly or other authority.  Accordingly, I dismiss Lasko's third claim for relief against ABIM.  The claims he brings under the criminal statutes are dismissed with prejudice; he is ordered not to reraise them.  The 1983 claim is dismissed without prejudice.

### 3. Claim three: right to organize

Lasko's third claim argues that "[u]nder the First Amendment Right of Peaceable Assembly comes the Right to Freedom of Association and the Right to Organize."[91]  He believes that the "[r]ight to organize is preserved by National Labor Relations Act."[92]  First, even if Lasko had stated a claim for violation of a freedom to associate or right to organize, he does not name ABIM in his third cause of action or state facts suggesting this claim is directed against ABIM.[93]  Therefore, it does not appear that Lasko has stated this claim against ABIM.

Second, Lasko is correct in writing that "state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny."[94]  But this again requires state action—or conduct under color of law, as just discussed in the civil-rights analysis—in order for a freedom-of-association claim to arise.  Lasko has pled no state action and thus does not have a cognizable claim for infringement of his freedom to associate.

Third, the National Labor Relations Act is addressed to private-sector conduct, but it relates to employer-employee relationships and collective bargaining.[95]  Nothing in the complaint indicates that

---

[90] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (quoting *Ex parte Virginia*, 100 U.S. 339, 346–347 (1880)) (internal quotation marks omitted).

[91] Doc. 19 at 22.

[92] *Id.*

[93] Doc. 19 at 22.

[94] *NAACP v. Alabama*, 357 U.S. 449, 460–61 (1958); *see also* Doc. 19 at 22 (quoting, without citing, the Supreme Court's decision in *NAACP*).

[95] *See* 29 U.S.C. §§ 151–69.

ABIM ever employed Lasko.  On the contrary, he alleges that ABIM was engaged in anti-competitive conduct against him and his organizations, which seems to belie any employer-employee relationship.  Thus, Lasko also fails to state a claim for violation of his alleged right to organize.

Accordingly, I dismiss Lakso's third cause of action against ABIM without prejudice as to the freedom-of-association component and with prejudice as to the right-to-organize component.

### 4. Claim four: defamation, libel, and false light

Lasko's fourth claim is for defamation, libel, and false light.  Because these are not federal claims, I liberally construe these as tort claims under Nevada law.  The factual predicate that Lasko supplies is straightforward: ABIM, ABS, and ABMS "maintained a campaign to vilify and denegrate [sic] and destroy Reverend Lasko and his medical organizations."[96]  On websites, and in medical newspapers and journals, these defendants allegedly made statements about Lasko and his organizations: "running wild," "claims to be a doctor," "fraudulent organizations," "false certifications," "preying on foreign physicians," and more.[97]

#### a. Defamation or libel

A plaintiff must satisfy four elements to state a defamation claim: "(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[98]  Communicating that "a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed."[99]  Generally, "only assertions of fact, not opinion, can

---

[96] Doc. 19 at 22.

[97] *Id.* at 22.

[98] *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (2009) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (2005)) (citing *Lubin v. Kunin*, 17 P.3d 422, 425 (2001)).  Libel is a form of defamation, so I consider the claims for defamation and libel together.

[99] *Id.* (quoting *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (1993)) (internal quotation marks omitted).

be defamatory."[100]  But "expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false.[101]  To distinguish opinion from fact, Nevada examines whether "a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact."[102]  This is usually a question of law for the court, but if the statement is ambiguous, it goes to the jury.[103]

Lasko's defamation claim survives dismissal.  He alleges potentially defamatory statements and alleges publication via the internet, newspapers, and journals.  Liberally construing his pleading, "fault, amounting to at least negligence" can be inferred.  Because the statements are directed toward his professional activities, damages may also be inferred.  ABIM does not argue that any statements it may have made are privileged because they were true.  Accordingly, this claim survives against ABIM.  If only state-law claims survive and no federal claims remain, however, I may decline to exercise wholly supplemental jurisdiction at a future date.

### b. False light

Nevada recognizes the right to privacy as discussed in the Restatement (Second) of Torts, which includes the right to sue for "publicity unreasonably placing another in a false light before the public."[104]  A defendant is liable for the publicity he gives another person if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had

---

[100] *Wynn v. Smith*, 16 P.3d 424, 431 (2001) (quoting *K-Mart Corp. v. Washington*, 866 P.2d 274, 281 (1993)).

[101] *Id.* (citation omitted).

[102] *Id.* (citation omitted).

[103] *Id.*

[104] *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1278 (Nev. 1995), *holding modified on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 127 (Nev. 1997) and *holding modified on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 134 (Nev. 1997) (citing Restatement (Second) of Torts § 652A, appendix at 376).

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."[105]

Because Lasko identifies this as a false-light claim, I infer that he intends to plead that ABIM's statements were false.  It is readily apparent that a reasonable person would be highly offended by false statements that he was "running wild," "claims to be a doctor," issuing "false certifications," and so forth.[106]  Lasko does not allege, however, that ABIM acted with knowledge or reckless disregard of the falsity of its statements.  This is an allegation he must make to state a cognizable false-light claim.

Lasko's false-light claim against ABIM is accordingly dismissed.

### 5. Claim five: undue influence and obstruction of justice

On the face of his complaint, Lasko's legal basis for alleging undue influence and obstruction of justice is unclear.[107]  His factual basis appears to be that Saul Ewing, which represented ABIM, allegedly "donated over $451,000 to the political organization of Mitchell S. Goldberg."[108]  Judge Goldberg then apparently "agreed with [ABS and Saul Ewing] to order the banning forever of all thirty five medical organizations founded by Reverend Lasko, that were competitions of [ABS] and their sister organization, [ABIM], and their umbrella organization, [ABMS]."[109]

Because Lasko suggests RICO violations at various places in his motions, the closest I come to finding a legal basis for his fifth claim is 18 U.S.C. § 1503(a), which prohibits corruptly influencing judicial officers.  But Section 1503(b) is a criminal statute and not a private right of action.

---

[105] Restatement (Second) of Torts § 652A.  Nevada case law cites to this Restatement section without listing the elements.  *See Berosini*, 895 P.2d at 1278 (citing Restatement (Second) of Torts § 652A, appendix at 376).

[106] *See* Doc. 19 at 22.

[107] *See id.* at 22–26.

[108] *Id.* at 23.

[109] *Id.*

19

Even if untoward conduct occurred under a civil provision—and even if ABIM benefitted from Judge Goldberg's orders—nothing in the complaint indicates that ABIM was involved in any bribery scheme.  Nor does anything indicate that ABIM was even aware of attempts to bribe the federal judge who oversaw the Pennsylvania litigation.  To state a claim for undue influence, Lasko must plead facts showing that ABIM had or at least attempted to exert influence.  And to state a claim for obstruction of justice, Lasko must plausibly allege that ABIM had some knowing part in tampering with justice.  He does not.  I therefore dismiss Lasko's fifth cause of action against ABIM.

**B.    Amendment**

Because all of Lasko's claims against ABIM are dismissed, except for his claim for defamation, I now consider whether he should be given leave to amend his complaint.

Courts "freely give leave [to amend] when justice so requires."[110]  The federal courts' tendancy is to permit new chances: "[t]his policy is to be applied with extreme liberality."[111]  And the Supreme Court affirms that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[112]

Amendment is liberally—not limitlessly—offered.  If a court finds reasons that justify denying amendment, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," then the court

---

[110] Fed. R. Civ. P. 15(a)(2); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)) (writing that "[i]n general, a court should liberally allow a party to amend its pleading.").

[111] *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)) (internal quotation marks omitted).  This circuit is particularly liberal toward pro-se plaintiffs who seek leave to amend.  *Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

[112] *Forman v. Davis*, 371 U.S. 178, 182 (1962).

1    has discretion to foreclose amendment.[113]  "[C]onsideration of prejudice to the opposing party carries

2    the greatest weight."[114]  If a plaintiff repeatedly fails to cure deficiencies after several opportunities to

3    amend, the court may deny further amendment if alleging "other facts consistent with the challenged

4    pleading could not possibly cure the deficiency."[115]

5         ***1. Claim one: antitrust violations***

6         Lasko is granted leave to amend his Sherman Act claim if he can allege facts that would

7    support each element of his claim.  If he amends his first claim, it must pertain to the Sherman Act

8    only.  Because the Clayton Act focuses on issues such as price discrimination and exclusive-purchase

9    agreements, it is distinguishable from his allegations about ABIM's attempt to control the medical-

10   certification market.  Lasko thus may not bring an amended claim for Clayton Act violations.

11        ***2. Claim two: civil-rights violations***

12        Lasko's claims under 18 U.S.C. §§ 241, 242, 247, and 249 cannot be raised in any amended

13   complaint because these are criminal statutes.  Lasko may amend his second claim under 42 U.S.C. §

14   1983, only if he can plausibly allege specific facts that ABIM was acting under color of state law

15   when it violated his constitutional or civil rights.

16        ***3. Claim three: right to organize***

17        Lasko may amend his claim for violation of his associational freedom if he can plead facts

18   that show that ABIM acted under color of state law.  He must be able to allege state action—and

19   what specific actions ABIM took that harmed him under the relevant law on freedom of

20   association—in order to maintain this claim.  Lasko may not replead the NLRA claim because the

21   facts he describes have nothing to do with organized labor and, in fact, indicate that he was not

---

[113] *See id.*

[114] *Sonoma*, 708 F.3d at 1117 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

[115] *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182–83 (1962)); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.3d 1393, 1401 (9th Cir. 1986)) (internal quotation marks omitted).

1    employed by ABIM.

2          **4. Claim four: defamation, libel, and false light**

3          Lasko's claim for defamation or libel is not dismissed; he is not required to amend this part of

4    his fourth claim.  If he files an amended complaint, however, he must include his defamation claim in

5    the new complaint in order to keep it.  Lasko may amend his false-light claim only if he can allege

6    true facts that show the elements of false light as described above in Part IV(A)(4)(b).  His current

7    complaint fails to allege that ABIM acted with knowledge or reckless disregard of falsity, so if Lasko

8    wishes to amend his complaint to restate a false-light claim, he must also allege facts to support this

9    element.

10         **5. Claim five: undue influence and obstruction of justice**

11         Finally, the legal basis for Lasko's fifth claim is unclear, and he fails to allege any facts

12   showing that ABIM's conduct lead to any undue influence or obstruction of justice.  Lasko is granted

13   leave to amend this claim if he can show a good-faith legal and factual basis for his claim.

14   **C.     Summary**

15         ABIM's motion to dismiss is granted: all of Lasko's claims against it are dismissed, except

16   Lasko's claim for defamation, which survives.  Lasko is permitted until October 3, 2014, to amend

17   his complaint consistent with the directions provided in this order.

18   **V.     Saul Ewing LLC and Gabriel L.I. Bevilacque's Motion to Dismiss (Doc. 45)**

19         Saul Ewing and Bevilacque, who is of counsel with Saul Ewing, bring a separate motion to

20   dismiss.  Because Bevilacque is party to the seven defendants' dismissal motion, which I grant in this

21   order, I deny his portion of this dismissal motion (Doc. 45) as moot.[116]  Saul Ewing is not party to

22   that motion, however, and it does not challenge venue in its 12(b)(6) motion to dismiss.[117]

23   Accordingly, Saul Ewing has waived any venue challenge, and I consider whether Lasko states a

24

25         [116] *See supra* Part III.

26         [117] *See* Doc. 43 (seven defendants' motion to dismiss); *see generally* Doc. 45 (Saul Ewing's
27   motion to dismiss).

28                                                    22

claim against it.[118]

**A.      Motion to Dismiss**

Lasko alleges that Saul Ewing violated the Sherman and Clayton Acts; interfered with interstate commerce; violated the Civil Rights Act of 1964, 18 U.S.C. §§ 241, 242, 247, and 249, 42 U.S.C. § 1985, and eight constitutional amendments; and, "through very large donations to Mitchell S. Goldberg's political organization and large donations to [judges'] political campaigns," gives the appearance of "Undue Influence on a Judge" and "Obstruction of Justice under the RICO Act."[119]

Saul Ewing's motion to dismiss argues that "this lawsuit is purely based on statements and conduct the Saul Ewing Defendants made in litigation pending in the United States District Court, Eastern District of Pennsylvania on behalf of ABS."[120]  While it challenges the individual claims against it, Saul Ewing also argues that Lasko's suit should be entirely barred because the firm is protected by the *Noerr-Pennington* doctrine.[121]  In response, Lasko urges that the sham exception to *Noerr-Pennington* applies, essentially because he believes Saul Ewing acted fraudulently and because he disagrees with the relief he believes they sought and obtained in Pennsylvania.[122]  He also contends that *Noerr-Pennington* "is not accepted by either the European Nations or the World Court," arguing that "[t]his rejection of Norr [sic] Pennington applies to the Unites Staes [sic] Treaties on Human Rights, including the United Nations Treaty, Charter, and Declaration of Human Rights."[123]

**1. *Noerr-Pennington* immunity**

---

[118] *See King*, 963 F.2d at 1304.

[119] Doc. 19 at 5 (alleging violations of the First, Fourth, Fifth, Sixth, Eighth, Tenth, Thirteenth, and Fourteenth Amendments).

[120] Doc. 45 at 3.

[121] *Id.* at 3, 22–25.

[122] Doc. 48 at 1–9.

[123] *Id.* at 4, 6.  Lasko names four additional treaties that he believes apply under the federal Constitution's supremacy clause.  *Id.* at 4.

"The Supreme Court has described the right to petition as 'among the most precious of the liberties safeguarded by the Bill of Rights' and 'intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press.'"[124]  The *Noerr-Pennington* doctrine originated as a shield from antitrust liability, but it has been expanded under the Petition Clause to generally immunize "those who petition all departments of the government for redress."[125] The exception to this immunity applies when conduct is "ostensibly directed toward influencing governmental action" but it is, in fact, "a mere sham" attempt to cover violation of a valid statute.[126]

When I review Lasko's pleading and all relevant motions, the only actions Saul Ewing is alleged to have performed are (1) its representation of ABS in the Eastern District of Pennsylvania, (2) its alleged donations to Judge Goldberg's "political organization" and other judges' "political campaigns," and (2) its defense against Lasko's suit here in the District of Nevada.[127]  The first and third categories of conduct fall squarely within *Noerr-Pennington*; they are petitions to the government for redress and are protected under the Petition Clause.[128]  Nothing in the record even remotely indicates that this litigation was a mere sham.  On the contrary, Lasko's own complaint and

---

[124] *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *United Mine Workers of America, Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967); *McDonald v. Smith*, 472 U.S. 479, 482 (1985)) ("The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression.").

[125] *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (citing *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)) (*Noerr-Pennington* "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause.").

[126] *Id.* at 938 (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972); *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)).

[127] *See* Docs. 19, 45, 48, 51.  Even when I expand my review beyond these motions to other documents in this case, I cannot see any other conduct by Saul Ewing.

[128] *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006) (citing *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)) (*Noerr-Pennington* "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause.").

1    motions indicate that ABS prevailed in Pennsylvania, suggesting that the litigation against him was

2    judicially considered legitimate.  I therefore dismiss the claims against Saul Ewing in their entirety

3    under the *Noerr-Pennington* doctrine, with the exception of Lasko's fifth claim for relief.  The fifth

4    claim is based on the second category of conduct, donations to Judge Goldberg, and I address it in

5    Section 2 below.[129]

6         ***2. Fifth claim: undue influence and obstruction of justice***

7         This leaves only Lasko's fifth claim for relief against Saul Ewing.  In the body of Lasko's

8    complaint, he alleges that "[t]he Saul Ewing LLC firm has donated large sums of money to many

9    judges' political campaigns and has appeared in courtrooms in Pennsylvania."[130]  He then alleges that

10   Saul Ewing "donated over \$451,000 to the political organization of Mitchell S. Goldberg."[131]

11        In its motion to dismiss, Saul Ewing is—reasonably—unsure how to defend against this cause

12

13

14

---

15   [129] Before moving to the donations question, I address Lasko's contention that jurisdictions
16   abroad do not recognize *Noerr-Pennington*.  I liberally construe this as an argument either that the
     treaties themselves prohibit applying *Noerr-Pennington* or that, because the United States entered
     treaties with nations that do not recognize the doctrine, this nation also cannot apply it.

17        "[T]reaties do not generally create rights that are privately enforceable in the federal courts."
18   *Igartua-De La Rosa v. United States*, 417 F.3d 145, 149 n.3 (1st Cir. 2005) (quoting *United States v.
     Li*, 206 F.3d 56, 60–61 (1st Cir. 2000) (en banc)).  If individuals are to enforce treaty rights, a treaty
19   must "specifically confer upon individuals the right to enforce [its] provisions," whether expressly or
     implicitly.  *United States v. Rodrigues*, 68 F. Supp. 2d 178, 181-82 (E.D.N.Y. 1999) (quoting *Columbia
20   Marine Servs., Inc. v. Reffel Ltd.*, 861 F.2d 18, 21 (2d Cir. 1988) (citing *Argentine Republic v. Amerada
     Hess Shipping Corp.*, 488 U.S. 428, 442 (1989)) ("An action arises under a treaty only when the treaty
21   expressly or by implication provides for a private right of action.").  Unless Lasko can cite a treaty
     provision that gives him a private right of action barring the application of *Noerr-Pennington*, he cannot
22   rely on United States treaties to argue that *Noerr-Pennington* is inapplicable in this case.  Having
     reviewed the law, I see no private right of action and do not believe that one exists.

23        The fact that the United States has signed human-rights treaties—even with nations that fail to
     recognize *Noerr-Pennington*, if that is the case—also has no bearing on whether federal courts are
24   obligated to apply the doctrine in domestic cases.  *Noerr-Pennington* is interpreted and applied as a
     matter of federal constitutional law, grounded in the Petition Clause, and it is independent of
25   international treaties.  Accordingly, Lasko's international-law argument fails.

26   [130] Doc. 19 at 22–23.

27   [131] Doc. 19 at 23.

28                                                   25

of action.[132]  It attempts to analyze the claim under 18 U.S.C. § 1962, which is a civil RICO provision, but that statute is an ill fit because it requires a pattern of racketeering activity.[133]  Lasko only alleges one donation, albeit a large one, from Saul Ewing to Judge Goldberg.[134]  One act does not a pattern make.  Lasko's legal basis for his undue-influence and obstruction-of-justice claim is difficult to discern.

Further, while the Rule 12(b)(6) standard requires me to accept as true all well-pled actual allegations, a complaint is insufficient went it tenders mere "naked assertion[s] devoid of further factual enhancement."[135]  Federal judges are prohibited from acting as leaders or holding any office in political organizations—nor are they permitted to "solicit funds for, pay an assessment to, or make a contribution to a political organization."[136]  A bare allegation that a large donation was made to a federal judge's "political organization" fails the plausibility standard, without some further allegations about what this organization is called, its function, or even what role Judge Goldberg holds in it.

Lasko's fifth claim, as pled, fails in two ways: it does not put the defendant on sufficient notice to know how to defend itself against the claim, and it does not state a plausible claim for relief.  Accordingly, I dismiss Lasko's fifth claim for relief against Saul Ewing.

**B.    Amendment**

Lasko may have an opportunity to amend his complaint to replead his fifth claim against Saul Ewing.  If he can (1) show a good-faith legal basis for his undue-influence and obstruction-of-justice

---

[132] *See* Doc. 45 at 20–25 ("Although it is unclear from the face of the Amended Complaint, it appears Plaintiff seeks to assert an obstruction of justice claim against the Saul Ewing Defendants under the federal civil RICO statute, 18 U.S.C. § 1962.").

[133] *Id.* (analyzing plaintiff's fifth claim under U.S.C. § 1962); 18 U.S.C. § 1962 (discussing illegal conduct arising out of "a pattern of racketeering activity").

[134] Doc. 19 at 23.

[135] *Iqbal*, 556 U.S. at 678–79 (citation omitted).

[136] Code of Conduct for United States Judges, Canon 5(A).

claims and (2) plead true facts to support each element of such claims.  Because *Noerr-Pennington* shields Saul Ewing from liability related to its litigation in Pennsylvania, Lasko's other claims against Saul Ewing are dismissed with prejudice.

If Lasko amends his complaint to maintain his claims against both ABIM and Saul Ewing, he must file a motion seeking the court's leave to amend by October 3, 2014, and follow the instructions for seeking amendment in Section VIII below.

## VI.   Remaining Motions

The remaining seven motions in this case are Lasko's motions for default judgment (Docs. 18, 156); a special motion to dismiss brought by the seven defendants (Doc. 44); Lasko's motion for pendant jurisdiction (Doc. 63); motions for reconsideration of Magistrate Judge Koppe's orders (Docs. 79, 97); motions for sanctions by the seven defendants (Docs. 130, 136); and a motion for sanctions by Lasko against attorney Von Heinz and his client, defendant Bevilacqua (Doc. 140).

First, in his motions for default judgment, Lasko claims that no defendant timely responded to his allegations and that all defendants thus admitted committing civil-rights violations.[137]  But all defendants except ABMS timely filed motions to dismiss—and service was quashed as to ABMS, so its time to respond has not begun.[138]  Lasko's motions for default (Docs. 18, 156) are therefore denied.

Second, because this case is now dismissed with respect to the seven defendants, I deny their special motion to dismiss (Doc. 44) and their motions for sanctions (Docs. 130, 136) as moot.

Third, Lasko's motion for pendant jurisdiction, construed liberally, may be a motion for leave to amend his complaint.[139]  He describes claims including defamation, intentional interference with

---

[137] *See* Doc. 18 at 1; *see also* Doc. 156 at 2.

[138] *See* Doc. 42 at 4 (quashing service on ABMS).

[139] Doc. 63.

prospective economic advantage, and RICO violations.[140]  If a party seeks to amend his complaint more than 21 days after serving it, he must obtain leave of court or the adverse party's written consent.[141]  If Lasko wishes to amend, he must file a motion plainly asking the court for permission to file an amended complaint and attaching a copy of his proposed second amended complaint in compliance with the rules of this court.[142]  Unfortunately, the relief Lasko seeks is unclear, even when I liberally construe this pro-se motion, the relief it seeks is too unclear; thus, I deny Lasko's motion for pendant jurisdiction (Doc. 63).

Fourth, Lasko moves for reconsideration of Magistrate Judge Koppe's order striking his motions as improperly brought.[143]  Unfortunately, Lasko persisted in the conduct for which Magistrate Judge Koppe struck his motions, and I was subsequently obligated to strike a number of his motions as well.[144]  On a fresh review, I find no new evidence, clear error or manifest injustice, or intervening change in law that would warrant reconsideration of the order he challenges. Accordingly, Lasko's motion for reconsideration (Doc. 79) is denied and the motions remain stricken.

Next, Lasko asks me to remove Magistrate Judge Koppe from this case.[145]  On reviewing the record and law, I find no evidence whatsoever of the many violations Lasko alleges Magistrate Judge Koppe has committed.[146]  Further, I agree with the reasons she carefully presented for not recusing

---

[140] *Id.* at 4–7.

[141] Fed. R. Civ. P. 15(a)(2); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

[142] Under Local Rule 15-1(2), the proposed amended complaint must be "complete in itself without reference to the superseding pleading."

[143] Doc. 79 (objecting to Doc. 72).

[144] Doc. 107.

[145] Doc. 97.

[146] *See id.*

herself in her order denying two of Lasko's motions for recusal.[147]  Accordingly, Lasko's motion to remove Magistrate Judge Koppe (Doc. 97) is denied.

Finally, I am left only with Lasko's motion for sanctions against attorney Heinz and his client Bevilacqua.  By way of background, Magistrate Judge Koppe issued an order striking three of Lasko's motions on February 21, 2014.[148]  Under Local Rule IB 3-1(a), objections to magistrate judges' pretrial orders must be submitted within 14 days.  After Lasko brought a motion for reconsideration (Doc. 132) on July 15, 2014, Bevilacqua argued that Lasko's motion should be denied as untimely (Doc. 133).  Magistrate Judge Koppe subsequently denied Lasko's motion for reconsideration and denied a related motion as moot.[149]  Her order also implicitly mooted Bevilacqua's motion for denial.[150]

It is with this background that I approach Lasko's motion for sanctions: he contends that Heinz and Bevilacqua "attempted to defraud the court by claiming that Plaintiff [sic] motion for reconsideration should be ignored and struck down because it did not come without 14 days following February 21, 2014."[151]  Lasko appears to argue that, because his reconsideration argument was based on religious-liberty principles in the Supreme Court's decision in *Hobby Lobby*, which was handed down after the February 21 deadline, he had a right to file a late motion for reconsideration.[152]  This argument is puzzling at best and disingenuous at worst because the motion for reconsideration contains no mention of *Hobby Lobby*.[153]  Moreover, Bevilacqua's motion was correctly argued: Lasko filed his motion for reconsideration after the deadline and, post-deadline, he

---

[147] *See* Doc. 127.

[148] Doc. 72.

[149] Doc. 152.

[150] *Id.*

[151] Doc. 104 (challenging Doc. 133, which responds to Doc. 72).

[152] *See id.* at 1–3.

[153] *See generally* Doc. 132.

1   must seek leave of court to submit motions.[154]  I find no reason to sanction Heinz or Bevilacqua and

2   thus deny the motion for sanctions (Doc. 140).

3   **VII.    American Board of Medical Specialists**

4            The sole defendant who has not filed a motion to dismiss is ABMS.  Service on ABMS was

5   quashed under Rule 12(b)(5) on November 27, 2013, and Lasko has not since served ABMS.[155]  If a

6   defendant is not served within 120 days of the filing of the complaint, the court must, after notice to

7   the plaintiff, dismiss the action against the unserved defendant unless the plaintiff shows good cause

8   for the failure to serve.[156]  In the interest of justice, I permit Lasko until October 3, 2014, to properly

9   serve ABMS and to file notice of service *or* file a motion for an extension of the service deadline

10  with a demonstration of good cause for the failure to serve ABMS timely.  If he does neither, all

11  claims against ABMS will be dismissed.

12  **VIII.   Directions for Amended Complaint**

13           Given the federal courts' liberal approach to pro-se parties, I provide Lasko with at least one

14  more opportunity amend his complaint and adequately identify his claims.  Accordingly, he has until

15  October 3, 2014, to file an amended complaint.  **Lasko is advised as follows:**

16           1. If he files an amended complaint, it must comply with all rules of this court, including the

17           Federal Rules of Civil Procedure (available on the U.S. Courts website at

18           http://www.uscourts.gov/uscourts/rules/civil-procedure.pdf) and the Local Rules of Practice

19           for the District of Nevada (available on this court's website at http://www.nvd.uscourts.gov/).

20           2. Although this list is in no way exhaustive, I highlight some of the rules that apply to the

21           form of a complaint:

22           a.        Federal Rule of Civil Procedure 10(b) requires a party to "state its claims or defenses

---

[154] *See* LR 7-2 (outlining motions that may be filed without specific court leave).

[155] *See* Doc. 42 at 4.

[156] Fed. R. Civ. P. 4(m).

in numbered paragraphs."[157]

b. Lasko's complaint must also comply with Federal Rule of Civil Procedure 8, which requires it to contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.[158]

c. To survive dismissal, a complaint must give each defendant "fair notice of what the claim is and the grounds upon which it rests."[159] While this requires Lasko to state the legal and factual bases for each claim, long and narrative-style pleadings like the ones Lasko has already filed fail to provide defendants with fair notice of the claims against them. Thus, Lasko's amended complaint must specifically allege what law, statute, or constitutional provision he claims was violated by the conduct he alleges, so that defendants will be on notice of the factual and legal bases for his claims. Each claim should be in a separate cause of action that contains all facts supporting its essential elements and states the specific relief requested. And for each separately identified claim for relief, Lasko must also identify which defendant is the target of each claim. For example: "Count One—Antitrust Violations by ABIM."

d. An amended complaint must be "complete in itself without reference to the" previous version of the complaint.[160] Lasko must carry into the new proposed complaint any information he wants to continue pleading. The court cannot refer to a prior pleading

---

[157] Fed. R. Civ. Pr. 10(b) (emphasis added).

[158] Fed. R. Civ. P. 8(a).

[159] *Twombly*, 550 U.S. at 555 (citation omitted).

[160] *See* LR 15-1(a).

for information because an amended complaint supersedes all prior versions; it is as if the prior versions never existed.  All allegations and claims not carried forward are deemed waived.[161]  Claims that Lasko wishes to maintain must appear in the new complaint.  Exhibits that Lasko wants attached to his complaint must also be attached.

e.  Given this specific guidance on pleading requirements, the court is not inclined to grant Lasko leave to file a third amended complaint if his second amended complaint is deficient.  If Lasko fails to prosecute his action, or if he fails to comply with the rules or any court order, the court may dismiss the action with prejudice under Federal Rule of Civil Procedure 41(b).[162]

While I construe all of Lasko's pro-se motions with great liberality, I remind him that he is not relieved of his obligation to comply with the rules and procedures of this court simply because he has not retained, or cannot afford to retain, an attorney to represent him.[163]  The law demands that "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys."[164]  Lasko must make his best effort to comply with the rules, rather than arguing that pro-se pleadings ought to be considered "without regard to technicalities."[165]

Lasko is further cautioned that I will not consider a complaint that contains claims dismissed with prejudice in this order; the sections above, which discuss claim-by-claim what amendments he may and may not bring, provide very specific directions. The court has already warned Lasko three

---

[161] *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011).

[162] *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

[163] *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

[164] *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

[165] Doc. 47 at 3.

times against submitting new motions that merely restate issues he has already fully briefed.[166]
Sanctions will follow if Lasko continues to disregard the court's orders and, whether in an amended
complaint or in motions, if he persists in frivolous filings that flout the rules and reargue points that
he has already argued—unsuccessfully—many times.

**Conclusion**

Accordingly, and with good cause appearing,

It is hereby ORDERED that Keith Alan Lasko's motion for default **[Doc. 18]** is **DENIED**.

It is further ORDERED that Mitchell S. Goldberg's motion to dismiss **[Doc. 21** is **GRANTED**.

It is further ORDERED that Keith Alan Lasko's motion to release Mitchell S. Goldberg **[Doc. 29]** is **DENIED** as moot.

It is further ORDERED that the American Board of Internal Medicine's motion to dismiss **[Doc. 36]** is **GRANTED in part and DENIED in part** as stated herin.

It is further ORDERED that the American Board of Surgery, Inc., Joseph B. Cofer, David M. Mahvi, Frank R. Lewis Jr., Jo Buyske, Mark Malangoni, and Gabriel Bevilacqua's motion to dismiss **[Doc. 43]** is **GRANTED**.

It is further ORDERED that the American Board of Surgery, Inc., Joseph B. Cofer, David M. Mahvi, Frank R. Lewis Jr., Jo Buyske, Mark Malangoni, and Gabriel Bevilacqua's special motion to dismiss **[Doc. 44]** is **DENIED** as moot.

It is further ORDERED that Saul Ewing LLC and Gabriel Bevilacqua's motion to dismiss **[Doc. 43]** is **GRANTED** with respect to Saul Ewing and **DENIED** as moot with respect to Bevilacqua.

It is further ORDERED that Keith Alan Lasko's motion for pendant jurisdiction **[Doc. 63]** is

---

[166] Doc. 60 at 2 ("Plaintiff did not request leave to file a surreply nor are there new matters raised in the reply to which Plaintiff would otherwise be unable to [respond]."); Doc. 72 at 3 ("Plaintiff did not request leave to file a surreply, nor are there new matters raised in the reply to which Plaintiff would otherwise be unable to respond."); Doc. 107 at 4 ("This is now the third order explaining to Plaintiff that he may not continue to file documents rehashing the matters that are already fully briefed in conjunction with the Motion to Dismiss.").

1    **DENIED**.

2          It is further ORDERED that Keith Alan Lasko's motion for reconsideration **[Doc. 79]** is

3    **DENIED**.

4          It is further ORDERED that Keith Alan Lasko's motion for mistrial and recusal **[Doc. 125]** is

5    **DENIED**.

6          It is further ORDERED that the American Board of Surgery, Inc., Joseph B. Cofer, David M.

7    Mahvi, Frank R. Lewis Jr., Jo Buyske, Mark Malangoni, and Gabriel Bevilacqua's motion for

8    sanctions **[Doc. 130]** is **DENIED** as moot.

9          It is further ORDERED that the American Board of Surgery, Inc., Joseph B. Cofer, David M.

10   Mahvi, Frank R. Lewis Jr., Jo Buyske, Mark Malangoni, and Gabriel Bevilacqua's motion for

11   sanctions **[Doc. 136]** is **DENIED** as moot.

12         It is further ORDERED that Keith Alan Lasko's motion for sanctions **[Doc. 140]** is **DENIED**.

13         It is further ORDERED that Keith Alan Lasko's motion for default judgment **[Doc. 156]** is

14   **DENIED**.

15         It is further ordered that Keith Alan Lasko shall have until October 3, 2014, to file a second

16   amended complaint consistent with the limitations and instructions in this order.

17         DATED September 19, 2014.

18

19

20   _____

21   Jennifer A. Dorsey
     United States District Judge

22

23

24

25

26

27

28                                    34